26-865-CV

To Be Argued By:
Courtney Green

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

COURTNEY GREEN,
Plaintiff-Appellant

V

ANGEL QUIROS, ZELYNETTE CARON,
LENNY OGANDO, CORRECTIONAL OFFICER(S),
STARZYK, COGGESHALL,
DEFENDANTS-APPELLEES

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

BRIEF OF PLAINTIFF-APPELLANT

Case: 26-865, 07/16/2026, DktEntry: 19.1, Page 2 of 40

Table Of Contents

TABLE OF AUTHORITIES. ii

JURISDICTIONAL STATEMENT..1

STATEMENT OF THE ISSUES..2

STATEMENT OF THE CASE..3

STATEMENT OF THE FACTS..5

SUMMARY OF ARGUMENT..8

STANDARD OF REVIEW..9

ARGUMENT..10

I. The district court erred in concluding that Defendants' policy of conducting routine strip searches after non - contact video visits is related to legitimate penological interests under Turner v. Safely..10

A. Turner Factor One: The challenged policy is not rationally related to a legitimate penological interest..10

B. Turner Factor Two: Alternative means of exercising the right remain open..12

(i). THE DISTRICT COURT MISAPPLIED COVINO AND REYNOLDS..14

C. Turner Factor Three: The impact of allowing non - contact video visitors to avoid strip searches is minimal..16

D. Turner Factor Four: There are obvious, easy alternatives that fully accommodate the right at de minimis cost to valid penological interests..18

II. The District Court Improperly Relied on Bell v. Wolfish, 441 U. S. As A Substitute for the Required Turner Analysis..20

III. THE DISTRICT COURT IMPROPERLY RESOLVED GENUINE DISPUTES OF MATERIAL FACTS IN FAVOR OF DEFENDANTS..22

IV. ROUTINE STRIPS SEARCHES FOLLOWING NON - CONTACT VIDEO VISITS,

ABSENT INDIVIDUALIZED REASONABLE SUSPICION VIOLATE THE FOURTH AMENDMENT..25

V. DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

CONCLUSION. 27

Table of Authorities

Cases

Anderson v. Liberty Lobby, Inc., 477 U. S. 242 (1986). 2, 9, 15, 22 Passim

Ashcroft v. AL - Kidd, 563 U. S. 731, 742 (2011). 27, 28

Beal v. Stern, 184 F. 3d 117 (2d Cir. 1999). 10

Bell v. Wolfish, 441 U. S. 520 (1979). 3, 8, 17, Passim

Covino v. Patriss, 967 F. 2d 73 (2d Cir. 1992). 14, 16, 26, Passim

Crawford - El v. Britton, 523 U. S. 573 (1998). 9

Davis v. Scherer, 468 U. S. 183 (1984) .29

Hope v. Pelzer, 536 U. S. 730 (2002). 27, 28, 29

Jeffreys v. City of New York, 426, F. 3d 549 (2d Cir. 2005). 23

Knight v. U. S. Fire Insurance Co., 804 F. 2d 9 (2d Cir. 1986). 15

Mayor League Baseball Properties, Inc. v. Salvino, Inc. 542 F. 3d 290 (2d Cir. 200). 25

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U. S. 574 (1986). 9

Millares Guiraldes de Tineo v. U. S., 137 F. 3d 715, 719 (2d Cir. (1998).10

Nick's Garage, Inc. v. Progressive Gas. Ins. Co., 875 107, 113 (2d Cir. 2017). 9

Overton v. Bazzetta, 539 U. S. 126 (2003). 14

Pearson v. Callahan, 555 U. S. 223, 231 (2009). 27

Walsh v. New York City Housing Authority, 828 F. 3d 70 (2d Cir. 2016). 9

Weber v. Dell, 804 F. 2d 796 (2d Cir. 1986). 12

Reynolds v. Quiros, 990 F. 3d 286 (2d Cir. 2021) .14, 15, 16

Salahuddin v. Goord, 467 F. 3d 263 (2d Cir. 2006). 11, 23

Shain v. Ellison, 273 F. 3d 56 (2d Cir. 2001). 21

Shakur v. Selsky, 391 F. 3d 106 (2d Cir. 2004). 21

Tangreti v. Bachman, 983 F. 3d 609 (2d Cir. 2020). 30

Tolan, v. Cotton, 572 U. S. 650 (2014). 23

Turner v. Safley, 482 U. S. 78 (1987). 2, 3, 8, 10 Passim

STATUTES

28 U. S. C. sect. 1291. 1

42 U. S. C. sect 1983. 1, 3

RULES

Fed. R. App. 4 (a) (1) (A). 33

Fed. R. Civ. P. 56 (a). 9, 14, 22

JURISDICTIONAL STATEMENT

This is an appeal from a final judgment of the U. S. District Court for the District of Connecticut entered on March 4, 2026, by the Hon. Veron D. Oliver ., U. S. District Judge. Appellant Appendix ( hereinafter "AA")

This case was filed on August 14, 2024 by the plaintiff pursuant to 42 U. S. C. sec. 1983 against Defendants Quiros, Caron, Ogando, Starzyk, and Coggeshall, asserting violations of his civil rights. AA-

On March 4, 2026 the district court granted Defendant's motion for summary judgment, thereby disposing of all claims against all parties. This court has appellate jurisdiction over 28 U. S. C. section 1291, which confers jurisdiction over appeals from final decisions of the district courts. Plaintiff filed a timely Notice of Appeal pursuant to Federal Rule of Appellate Procedure 4 (a) (1) (A), AA- Accordingly this court has jurisdiction over this appeal.

1

## STATEMENT OF ISSUES PRESENTED

1.  Whether the district court erred by granting summary judgment without properly applying the four - factor test set forth in Turner v. Safley

2.  Whether the district court improperly relied on Bell v. Wolfish, 441 U. S. 520 (1979) as a substitute for Turner Analysis

3.  Whether the district court improperly resolved disputed material facts in favor of Defendants in violation of Anderson v. Liberty Lobby, Inc.

4.  Whether routine strip searches after non - contact / video visits, absent individualized suspicion, violate the Fourth Amendment under Second Circuit precedent

5.  THE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

2

STATEMENT OF THE CASE

Plaintiff - Appellant Courtney Green brought this action under 42 U. S. C. sec. 1983 alleging that prison officials of the Connecticut Department of Correction violated his rights under the Fourth Amendment by subjecting him to routine strip searches following non - contact video visits without individualized reasonable suspicion.

Appellant asserts that Defendants implemented and enforced a policy requiring Appellant to submit to visual body cavity searches after video visits, in which no physical contact with visitors occurred. Appellant maintained the searches were unreasonable because non - contact video visits and non - contact visits do not present the same security risks as contact visits, and because Defendants lacked any individualized suspicion that Appellant possessed contraband.

Following discovery, both parties filed motions for summary judgment. Appellant argued that the undisputed evidence established that routine strip searches following non - contact and video visits violated the Fourth Amendment under the standards set forth in Turner v. Safley, 482 U. S. 78 (1987), and that Defendants were not entitled to qualified immunity. Defendants argued that the searches were constitutional under Bell v. Wolfish, 441 U. S. 520 (1979), and that they were entitled to qualified immunity.

Appellant submitted evidence disputing Defendants justification for the searches, including evidence regarding the layout, operation of the visiting room, the distinction between contact and non - contact video visitation under Connecticut Department of Correction Administrative Directive 6.7. Appellant also requested that the district court review static camera footage because it depicted the physical layout of the visiting area and was relevant to the existence of genuine disputes of material fact. The district court declined to review the video recording.

3

Thereafter, the district court granted Defendants motion for summary judgment, concluding that the challenged searches were reasonably related to legitimate penological interest and the Defendants were entitled to qualified immunity because the strip searches Appellant were subjected to, satisfied the applicable constitutional standards despite Appellant's evidence distinguishing non - contact video visits from contact visits.

Appellant filed a timely notice of appeal, challenging the district court's grant of summary judgment, its application of the governing constitutional standards, its resolution of disputed material fact, and its determination that Defendants are entitled to qualified immunity.

STATEMENT OF THE FACTS

The Appellant was formally incarcerated at Carl Robinson CI, while housed at Robinson CI, there were three kinds of social visits accorded to the prison population; video visits, non - contact visits, and contact visits, AA- 13. During contact visits, inmates and an approved person meet, which is not separated by a full screen or full solid participation. Video visits are conducted by utilizing a laptop, tablet or mobile device with video capabilities. Non - contact visits is a meeting between an inmate and an inmate and an approved person which is separated by a screen, solid glass partition, or other partition which physically separates visitors from inmates. See Administrative Directive 10. 6 sec 3 subsections f, L.

Contact visits and video visits are not the same, video visits do not consist of any physical contact with any visitor: visitors are not present in the room: inmates participating in video visits sit in a "far corner away" from those having contact visits. AA- 14.The Defendants did not dispute this. AA- 113.Still, after every video visit, Appellant was forced to undergo a strip search: no suspicion, no evidence of wrong doing, just a blanket rule. AA-27.

On June 3, and June 10, of 2024, the Appellant had a video visit with approved visitors while confined in 9A housing unit at Carl Robinson CI. AA-15. Prior to Appellants arrival in the visiting room, he was pat searched with negative findings and proceeded to his video visit. AA-15. At the commencement of the Appellants video visit(s) which were concluded without incident. AA- 15.Defendant Starzyk instructed Appellant to exit the visiting room and enter into the offender holding area, while in the offender holding area, Defendant Starzyk directed Appellant to a semi - partitioned stall, which Appellant thought was to submit to a standard pat search that concludes inmates participating in video visits. AA-15-AA-16. Defendant Starzyk instructed Appellant to remove his clothing and submit to a strip search, unto which Appellant rebuffed, Defendant Starzyk's strip search order even though Administrative Directive 6.7 does

5

not explicitly state that inmates are to be strip searched at the conclusion of video visits. AA-184.

On June 7, 2024, Defendants Caron, Ogando toured Appellants then housing unit. AA-16.

While Defendants Caron, Ogando were in 9A, Appellant addressed his concerns with their policy of the Appellant having to submit to strip searches at the conclusion of video visits, although there being no explicit language in Administrative Directive 6.7. AA-184. Defendant Ogando acknowledged that there is no explicit language in Administrative Directive 6.7 authorizing strip searches at the conclusion of video visits, Defendant Caron also apprised Appellant that the strip search policy at the conclusion of video visits will continue. AA-17.

At the conclusion of Appellant's video visit on June 10, 2024, Defendant Coggeshall instructed Appellant to exit the visiting room and into the holding area, and to step into the partition. AA-17-AA-18. Defendant Coggeshall instructed the plaintiff to remove his clothing, underwear, and sneakers, then directed the Appellant to hand his items over. AA-18. Before the Appellant complied with Defendant Coggeshall instructions, he informed him that there is nothing in Administrative Directive 6.7 that specifically directs one to strip search the Appellant after virtual video visits. AA- 18.The Appellant removed all of his clothing as instructed by Defendant Coggeshall, further complying with Defendant Coggehall's instructions, the Appellant then lifted his arms, testicles, turn around, bend, squat, and cough while spreading his buttocks. AA-.18. The Appellant expressed dissatisfaction with Defendant Coggeshall for strip searching him in view of other prisoners and correctional staff who were not involved in the strip search process. AA-18. Appellent eventually got dressed and exited the offender holding area without further incident. Id.

Administrate Directive 6.7 previously read that: A strip search shall be conducted at the conclusion of any contact visit. AA-184. Fast forward, Administrative Directive 6.7 section 5 (b), (ix) was revised by Defendant Quiros to read: A strip search shall be conducted for the following circumstances: at the conclusion of any contact visit, or after entering any public visiting area.

6

AA-184. In May of 2024 the Appellant wrote a letter to Defendant Quiros, Quiros did not respond to Appellants correspondence, the Appellant's correspondence was forwarded to Defendant Caron's office for a reply. AA-153. Defendant Caron responded to the Appellants written correspondence standing on Administrative Directive 6.7 section 5 (b) (ix). Id.

In sum, Appellant's video visit did not involve any physical contact with visitors. AA-25.Visits at Robinson CI are continuously monitored by correctional staff.

Interestingly, Defendants justified the need to strip search prisoners by using the shared room / space theory. AA-46. The district court relied on a generalized theory that inmates could pass, kick contraband across the visiting room. AA-113. However, the Defendants have not put forth a scintilla of evidence that contraband has ever been introduced as a result of a video visit. Whether any inmate has obtained contraband during or after a video visit; Whether contraband has ever been passed between inmates in the visiting room during video visits; or whether contraband has been "kicked" or otherwise transferred across the visiting room in the manner that they suggested.

7

## SUMMARY OF ARGUMENT

The district court's decision should be reversed for independent reasons, given the irrefutable facts of this case, and drawing all inferences in Plaintiff's favor, the record demonstrates that the Defendants subjected him to unreasonable searches. Therefore, the district court's judgment should be reversed.

First, the court failed to properly apply the four - factor test of Turner v. Safley, 482 U. S. instead accepting speculative justifications without evidentiary support.

Secondly, the court improperly relied on Bell v. Wolfish, 441. U. S. 520 (1979) As a substitute for the Turner Analysis, ignoring the critical distinction between contact and non - contact visits.

Third, the court resolved disputed factual issues, including the layout of the visiting room in favor of Defendants, contrary to summary judgment standards.

Fourth, the policy of routine strip searches after non - contact video visits is unreasonable under the Fourth Amendment, particularly where no evidence of smuggling risk exists.

Lastly, the Defendants violated clearly established law, and are not entitled to qualified immunity.

## STANDARD OF REVIEW

The standard of review for the grant of summary judgment is de novo, construing the facts, resolving all ambiguities, and drawing all reasonable factual inferences, in the light most favorable to the non - moving party. Nick's Garage, Inc. v. Progressive Gas. Ins. Co., 875 F. 3d 107, 113 (2d Cir. 2017); Walsh v. N. Y. C. Housing Auth., 828 F. 3d 70, 74 ( 2d Cir. 2016)

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a); Walsh, 828 F. 3d at 74. A genuine dispute of material fact exists where the evidence is such that a reasonable jury could decide in the non - movant's favor. Anderson v. Liberty Lobby, Inc., 477 U. S. 242, 252, 106 S. Ct. 2505, 91 L. Ed 2d 202 (1986) ( requiring more than " the mere existence of a scintilla of evidence in support of the plaintiff's position"). As the Supreme Court said in an analogous setting, "if the factual context renders [ plaintiff's ] claim implausible...[ plaintiff ] must come forward with more persuasive evidence to support his claim than would otherwise be necessary. "Matsushita Elec. Indus., Co. v. Zenith Radio Corp., 475 U. S. 574, 587 (1986). The Supreme Court reaffirmed that, even when motive is a critical issue, summary judgment is appropriate if the plaintiff fails to "identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive. "Crawford - El v. Britton, 523 U. S. 574, 600 (1998).

In assessing the record to determine whether a genuine dispute about a material fact exists, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the non - moving party. This court, of course, is "free to affirm an appealed decision on any ground which finds support in the record, regardless of the ground upon which the trial court

9

relied." Beal v. Stern, 184 F. 3d 117. 122 (2d Cir. 1999) (quoting Millares Guiraldes de Tineo v. U.S., 137 F. 3d 715, 719 (2d Cir. 1998)).

Argument

I.   The District Court Failed To Properly Apply Turner's Four Factor Analysis

A.   The Legal Standard.

"When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. Turner v. Safley, 482 U. S. 78, 89, 107 S. Ct. 2254 (1987); There are several factors that determine whether a regulation is reasonable: (1) Whether there is a valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. [A] regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational. Moreover, the governmental objective must be a legitimate and neutral one. (2) [ Whether there are alternative means of exercising the right that remain open to prison inmates. (3). (T)he impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of an asserted right will have a significant "ripple effect" on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of prison officials. (4) [T]he absence of ready alternatives is evidence of the reasonableness of a prison regulation. But if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at de minimis (minimal) cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard. Turner, 482 U. S. at 89 - 91.

B.   Turner Factor One: The District Court Accepted A Hypothetical Risk Instead Of Requiring A Record Based Connection

The Defendant's asserted interest was premised off of security and contraband prevention, Appellant does not dispute that security is a legitimate concern. The error was when

10

the district court treated the legitimacy of security as the end of the inquiry, rather than asking whether routine strip searches after non - contact / video visits were rationally connected to that interest put on before this record. The district court erroneously reasoned that because video visits and contact visits occurred in the same general visiting room, contraband could be passed, kicked, or transferred between inmates. AA-113. But the record, as the Appellant has presented, indisputably showed that video visits were non - contact, monitored by correctional staff, and were in fact physically separated from visitor contact. The Defendants did not identify or produce any actual incident reports, or evidence showing that contraband had been introduced through video visits, AA-37-AA-49. which is central to Turner's first factor, that does not permit the court to stop its inquiry at "contraband is possible." If possibility alone were enough, every inmate leaving any shared institutional area, i.e. chow hall, gym, school, library, medical, chapel, or recreation could be strip searched merely because contraband might theoretically be passed between inmates. Turner requires more; a connection between the specific policy and the specific risk, and not a generalized fear of contraband.

Illustrating that routine strip searches after non - contact video visits bear no relation to the legitimacy of the Defendants theory put on this record, namely Defendant Caron's admission acknowledging that inmates cannot receive contraband from their visitors during video visits. AA-147 At #20. Similarly so, Defendant Coggeshall has never interdicted drugs from an inmate that participated in a video visit while assigned to the visiting post during relevant times. AA-131 at #19. The aforementioned are not a lack of isolated evidence, it is a complete absence of empirical support for the policy applied to non - contact video visits.

The Second Circuit has made it clear that "[p]rison officials cannot rely on conclusory assertions..but must offer evidence that the restriction is reasonably related to legitimate penological interests." See Salahuddin v. Goord, 467 F. 3d At 274 (2d Cir. 2006).

Next the district court's own reasoning demonstrates that there isn't a "rational connection" between the challenged policy and the asserted penological interest, that must be

11

grounded in actual logic tied to the record and not assumptions. The connection was never established!

Here the Defendants justification relied on one factual premise; inmates that participate in non - contact video visits are in close proximity to inmates that participate in contact visits, such that contraband could be obtained from outside visitors or a separate inmate. AA -48.Contrary to such the district court explicitly acknowledged that it did not know the precise layout, distance, or spatial relationship between the areas. AA-113. This concession by the court is dispositive because if the court does know, (1) how far apart the areas, (2) whether barriers exits, (3) whether inmates can physically access each other, or (4) whether monitoring by correctional staff prevents inmate interaction, then the court cannot accurately determine whether contraband transfer is realistically possible, or only that it is theoretically conceivable. Under Turner, this notion fails. This court has already rejected strip search practices unsupported by specific, contextual evidence. See Weber v. Dell, 804 F. 2d 796 802.

In sum, the district court improperly deferred to prison officials by accepting speculative security justifications without requiring the evidentiary showing that Turner v. Safely demands. Factor one favors Appellant.

C. Turner Factor Two: The Court Did Not Meaning Fully Ask Whether Appellant Had Any Alternative Means To Preserve The Right

Turner's second factor asks whether alternative means remain open to the inmate. In this instant offense, the district court did not meaningfully analyze this factor. AA-115-AA-116.Here, the right at stake was not merely the right to receive a visit, but rather the right not to be subjected to an invasive strip search without a constitutionally sufficient justification after a non - contact video visit. Here, the district court's reasoning defies its own logic, used speculation In Place of Evidence.

12

First the court concluded that because of the layout of the visiting room, "number of custody staff compared to the number of inmates who wish to regularly participate in social visits, the visiting room is the only area where social visits can be conducted safely with appropriate protocols. AA-115. The district court further reasoned that separating inmates conducting video visits from contact visits would put undue strain on staff resources and prevent other inmates from accessing necessary court proceedings and similar meetings, and would also increase wait times for other inmates seeking social visits, thereby limiting access to those visits. AA-115.

The court went further, by stating that, inmates conducting both types of visits may equally possess contraband when returning to the housing unit. AA-115.

So if only inmates participating in contact visits were strip searched, this could allow inmates conducting video visits to obtain contraband from outside visitors or from other inmates, especially if inmates conducting contact visits know that inmates conducting video visits will not be searched. AA-115-AA-116. The district court also erroneously concluded that "no ready alternatives to strip searching all inmates leaving the visiting room exists citing Covino v. Patrissi, 967 F.2d At 79 ( concluding that there do not appear to be any alternative means that would allow [ an inmate ] to exercise his limited bodily privacy rights at the same time allow [ the prison ] to achieve fully the effectiveness of [random visual body - cavity] searches.") AA-116.

The district court's reasoning must fail as a matter law based upon the facts, and credible evidence presented below.

The district court's analysis regarding the undue strain from accessing court proceedings and similar meetings must fail. AA-115. The Appellant presented undisputed evidence that establish, precise and workable alternatives. Appellant demonstrated that video visits week day schedule are from 6:30 pm - 7:30 pm; 8:00 - 9:00 pm. AA-185. Only one housing unit per time slot are accorded video visits. AA-14. And upon exiting the visiting room, contact visits and video visits do not come within the same province of one another. AA-14. On weekends, video

13

visits take place from 9:00 am - 10:00 am. AA-187. During the aforementioned times, there are no court proceedings or similar movements that the court introduced, not defendants as possible theories, of how contraband transfer occurs / occurred during these specific time windows. Instead, the court relied heavily on generalized hypothetical risks, which is insufficient at summary judgment, in light of Appellant calling out the non - competing institutional demands i. e. , court movements etc., and how the district court's refusal of separation of the scheduling reality is impractical. As it currently stands the court's generalized assumptions, record reflects a scheduling system capable of separation and monitoring, in which the Defendants themselves never tied with evidence the district court's hypothetical "possible" movements and speculative security concerns. Summary judgment cannot rest upon mere speculation. See Fed. R. 56 of civ Proc. The Supreme Court in Turner v. Safley, 482 U. S. 78 (1987) and Overton v. Bazzetta 539 U. S. 126 (2003) has held and repeatedly emphasized that prison deference is not "toothless," and courts must still determine whether the asserted connection between the restriction and the governmental objective is grounded in evidence rather than abstraction.

1. The District Court Misapplied Covino and Reynolds

The district court erroneously relied on Covino v. Patrissi, 967 F. 2d 73 2d Cir. 1992), Reynolds v. Quiros, 990 F. 3d 286 (2d Cir.2021), because both cases involved materially different factual circumstances and substantially greater evidentiary support than exists here.

To begin, Covino does not authorize blanket strip searches after non - contact video, needless to say the Covino court, upheld random visual body cavity searches conducted in a maximum security prison that housed violent offenders, where prison officials produced evidence of serious and ongoing institutional security concerns, which included documented contraband problems and inmate violence. The searches in Covino were tied to the need to control weapons and contraband in a dangerous correctional environment. Covino did not involve inmates participating solely in non - contact or video visitation. By contrast, this instant

14

offense involves routine strip searches after non - contact video visits, where Defendants presented no evidence of contraband ever being introduced into the facility during video visits.

Simply put, inmates that participate in video visits do not pose the same risk as those that participate in contact visits." Turner requires a "valid, rational connection" supported by evidence which is absent here, and not rely on conjecture.

Next, the district court's reliance on Reynolds still doesn't resolve the constitutional question here, where Reynolds also involved different. factual and institutional concerns, which included restrictive housing conditions associated with high security concerns. Reynolds did not address the constitutionality of routine strip searches imposed on inmates following non - contact video visits, where inmates had no physical contact with members of the public.

Reynolds also did not involve the same evidentiary deficiencies that are present here, where the district court acknowledged that it did not know the precise layout or distance between inmates conducting contact visits and those conducting video visits. AA-113 Nevertheless, the district court concluded that the non - contact video visit and contact visit distinction was "immaterial". AA-113. That unresolved factual issue goes directly to the reasonableness inquiry, as the physical configuration of the visiting room bears directly on whether inmates participating in video visits realistically faced the same risk of contraband transfer. "Courts are barred from resolving disputed issues of facts. If there are material factual issues the court must deny summary judgment". See Knight v. U. S. Fire Insurance Co., 804 F. 2d 9,11 (2d Cir. 1986). Cert. denied, 480 U. S. 932, 94 L. Ed 2d 761, 107 S Ct 1569 (1987).

Unlike Reynolds, this case also involves the district court's refusal to conduct an in camera review of surveillance footage.AA-09. This would have clarified the precise layout and operational realities of the visiting room. When the district court declined to review said evidence the district court resolved factual ambiguities in Defendant's favor which is barred. See Anderson v. Liberty Lobby Inc., 477 U. S. 242, 256 (1986).

15

In short, neither Covino nor Reynolds supports the broad proposition adopted by the district court - that prison officials may routinely strip search inmates after non - contact video visits based solely on hypothetical contraband contraband concerns unsupported by evidence, viewing the light most favorable to the appellant the district court misapplied Turner factor number two, which requires a reversal in favor of Appellant.

D. Turner Factor Three: The District Court Misapplied Factor Three by Presuming Institutional Burden Without Record Evidence

Turner's third factor requires courts to evaluate "the impact accommodation of the asserted constitutional right will have on guards, other inmates, and on the allocation of prison resources generally. See Turner v. Safley, 482 U. S. at 90 Turner's third factor has not been satisfied by the Defendant's generalized invocations of "security" or administrative burden. Defendants must identify accommodating the asserted right would disrupt institutional operations under the facts that have been presented or rather lack thereof.

In this instance, the district court did not require the Defendants to demonstrate what, if any, operational burden would result from limiting routine strip searches after non - contact / video visits, instead, the district court simply assumed that any limitation on blanket strip searches would adversely affect prison administration. AA- 116

The Defendants relied on speculative theories that contraband could be theoretically be passed within the visiting room because contact visits and video visits occur in the same general area. But the rub is, speculation is not evidence and the record contains no evidence that contraband has ever been introduced through an inmate participating in a non - contact video visit, no evidence that inmate participating in non - contact video visits have allegedly used the "kick contraband across the floor" theory described by the Defendants. AA-100 Defendants have not presented evidence of the actual institutional burden that would result from exempting video visits from blanket strip searches. Nonetheless, the district court accepted the Defendants assertions at face value without requiring any evidentiary showing that

16

accommodating Plaintiff's rights would create a genuine operational burden. The district court's approach improperly transformed Turner's deference into complete judicial abdication. "While courts afford prison officials substantial deference, the Supreme Court has repeatedly made clear that such difference is not limitless and does not relieve prison officials of the obligation to demonstrate a reasonable relationship between the challenged practice and legitimate penological concerns See Turner v. Safely, 482 U. S. At 89 - 90; Bell v. Wolfish, 441 U. S. 520, 559 (1979).

Moreover, the actual impact of accommodating Appellant's asserted right would be minimal. Video visits do not involve physical interaction between inmates and visitors. AA-146 Video visits are scheduled at fixed times, monitored by correctional staff, and are conducted under controlled conditions. Unlike contact visitation, accommodating Appellant's rights would not require additional staffing, structural modifications, or extensive reallocation of prison resources. Defendants have not identified any concrete evidence demonstrating otherwise.

In contrast, the burden imposed upon Appellants Fourth Amendment rights is severe. Routine strip searches constitute one of the most invasive forms of governmental intrusion upon bodily privacy and human dignity. See Bell, 441 U. S. At 558. In this instance, the searches are performed automatically and categorically, without individualized suspicion and without any showing that inmates participating in video visits present the security threat comparable to inmates participating contact visits.

Thus, the Defendants have failed to establish that accommodating the Appellants constitutional rights would impose any meaningful burden on institutional operations, while the challenged policy imposes a substantial and recurring intrusion upon Appellants bodily privacy. The district court's conclusion to the contrary, rested not upon record evidence, but upon conjecture and generalized security fears untethered to the actual circumstances of non - contact video visits. Under Turner, the exaggerated response given, cannot withstand constitutional scrutiny.

17

As a result, factor three weighs in favor of Appellant.

E. Turner Factor Four: The Existence Of Obvious, Easy Alternatives That Fully

Accommodate Appellant's Fourth Amendment Right At De Minimis Cost

The fourth Turner factor asks whether "an alternative exists that fully accommodates the prisoners rights at de minimis cost to valid penological interests. "Turner, 482 U. S. At 90 - 91. Although prison officials need not adopt the least restrictive alternative, the existence of an obvious, readily available alternative is evidence that the challenged policy is an exaggerated response to institutional concerns. Precisely the case here!

In this instance, Appellant did / does not argue that Defendants lacked authority to search him or other inmates when reasonable suspicion existed. Nor did Appellant challenge strip searches following contact visits, where physical interaction creates a materially different opportunity for the introduction of contraband. Instead, Appellant challenged only the blanket policy requiring routine strip searches after non - contact and video visits regardless of individualized suspicion.

There were several obvious and readily available alternatives that existed that would accommodate institutional security concerns without subjecting inmates participating in non - contact video visits to automatic strip searches.

The Appellant presented evidence that video visits occurred only during limited week day evenings and week day hours when court proceedings are not taking place. AA-185 -AA-187 This alone demonstrated that Defendants already operated video visitation on a separate schedule, making separation measures feasible. Appellant argued that inmates participating in video visits can be physically separated from inmates participating in contact visits. AA-14.The exact layout and exact distance between inmates participating in video and contact visits were

18

critical factual issues, in which the district court acknowledged that it did not know the layout of the visiting room. AA-113

First, Defendants and other correctional staff could conduct routine pat searches following non - contact video visits, while reserving strip searches for situations involving articulable reasonable suspicion. Secondly, Defendants could have enforced procedures for allowing inmates that participate in non - contact video visits to submit to searches via hand held metal detectors or body scanning technology. Third, correctional officials could continue to visually observe inmates as they returned to their housing units. Fourth, targeted reasonable suspicion searches based upon individualized conduct would have been feasible, however, Defendants presented no evidence that any of the aforementioned alternatives were considered and rejected, nor was there any evidence demonstrating that such measures would have been ineffective.

Even more interesting, was the district court's conclusion, when no alternatives(s) were considered, when prison officials asserted generalized security concerns. Such an approach is inconsistent with Turner's Fourth Factor, which requires courts to evaluate whether obvious alternatives demonstrate that prison officials have overreacted to perceived security risks. Turner also does not permit prison officials to adopt the most intrusive policy available merely because it is convenient, nor does Turner allow courts to defer blindly to the speculative assertions untethered to the evidentiary record."The existence of obvious easy alternatives may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns". Turner v. Safley, 482 U. S. 78, 90 (1987)." Prison officials are not entitled to blind deference where a plaintiff identifies an alternative that "fully accommodates the prisoner's rights at de minimis cost to valid penological interests. " Id. At 91.

In sum, the availability of multiple less intrusive alternatives demonstrates that Defendants adopted an exaggerated response unsupported by the evidentiary record, and

because defendants failed to show why these readily available alternatives would inadequately protect institutional security, the fourth Turner factor strongly favors appellant.

II. The District Court Improperly Collapsed Turner Into Bell v. Wolfish And Failed To Conduct The Required Constitutional Analysis

The district court committed reversible error by treating Bell v. Wolfish, 441 U. S. 520 (1979) as dispositive of Appellants claim while failing to meaningfully apply the individualized constitutional inquiry required under Turner. Instead of examining whether the blanket strip search policy imposed after non - contact video visits was reasonably related to legitimate penological interests under Turner, because the court ended the required analysis once it concluded that Bell permits visual body cavity searches at the conclusion of contact visits and since video visits occur in the same general vicinity as contact visits, then strip searches after video visits is justified. AA-121-AA-122.

That was error on the district court's part. Bell did not create a rule authorizing all strip searches whenever defendants invoke security concerns. To the contrary, Bell emphasized that courts must conduct a "balancing of the need for the particular search against the invasion of personal rights, search entails, considering the scoop, manner, justification, and place of the search. The Supreme Court in Bell has repeatedly stressed that the inquiry is fact sensitive and dependent upon the actual security justification supporting the challenged practice.

In this instant offense, the district court bypassed the required analysis under Turner and accepted the defendants assertions that contraband could theoretically be kicked, passed, or hidden somewhere within the visiting room because video visits and contact visits occur in the same physical space. AA-114. The court did not require the defendants to produce any

20

evidence that inmates participating in video visits has ever introduced contraband into the institution, nor did the court identify any documented incident involving contraband being transferred in the manner hypothesized by the defendants. Turner requires the defendants to present more than their conclusory assertions and speculative fears presented on this record. AA-48

The Supreme Court has made clear that courts must determine whether the asserted connection between the regulation and the governmental objective is logical and supported by evidence, not merely conceivable. See Turner v. Safely, 482 U. S. 78 (1987); see also Shakur v. Selsky, 391 F. 3d 106 (2d Cir. 2004) (requiring a valid, rational connection between the restriction and the asserted governmental interest). When the district court credited the defendants' unsupported speculation as sufficient proof at summary judgment, the court essentially relieved the defendants of their burden by resolving factual disputes in their favor.

The district court's error was more apparent when it conflated Bell's deferential balancing framework with Turner's structured constitutional inquiry, that requires courts to evaluate four separate factors. The court did not meaningfully analyze the aforementioned factors, rather, the court accepted the defendant's generalized security concerns as automatically dispositive under Bell. Turner requires more than deference to prison officials. Here, the district court's reasoning converted Turner into a rubber stamp once the defendants invoked institutional security. The district court did not demand any evidentiary support from defendants, nor did the court analyze or scrutinize whether the blanket strip search policy after video visits was actually necessary. The Fourth Amendment does not disappear simply because prison officials invoke the word "security." Second Circuit precedent has recognized that suspicionless strip searches disconnected from individualized risk is unconstitutional. See Shain v. Ellison, 273 F. 3d 56 (2d Cir. 2001).

21

Similarly so, Bell does not authorize suspicionless searches disconnected from individualized factual justification. Bell involved contact visits where inmates physically interacted with outsiders that presented direct opportunities for contraband exchange. In this instance, Appellant, by contrast, challenged non - contact video visits where no physical contact with outside visitors occurred. AA-13 AA-14. Such a distinction matters! When the district court collapsed Bell into a broad authorization for all post visit strip searches regardless of the nature of the visit the district court eliminated the constitutional distinction between contact and non - contact encounters altogether. This reasoning would permit defendants to conduct suspicionless strip searches after essentially, any movement within a correctional facility so long as officials speculate that contraband might be transferred somewhere within the prison environment, which is not the law. If this is accepted, such reasoning would erase any limiting principle from the Fourth Amendment analysis.

Accordingly, because the district court substituted generalized deference for the meaningful constitutional scrutiny required by Turner, failed to view the evidence in the light most favorable to Appellant, relied upon speculative assertions unsupported by record evidence, and improperly treated Bell as dispositive without conducting the required fact - specific inquiry, summary judgment should be reversed as to this claim.

III. The District Court Improperly Resolved Disputed Material Facts In Favor Of Defendants In Violation Of Anderson v. Liberty Lobby, Inc.

A. Standard Of Review

This court reviews a district court's grant of summary judgment de novo, applying the same standards that governed the district court's decision. Anderson v. Liberty Lobby, Inc., 477 U. S. 242, 255 (1986). Summary judgment may be granted only where "there is no genuine dispute as to any material fact " and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (a). Courts must resolve all ambiguities and draw all reasonable inferences in favor of the non moving party. Anderson, 477 U. S. At 255. Courts may not weigh evidence, assess

22

witness credibility, or choose between competing factual inferences. Id. Rather, the question is whether a reasonable jury could return a verdict for the nonmoving party based on the evidence presented. Id At 248.

Even this court has repeatedly emphasized that, at summary judgment, courts must not resolve disputed factual issues in favor of the moving party. See Tolan v. Cotton, 572, U. S. 650, 656 - 57 (2014) (reversing summary judgment because the lower court failed to credit evidence favorable to the nonmovant); Jeffreys v. City of New York, 426 F. 3d 549, 553 (2d Cir. 2005) ('In determining whether there are genuine issues of material fact, we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."; Salahuddin v. Goord, 467 F. 3d 263, 272 (2d Cir. 2006). Where a district court accepts one party's version of disputed facts, disregards evidence favorable to the nonmovant, or treats contested factual questions as established, reversal is required because such determinations are reserved for the fact finder. Anderson, 477 U. S. At 255; Tolan, 572 U. S. At 656 - 57.

Here, the district court acknowledged that it did not know the precise distance or layout of the visiting room. AA-113 The court even refused to review video evidence invited by the appellant, which illustrated the precise, physical makeup of the visiting room. AA-09. Nevertheless, despite the court admitting its uncertainty regarding the facts underlying the defendant's security justification, the court accepted defendant's version of events and concluded that inmates participating in video visits posed the same contraband risk as inmates participating in contact visits. AA-113

Such a conclusion by the district court was impermissible at the summary stage.

The Supreme Court has repeatedly instructed that courts may not resolve factual uncertainties in favor of the moving party. See Anderson v. Liberty Lobby, Inc., 477 U. S. 242, 255 (1986). When competing inferences may reasonably be drawn from the evidence, the court

23

must adopt the inference favorable to the nonmoving party. Tolan v. Cotton, 572 U. S. 650, 657 (2014). The district court did the opposite.

The physical layout of the visiting room was not a collateral issue, it was central to defendants entire justification for the challenged strip - search policy. Defendants argue that inmates participating in video visits could obtain contraband because contact visits and video visits occurred within the same room. AA-46 Whether that theory was plausible necessarily depended upon the actual layout of the room, the distance involved, the location of the video visit stations, the degree of separation between inmates, the presence of correctional staff, and the feasibility of physical transfers.Those facts directly affected whether defendants could establish a rational connection between routine strip searches and the asserted security concern. Rather than examine the available evidence.AA-188. The district court declared the precise layout immaterial and accepted defendant's speculative theory that contraband could be transferred regardless of the room's configuration. AA-113 In doing so, the court improperly transformed an unresolved factual dispute into an established fact. Nothing in the record conclusively established that inmates participating solely in video visits had the same opportunity to obtain contraband as inmates engaged in contact visits. To the contrary, appellant sought to present evidence demonstrating substantial separation between the groups.

The court's refusal to review the video evidence further underscores the error. AA-09.Having declined to examine evidence that could confirm or refute defendant's theory, the court lacked a proper basis for concluding that the disputed facts favored defendants.

A court cannot avoid reviewing evidence relevant to a factual dispute and then resolve that dispute against the non movant, doing so effectively shifts the burden from the moving party to the non moving party and contravenes the fundamental principles governing summary judgment.

Moreover, the district courts repeated, credited, speculative assumptions and hypothetical risks, where the court credited Defendants theory without actual evidence that

24

contraband could be kicked, passed, or otherwise transferred throughout the visiting room.AA-100.Despite the lack of evidence showing that such transfers had occurred, that video - visit inmates had ever been implicated in contraband smuggling,or that the physical conditions of the room made such transfers realistically possible. At summary judgment, speculation cannot substitute for evidence. See Major League Baseball Properties, Inc. V Salvino, Inc., 542 F. 3d 290, 310 (2d Cir. 2008). (" conclusory statements, conjecture, or speculation "cannot support summary judgment).

Accordingly, because genuine factual disputes existed regarding the layout of the visiting room, the degree of separation between contact and video visitation areas, the actual opportunities for contraband transfer, and the necessity of routine strip searches following non - contact video visits, the district court violated the core principles of Anderson v. Liberty Lobby Inc. by resolving material factual disputes in defendants favor. The grant of summary judgment should therefore be reversed as a matter of law.

IV. Routine Strip Searches After Non - Contact Video Visits, Absent Individualized Suspicion Violate The Fourth Amendment

The district court erred in concluding that routine strip searches conducted after non - contact video visits are constitutionally permissible as a matter of law. AA-125. Although incarcerated individuals possess diminished privacy rights, the Fourth Amendment continues to prohibit unreasonable searches, and prison officials remain obligated to demonstrate that highly intrusive searches bear a reasonable relationship to legitimate penological interests. Under Supreme Court and Second Circuit precedent defendants failed to make that showing here.

The Supreme Court has consistently recognized that visual body cavity searches constitute one of the most severe invasions of personal privacy permitted within correctional institutions. In Bell v. Wolfish, 441 U. S. 520 (1979), the court upheld visual body cavity searches following contact visits only after emphasizing the substantial opportunity for inmates to receive contraband directly from outside visitors. The court did not establish a categorical rule

25

authorizing strip searches after every type of prison visit. Rather, Bell instructed courts to balance the need for the particular search against the invasion of personal rights involved, considering the scoop, manner, justification, and place of the search. Id. At 559. The circumstances presented here are fundamentally different from those in Bell. Here, appellant was subjected to routine strip searches following non - contact video visits, which no physical interaction with any outside visitor occurred. AA-14 The rationale underlying in Bell - the direct transfer of contraband from an outside source through physical contact was therefore absent.

A panel from this court even recognized that strip searches, while sometimes permissible, remain subject to meaningful constitutional scrutiny. See Covino v. Patrissi, 967 F. 2d 73 (2d Cir. 1992) ( the court upheld random visual body cavity searches only after emphasizing the unique security concerns present in that facility's housing unit where inmates demonstrated histories of violence, escape, and contraband possession. Again, Covino did not involve non - contact video visitation, nor did it establish that prison officials may conduct strip searches whenever a generalized security concern can be imagined. To the contrary, Covino reaffirmed that courts examine whether the challenged practice is reasonably related to actual institutional needs. In this instance, it is not!

Here, defendant Caron admits that prisoners can't receive contraband from their visitors during video visits. AA-147 At #20. Also, defendant Coggeshall's admit that he has not interdicted drugs from an inmate at the conclusion of video visits while assigned to that post. AA-131 At #19. The defendants' concession taken with their failure of unsupported evidence of contraband ever being introduced through a video visit, further establishes that their justifications are not reasonably related to legitimate penological interests.

Accordingly, routine strip searches conducted after non - contact video visits, absent individualized suspicion or evidence demonstrating a risk of contraband introduction, and therefore violates the Fourth Amendment. The district court's contrary conclusion improperly extended Bell beyond its facts, relied upon speculation rather than evidence, and failed to apply

26

the meaningful constitutional scrutiny required by Bell, Turner and this court's precedent. Reversal is therefore required.

V. Defendants Are Not Entitled To Qualified Immunity

The district court further erred when it concluded that defendants are entitled to qualified immunity. Qualified immunity protects officials only where their conduct does not violate a constitutional right that was clearly established at the time of the challenged conduct. Pearson v. Callahan, 555 U. S. 223, 231 (2009). The doctrine protects reasonable mistakes, but it does not shield officials who act contrary to settled constitutional principles or who seek to extend existing precedent beyond its recognized limits. Hope v. Pelzer, 536 U. S. 730, 741 (2002).

The defendants fail both prongs of the qualified immunity inquiry. First, a reasonable jury could conclude that routine visual body cavity searches following non - contact video visits violate the Fourth Amendment. The Supreme Court has repeatedly recognized that strip searches and visual body cavity searches constitute one of the most serious invasions of personal privacy permitted in a correctional setting. See Bell v. Wolfish, 441 U. S. 520, 588 - 60 (1979). Although Bell upheld such searches following contact visits, the court did so only after emphasizing the substantial opportunity for inmates to receive contraband directly from outside visitors during physical contact. Id. At 558. Bell did not establish a categorical rule authorizing strip searches after every prison visit regardless of the circumstances.

Instead, Bell required courts to balance "the need for the particular search against the invasion of personal rights that the search entails." Id. At 559. Here, defendants subjected appellant to routine strip searches after non - contact video visits where no physical contact with outside visitors occurred. AA-14 Even defendant Caron's open admission the inmates could not directly receive contraband from those visitors has to account for the unreasonableness of the strip searches appellant was subjected too. AA-13 Thus, a reasonable jury could conclude that the searches lacked a sufficient security justification and were therefore unreasonable under the Fourth Amendment.

27

Secondly, the constitutional violation was clearly established. The Supreme Court has repeatedly instructed that clearly established law must not be defined at an excessively high level must not be defined at an excessively high level of generality. See Ashcroft v. AL - Kidd, 563 U. S. 731, 742 (2011). At the same time, officials are not entitled to qualified immunity merely because no prior case addressed the precise factual scenario at issue. See Hope, 536 U. S. At 741. The relevant question is whether existing precedent gave prison officials fair warning that their conduct was unconstitutional. Id. By the time of the challenged searches, Bell had clearly established that the constitutionality of visual body cavity searches depends upon the existence of a legitimate security justification proportional to the intrusion involved. 441 U. S. At 559. Turner v. Safely, further established that prison practices that burden constitutional rights must bear a valid, rational connection to a legitimate penological interest and may not rest upon arbitrary or irrational assumptions. 482 U. S. 78, 89 - 90 (1987).

Similarly so , this court's precedent emphasized that visual body cavity searches require meaningful constitutional scrutiny. See Covino v. Patrissi, 967 F. 2d 73 - 78 - 80 (2d Cir. 1992), where a panel from this court, upheld random visual body cavity searches only after carefully examining the extraordinary security concerns presented by a housing unit containing prisoners with histories of violence, escape attempts, and contraband possession. Covino did not hold that prison officials may conduct blanket strip searches at the conclusion of video visits. In this instant offense, by contrast, defendants imposed blanket strip searches after routine video visits without identifying any comparable, individualized, or unit - specific risks. Thus, Covino underscores the deficiencies in defendants justification, where Covino required concrete evidence of heightened danger tied to the setting, here defendants rely on generalized concerns that do not or have not arisen from the actual conditions of video visitation. Rather, Covino reaffirmed that the challenged practice must be reasonably related to actual institutional needs.

There are no Supreme Court or Second Circuit decisions that authorized routine visual body cavity searches following non - contact video visits. To the contrary, the governing

28

precedents consistently linked suspicionless post - visitation strip searches to circumstances involving direct opportunities for contraband introduction. Bell, 441 U. S. At 558 - 60. Because video visitation eliminates physical contact between inmates and outside visitors, reasonable officials would have understood that the rationale underlying Bell was absent. Hope v. Pelzer is particularly instructive here. In hope the Supreme Court rejected qualified immunity because prior decisions gave officials fair warning that their conduct was unconstitutional even though no prior case involved identical facts. 536 U. S. At 741 -45. The same principles apply here. Existing precedent clearly established that visual body cavity searches require a legitimate justification proportionate to their severe intrusion upon personal privacy. It likewise clearly established that prison regulations must be supported by a rational connection to actual security concerns. Bell, 441 U. S. At 559; Turner 482 U. S. At 89 - 90. Defendants in this case had fair warning that conducting routine strip searches after non - contact video visits, absent evidence of contraband transfer or individualized suspicion, raised serious constitutional concerns!

Moreover, Administrative Directive 6.7 itself undermines defendants' claim of objective reasonableness. Administrative Directive 6.7 expressly authorizes strip searches following contact visits. AA-18. Administrative Directive 6.7 does not authorize routine strip searches following non - contact video visits. AA-16. Reasonable correctional officials familiar with their own governing directives would have recognized that contact and non - contact visitation present materially different security concerns. To be clear, a violation of a prison directive does not itself establish a federal constitutional violation. See Davis v. Scherer, 468 U. S. 183, 194 - 96 (1984). Nor does the existence of a departmental policy define the scope of Fourth Amendment protections. However relevant, are the administrative directives to the qualified immunity analysis as it demonstrates that defendants; (prison officials) recognized a distinction between contact and non - contact visitation. The aforementioned directive provided notice that the two situations involved different security considerations and therefore should not necessarily be treated alike.

29

The distinction between the two visits is key, especially where the district court sought to rely upon Bell, where the court approved routine strip searches following contact visits, because inmates had direct physical access to outside visitors. AA-49.By contrast, the defendants improperly applied the same intrusive search practice to the appellant, as well as other inmates returning from non - contact video visits despite the absence of the very risk that justified the searches in Bell. A reasonable correctional official familiar with Bell, as defendant Caron was. AA-190, AA-191 One would have recognized that extending Bell's rationale to non - contact video visits required additional justification beyond the mere fact that a visit occurred.

Nevertheless, defendant Quiros promulgated the practice of inmates being strip searched at the conclusion of non - contact video visits, despite no such language expressly stating so. AA-184. See Tangretiv. Bachmann, 983 F. 3d 609 (2d Cir. 2020) (holding that a policy maker / senior official who promulgated an unconstitutional policy with a culpable mental state is more directly and personally involved. Defendant Caron created the unconstitutional policy at Robinson Cl., AA-159. Furthermore defendant Caron was put on notice as to what Bell v. Wolfish, connoted. AA-151.Defendant Ogando supervised the unconstitutional policy that subjected the appellant to a blanket policy of strip searches after non - contact video visits. AA-168. Defendants Starzyk and Coggeshall both had direct involvement in the strip searches of the appellant following non - contact video visits, absent reasonable suspicion. AA-27. Based upon the aforementioned, existing precedent gave reasonable official fair notice that routine strip searches following non - contact video visits, without individualized suspicion, were unconstitutional.

Accordingly, a reasonable official in the defendant's position knew or should have known that routine strip searches were not justified by the same security concerns that supported searches after contact visits, thus violating appellant's clearly established Fourth Amendment rights, thus they are not entitled to qualified immunity.

CONCLUSION

For the foregoing reasons, the district court's judgment should be reversed. Viewing the evidence in the light most favorable to appellant, a reasonable jury could conclude that defendants violated the Fourth Amendment by subjecting him to routine visual body cavity searches following non - contact video visits absent individualized suspicion. The district court improperly relied upon speculation rather than evidence, extended Bell v. Wolfish beyond its facts, failed to apply the factors set forth in Turner v. Safely, resolved disputed issues of material fact against the non - moving party in contravention of Anderson v. Liberty Lobby, Inc., and erroneously concluded that defendants were entitled to qualified immunity.

The record presented contains genuine disputes of material fact concerning the security risks associated with non - contact video visitation, the physical layout of the visitation area, the availability of less intrusive alternatives, and whether defendants possessed any evidence linking non - contact video visits to the introduction of contraband. Those disputes were for a jury and not for the district court to resolve. Because reasonable correctional officials would have understood that contact visits and non - contact visits present materially different security concerns, and because clearly established law required a legitimate, evidence - based justification for such highly intrusive searches, defendants are not entitled to qualified immunity.

In sum, Appellant respectfully requests that this court:

1. Reverse the district court's grant of summary judgment;

2. Vacate the judgment entered in favor of Defendants;

3. Reverse the district court's determination that Defendants are entitled to qualified immunity;

4. Remand this matter for trial on Appellant's Fourth Amendment claims and any further proceedings this court deems just and proper; and

5. Grant such other and further relief as the court considers appropriate.

Respectfully Submitted

Courtney Green

Plaintiff - Appellant, Pro Se

32

CERTIFICATE OF COMPLIANCE

The undersigned attorney certifies that the foregoing brief complies with the

requirements of Fed. R. App. P. 32 (a) (7) (B), because it contains less than 13,000 words

CERTIFICATE OF SERVICE

Green

V.

Quiros

Docket Number 26-865-CV

I, Courtney Green, hereby certify under penalty of perjury that on July 14, 2026, I served

a copy of appeal brief, separate appendix, by U. S. Mail to;

James Mancini
Assistant Attorney General
165 Capitol Ave
Hartford, CT 06106

7-14-2026
Date

signature



30 TROWEL ST.
BPT. CT 06607

## UNITED STATES POSTAL SERVICE.

**Retail**

### E

**US POSTAGE PAID**

**$36.60**

Origin: 06825
07/14/26
0825500432-20

## PRIORITY MAIL EXPRESS®

COURTNEY GREEN
30 TROWEL ST
BRIDGEPORT CT 06607-2209
(475) 332-6257

2 Lb 14.20 Oz

**RDC 07**

SCHEDULED DELIVERY DAY: 07/16/26 06:00 PM

C099

SHIP
TO:

 (475) 332-6257
USCA SECOND CIRCUIT
40 FOLEY SQ
NEW YORK NY 10007-1502

**USPS TRACKING® #**



9570 1121 6322 6195 8300 16



TO: