26 - 865 -CV

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

COURTNEY GREEN
Plaintiff - Appellant

V.

ANGEL QUIROS, ZELYNETTE CARON, LENNY OGANDO,
CORRECTIONAL OFFICER(S), STARZYK, COGGESHALL,
Defendant's - Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

APPENDIX - OF APPELLANT

COURTNEY GREEN
30 TROWEL STREET
BRIDGEPORT, CT 06607
Tel. (475) 332-6257
Email: greencourtney542@gmail.com

TABLE OF CONTENTS

District Court Docket Entries. AA-01 - AA-10

Verified Complaint. AA-11 - AA-23

Appellant's Declaration. AA-24 - AA28

Appellant's Local Rule 56 (a) 2 Statement. A-29 - A-33

Defendant's Motion For Summary Judgment AA - 34 - AA-66

Appellant's Brief In Opposition AA-67 - AA-85

Defendant's Local Rule 56 (a) (1) Statement AA-86 - AA-94

Order Granting Motion For Summary Judgment AA-95 - AA-125

Defendant Coggeshall Interrogatory Response AA-126 - AA-133

Defendant Coggeshall Admissions AA-134 - AA-142

Defendant Caron Admissions AA- 143 - AA-157

Defendant Caron Interrogatory AA - 158 AA - 159

Defendant Ogando Admission AA - 160 - AA - 168

Defendant Quiros Admissions AA - 169 - A A-175

Defendant Quiros Interrogatory AA -176 - AA-177

Defendant Starzyk Admission AA - 178 AA - 183

Request for Inclusion or Revision to an Administrative Directive AA - 184

Video Visiting Schedule AA - 185 -AA - 187

Appellant's Motion For In Camera Review AA - 188

Appellant's Notice of Appeal AA - 189

Level 2 Inmate Grievance Appeal AA - 190 - AA - 191

APPEAL,CLOSED,EFILE,PROSE,SA,TOF

# U.S. District Court
## District of Connecticut (New Haven)
## CIVIL DOCKET FOR CASE #: 3:24-cv-01317-VDO

Green v. Quiros et al
Assigned to: Judge Vernon D. Oliver
Cause: 42:1983 Prisoner Civil Rights

Date Filed: 08/14/2024
Date Terminated: 03/05/2026
Jury Demand: Both
Nature of Suit: 550 Prisoner: Civil Rights
Jurisdiction: Federal Question

**Plaintiff**

**Courtney Green**                     represented by  **Courtney Green**
30 Trowel Street
Bridgeport, CT 06607
Email: greencourtney542@gmail.com
PRO SE

V.

**Defendant**

**Quiros**                             represented by  **Dennis Victor Mancini**
*Commissioner*                                          Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
860-808-5450
Fax: 860-808-5591
Email: dennis.mancini@ct.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Owen Robert Eagan**
Connecticut Attorney General's Office
165 Capitol Avenue
Hartford, CT 06106
860-808-5450
Email: owen.eagan@ct.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Caron**                              represented by  **Dennis Victor Mancini**
*Warden*                                                (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Owen Robert Eagan**

AA- 01

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Ogando**
*Deputy Warden*

represented by **Dennis Victor Mancini**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Owen Robert Eagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Starzyk**
*Correctional Officer*

represented by **Dennis Victor Mancini**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Owen Robert Eagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Coggeshall**
*Correctional Officer*

represented by **Dennis Victor Mancini**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Owen Robert Eagan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/14/2024 | 1 | COMPLAINT against Caron, Coggeshall, Ogando, Quiros, Starzyk, filed by Courtney Green. (Fanelle, N.) (Entered: 08/15/2024) |
| 08/14/2024 | 2 | ORDER: We received your Complaint which has been assigned case number 3:24-cv-01317. In order to proceed, the filing fee or a Motion for Leave to Proceed In Forma Pauperis must be submitted to the Court by 9/13/2024 or the case will be subject to dismissal. Fee information and the Motion for Leave to Proceed In Forma Pauperis form may be found on the Court's website at ctd.uscourts.gov. Dismissal due by 9/13/2024.<br>Signed by Clerk on 8/14/2024. (Fanelle, N.) (Entered: 08/15/2024) |



| 08/14/2024 | 3 | Notice: Pursuant to Federal Rule of Civil Procedure 7.1, a disclosure statement must be filed with a party's first appearance, pleading, petition, motion, response, or other request addressed to the Court and must be supplemented if any required information changes during the case. Signed by Clerk on 8/15/2024. (Fanelle, N.) (Entered: 08/15/2024) |
|---|---|---|
| 08/14/2024 | | Judge Vernon D. Oliver and Judge Thomas O. Farrish added. (Reis, J) (Entered: 08/15/2024) |
| 08/14/2024 | 4 | Standing Protective Order Signed by Judge Vernon D. Oliver on 8/14/2024.(Gaskins, A) (Entered: 08/15/2024) |
| 08/14/2024 | 5 | Prisoner E-Filing Standing Order on Prisoner Electronic Filing Program Signed by Chief Judge on 6/22/2016.(Gaskins, A) (Entered: 08/15/2024) |
| 08/14/2024 | 6 | ELECTRONIC FILING ORDER FOR COUNSEL - PLEASE ENSURE COMPLIANCE WITH COURTESY COPY REQUIREMENTS IN THIS ORDER Signed by Judge Vernon D. Oliver on 8/14/2024.(Gaskins, A) (Entered: 08/15/2024) |
| 08/14/2024 | 7 | Notice of Option to Consent to Magistrate Judge Jurisdiction. (Gaskins, A) (Entered: 08/15/2024) |
| 08/22/2024 | 8 | Appearance of Self Represented Party by Courtney Green. (Shafer, J.) (Entered: 08/22/2024) |
| 08/28/2024 | | Filing fee received from Courtney Green: $ 405.00, receipt number BPT-14499 (Imbriani, S) Modified on 8/29/2024 (Oliver, T.). (Entered: 08/28/2024) |
| 08/29/2024 | | Docket Entry Correction re Filing Fee Received MODIFIED TO ADD THE RECEIPT NUMBER BPT-14499 TO THE DOCKET ENTRY (Oliver, T.) (Entered: 08/29/2024) |
| 08/30/2024 | 9 | Consent to Magistrate Judge Jurisdiction by Courtney Green (Attachments: # 1 envelope)(Gaskins, A) (Entered: 08/30/2024) |
| 10/09/2024 | | ENTERED IN ERROR Set Deadlines: Rule 26 Meeting Report due by 11/21/2024 (Samson, J) Modified on 10/9/2024 (Samson, J). (Entered: 10/09/2024) |
| 11/07/2024 | 10 | INITIAL REVIEW ORDER The Court enters the following orders: (1) Plaintiff may PROCEED on his Fourth Amendment claims against Commissioner Quiros, Warden Caron, Deputy Warden Ogando, and Correction Officers Starzyk and Coggeshall in their individual and official capacities. (2) Plaintiffs state law claim under Article First, Section 7 of the Connecticut Constitution may PROCEED at this time against Defendants in their individual capacities. Plaintiff has two options as to how to proceed in response to this Initial Review Order: (1) If Plaintiff wishes to proceed immediately only on claims as set forth above against Commissioner Quiros, Warden Caron, Deputy Warden Ogando, and Correction Officers Starzyk and Coggeshall, he may do so without further delay. If Plaintiff selects this option, he shall file a notice on the docket on or before **December 2, 2024**, informing the Court that he elects to proceed with service as to the claims set forth above. As Plaintiff is not proceeding in forma pauperis in this action, the Court will provide Plaintiff with documents to assist him effect service on the Defendants. |

AA-03

(2) Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted in his complaint that have been dismissed in order to attempt to state a viable claim, he may file an amended complaint by **December 9, 2024**. An amended complaint, if filed, will completely replace the original complaint, and the Court will not consider any allegations made in the original complaint in evaluating any amended complaint. The Court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Plaintiff elects to file an amended complaint, the complaint this Initial Review Order addresses will not proceed to service of process on any defendant.

(3) If the Court receives no response from Plaintiff by **December 9, 2024**, the Court will presume that Plaintiff wishes to proceed on the complaint as to the claims permitted to go forward in this Initial Review Order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner in the future. Signed by Judge Vernon D. Oliver on 11/7/2024. (Pastor, G) (Entered: 11/07/2024)

| Date | No. | Description |
|------|-----|-------------|
| 11/12/2024 | 11 | MOTION for the Court to order Marshals to serve Summons and Complaint on Defendants. by Courtney Green. Responses due by 12/3/2024 (Gaskins, A) (Entered: 11/12/2024) |
| 11/15/2024 | 12 | ORDER GRANTING Plaintiffs motion to proceed with the case and for court to effect service. ECF No. 11. Plaintiff has paid the fee in this action and the Court has concluded that Plaintiff may proceed on his (1) Fourth Amendment claims against Commissioner Quiros, Warden Caron, Deputy Warden Ogando, and Correction Officers Starzyk and Coggeshall in their individual and official capacities; and (2) state law claims under Article First, Section 7 of the Connecticut Constitution against defendants in their individual capacities. In light of Plaintiff's incarceration and the resulting difficulty Plaintiff is likely to encounter effectuating service, the Court enters the following orders: (1) The Clerk shall verify the current work address for Commissioner Quiros, Warden Caron, Deputy Warden Ogando, and Correction Officers Starzyk and Coggeshall with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint to them at their confirmed address within twenty-one (21) days of this Order, and report on the status of the waiver request on the thirty-fifth (35th) day after mailing. If a Defendant fails to return the waiver request, the Clerk shall arrange for in-person individual capacity service by the U.S. Marshals Service on that Defendant, and that Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d). (2) The clerk is instructed to prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal Service is directed to effect service of the Complaint and this Order on Commissioner Quiros, Warden Caron, Deputy Warden Ogando, and Correction Officers Starzyk and Coggeshall in their official capacities at the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106, within twenty-one (21) days from the date of this order and to file a return of service within thirty (30) days from the date of this order. (3) The Clerk shall mail a courtesy copy of the Complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General. (4) The Defendants shall file their response to the Complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If Defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. The Defendants may also include any additional defenses permitted by the Federal Rules. |

AA-04

(5) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within six months (180 days) from the date of this Order.
(6) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court.
(7) All motions for summary judgment shall be filed within seven months (210 days) from the date of this Order.
(8) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.
(9) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. He should also notify the Defendants or defense counsel of his new address.
(10) Plaintiff shall utilize the Prisoner E-filing Program when filing documents with the Court. Plaintiff is advised that the Program may be used only to file documents with the Court. Discovery requests shall not be filed with the Court, see D. Conn. L. Civ. R. 5(f), and must be served on Defendants' counsel by regular mail.
Signed by Judge Vernon D. Oliver on 11/15/2024. (Pastor, G) (Entered: 11/15/2024)

| | | |
|---|---|---|
| 11/15/2024 | | Set Deadlines: Discovery due by 5/14/2025; Dispositive Motions due by 6/13/2025 (Samson, J) (Entered: 11/15/2024) |
| 11/15/2024 | 14 | STANDING ORDER RE: INITIAL DISCOVERY PROTOCOLS Signed by Clerk on 11/15/2024.(Gaskins, A) (Entered: 12/04/2024) |
| 12/02/2024 | 13 | NOTICE of Change of Address by Courtney Green, Cleared PRISSCAN Flag (Corriette, M.) (Entered: 12/02/2024) |
| 12/10/2024 | | REQUEST FOR WAIVER of Service sent to Commissioner Quiros, Warden Caron, Deputy Warden Ogando, and Correction Officers Starzyk and Coggeshall on 12/10/2024. Waiver of Service due by 1/14/2025 (Gaskins, A) (Entered: 12/10/2024) |
| 12/10/2024 | 15 | ELECTRONIC SUMMONS ISSUED in accordance with Fed. R. Civ. P. 4 and LR 4 as to *Caron, Coggeshall, Ogando, Quiros, Starzyk* with answer to complaint due within *21* days. *Courtney Green* *30 Trowel Street* *Bridgeport, CT 06607*. (Gaskins, A) (Entered: 12/10/2024) |
| 12/10/2024 | | USM 285 forms together with Summons, Complaint, Order, IRO reviewed and sent to USM for service on defendant(s) Warden Zelynette Caron, Officer Herbert Coggeshall, Deputy Warden Lenny Ogando, Commissioner Angel Quiros, and Officer Richard Starzyk. (Gaskins, A) (Entered: 12/10/2024) |
| 12/27/2024 | 16 | WAIVER OF SERVICE Returned Executed as to Caron waiver sent on 12/10/2024, answer due 2/10/2025; Quiros waiver sent on 12/10/2024, answer due 2/10/2025. (Gaskins, A) (Entered: 12/27/2024) |
| 01/06/2025 | 17 | SUMMONS Returned Executed Caron served on 12/31/2024, answer due 1/21/2025; Coggeshall served on 12/31/2024, answer due 1/21/2025; Ogando served on 12/31/2024, answer due 1/21/2025; Quiros served on 12/31/2024, answer due |

AA-05

| | | |
|---|---|---|
| | | 1/21/2025; Starzyk served on 12/31/2024, answer due 1/21/2025. (Gaskins, A) (Entered: 01/06/2025) |
| 01/06/2025 | 18 | Consent to Electronic Notice by Courtney Green (Attachments: # 1 Envelope) (Gaskins, A) (Entered: 01/06/2025) |
| 01/06/2025 | 19 | WAIVER OF SERVICE Returned Executed (Gaskins, A) (Entered: 01/06/2025) |
| 01/21/2025 | 20 | NOTICE of Appearance by Owen Robert Eagan on behalf of Quiros, Caron, Ogando, Starzyk, Coggeshall (Eagan, Owen) (Entered: 01/21/2025) |
| 01/21/2025 | 21 | NOTICE of Appearance by Dennis Victor Mancini on behalf of Quiros, Caron, Ogando, Starzyk, Coggeshall (Mancini, Dennis) (Entered: 01/21/2025) |
| 01/21/2025 | 22 | MOTION to Dismiss by Quiros, Caron, Ogando, Starzyk, Coggeshall.Responses due by 2/11/2025 (Attachments: # 1 Memorandum in Support)(Mancini, Dennis) (Entered: 01/21/2025) |
| 01/21/2025 | 23 | NOTICE by Quiros, Caron, Ogando, Starzyk, Coggeshall re 22 MOTION to Dismiss (Attachments: # 1 Attachment A (FRCP 12), # 2 Attachment B (FRCP 41), # 3 Attachment C (Local Rule 7))(Mancini, Dennis) (Entered: 01/21/2025) |
| 01/23/2025 | 24 | WAIVER OF SERVICE Returned Executed filed by Starzyk. (Mancini, Dennis) (Entered: 01/23/2025) |
| 02/12/2025 | 25 | Memorandum in Opposition re 22 MOTION to Dismiss filed by Courtney Green. (Attachments: # 1 Envelope)(Gaskins, A) (Entered: 02/12/2025) |
| 02/20/2025 | 26 | REPLY to Response to 22 MOTION to Dismiss filed by Caron, Coggeshall, Ogando, Quiros, Starzyk. (Eagan, Owen) (Entered: 02/20/2025) |
| 03/07/2025 | 27 | ORDER **GRANTING** Motion to Dismiss 22 Plaintiff's Fourth Amendment claims for official capacity relief and state law claims for damages under Article First, Section 7 of the Connecticut Constitution.<br><br>Plaintiff seeks an injunctive order to remedy Fourth Amendment violations arising from unreasonable strip searches applied to inmates returning from non-contact and virtual video visits without probable cause at Carl Robinson Correctional Institution. (IRO at 11, ECF No. 10.) Because he is no longer housed in a DOC correctional institution (see Notice, ECF No. 13), Plaintiff is not subject to any continuing violation of the Fourth Amendment that can be remedied by an injunctive order against Defendants to prohibit such reasonable searches. See *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed."). Accordingly—as Plaintiff concedes (see Pl. Opp., ECF No. 25)—the official capacity claims against Defendants are now moot.<br><br>The Plaintiff is proceeding on claims for damages under Article First, Section 7. The Connecticut Supreme Court recognized a private cause of action for monetary damages under Article I, sections 7 and 9 of the Connecticut Constitution where the claims arose out of unreasonable searches and seizures of a private home and unlawful arrest by police officers. *Binette v. Sabo*, 244 Conn. 23, 47-49 (1998). In reaching its decision, the Connecticut Supreme Court "emphasize[d] that [its] decision to recognize a *Bivens*-type remedy in this case does not mean that a constitutional cause of action exists for every violation of our state constitution." *Id.* at 47. Although the Connecticut Supreme Court created a cause of action under |

AA-06

Article First, sections 7 and 9 for a *Bivens*-type claim, it has not applied section 7 of Article First in the context of a case filed by an inmate concerning an unreasonable search by correctional officials in the prison context.

Thus, Plaintiff's claims for damages under Article First, section 7 present a new context for a cause of action under the Connecticut Constitution. Because recognizing such a cause of action presents a novel and complex issue of state law, the Court will not exercise supplemental jurisdiction over the state constitutional claims and dismisses them without prejudice to Plaintiff's right to pursue such claims in state court. *See* 28 U.S.C. § 1367(c)(1) (permitting the district court to decline to exercise supplemental jurisdiction where claim "raises a novel or complex issue of State Law"); see *Baltas v. Dones*, No. 3:22-CV-38 (MPS), 2022 WL 1239989, at *20 (D. Conn. Apr. 27, 2022) (declining to exercise jurisdiction over prisoner's claims for damages under Article First, section 7 or 9); *Lopez v. Smiley*, 375 F. Supp. 2d 19, 23-26 (D. Conn. 2005) (declining to exercise supplemental jurisdiction over novel, complex, and undeveloped claims under Article First, Section 7 and other sections).

Plaintiff's Fourth Amendment claims against Defendants in their individual capacities will still proceed in this action.

Signed by Judge Vernon D. Oliver on 3/7/2025. (Pastor, G) (Entered: 03/07/2025)

| 03/21/2025 | 28 | ANSWER to 1 Complaint with Affirmative Defenses with Jury Demand by Caron, Coggeshall, Ogando, Quiros, Starzyk.(Eagan, Owen) (Entered: 03/21/2025) |
| 04/23/2025 | 29 | MOTION for Extension of Time by Courtney Green. (Attachments: # 1 Envelope) (Gaskins, A) (Entered: 04/23/2025) |
| 04/23/2025 | 30 | RESPONSE re 29 MOTION for Extension of Time filed by Caron, Coggeshall, Ogando, Quiros, Starzyk. (Mancini, Dennis) (Entered: 04/23/2025) |
| 04/28/2025 | 31 | ORDER. Plaintiff has moved for a 60-day extension of the Court's May 14, 2025, discovery deadline. ECF No. 29. Plaintiff maintains the existing deadline is insufficient because he must mail documents to Defendants and has been unable to view videos in possession of Defendants. *See id.* at 1. Defendants maintain that, after Plaintiff filed his motion, Plaintiff was able to review videos at the Attorney General's Office on April 23, 2025. ECF No. 30 at 2. Because Plaintiff has been able to review the videos he sought to review, can hand-deliver any mail he seeks to send to Defendants, and still has approximately two more weeks to conduct discovery, Plaintiff's motion to extend the discovery deadline is **DENIED** without prejudice. Signed by Judge Vernon D. Oliver on 4/28/2025. (Pastor, G) (Entered: 04/28/2025) |
| 05/14/2025 | 32 | MOTION to Compel by Courtney Green. Responses due by 6/4/2025 (Attachments: # 1 Brief in support, # 2 Declaration in support, # 3 Exhibit, # 4 Envelope)(Gaskins, A) (Entered: 05/15/2025) |
| 05/15/2025 | 33 | MOTION for Extension of Time until June 13, 2025 To respond to Interrogatories Set Deadlines/Hearings by Courtney Green. (Attachments: # 1 Envelope)(Gaskins, A) (Entered: 05/15/2025) |
| 05/16/2025 | 34 | ORDER. Plaintiff has filed a Motion to Compel (ECF No. 32) and Motion for Extension of Time (ECF No. 33). In light of the approaching deadline for dispositive motions, Defendants are ordered to file a response to these motions by **May 30, 2025.** |

AA-07

| | | Signed by Judge Vernon D. Oliver on 5/16/2025.(Pastor, G) (Entered: 05/16/2025) |
|---|---|---|
| 05/19/2025 | 35 | Set Deadlines as to 33 MOTION for Extension of Time until June 13, 2025 To respond to Interrogatories Set Deadlines/Hearings, 32 MOTION to Compel. Responses due by 5/30/2025 (Samson, J) (Entered: 05/19/2025) |
| 05/22/2025 | 36 | MOTION to Compel by Courtney Green. Responses due by 6/12/2025 (Gaskins, A) (Additional attachment(s) added on 5/23/2025: # 1 Exhibits, # 2 Envelope) (Gaskins, A). (Entered: 05/23/2025) |
| 05/29/2025 | 37 | OBJECTION re 32 MOTION to Compel filed by Caron, Coggeshall, Ogando, Quiros, Starzyk. (Mancini, Dennis) (Entered: 05/29/2025) |
| 05/29/2025 | 38 | RESPONSE re 33 MOTION for Extension of Time until June 13, 2025 To respond to Interrogatories Set Deadlines/Hearings filed by Caron, Coggeshall, Ogando, Quiros, Starzyk. (Attachments: # 1 Att. A - Plaintiffs Deposition (Excerpt))(Mancini, Dennis) (Entered: 05/29/2025) |
| 05/29/2025 | 39 | OBJECTION re 36 MOTION to Compel filed by Caron, Coggeshall, Ogando, Quiros, Starzyk. (Mancini, Dennis) (Entered: 05/29/2025) |
| 06/12/2025 | 40 | MOTION for Summary Judgment by Caron, Coggeshall, Ogando, Quiros, Starzyk.Responses due by 7/3/2025 (Attachments: # 1 Memorandum in Support, # 2 Statement of Material Facts, # 3 Exhibit A - Plaintiff's Depo Excerpts, # 4 Exhibit B - Declaration of Zelynette Caron, # 5 Exhibit C - Declaration of Charles Shea, # 6 Notice to Pro Se Litigant)(Mancini, Dennis) (Entered: 06/12/2025) |
| 06/18/2025 | 41 | ORDER **denying** 32 Motion to Compel; **granting** 33 Motion for Extension of Time; **denying** 36 Motion to Compel. For the reasons discussed in the attached memorandum, Plaintiff's motions to compel are **denied** and his motion for an extension of time is **granted.** Discovery must be completed on or by **July 18, 2025.** Dispositive motions are due on or by **August 17, 2025.** No further extensions of these deadlines will be granted. Signed by Judge Vernon D. Oliver on 6/18/2025. (Pastor, G) (Entered: 06/18/2025) |
| 06/18/2025 | | Set Deadlines: Discovery due by 7/18/2025; Dispositive Motions due by 8/17/2025 (Bergeson, S) (Entered: 06/20/2025) |
| 09/08/2025 | 44 | PLAINTIFF'S MOTION for In Camera Review by Courtney Green.Responses due by 9/29/2025 (Imbriani, S) (Entered: 09/10/2025) |
| 09/08/2025 | 45 | RESPONSE re [40-2] Statement of Material Facts filed by Courtney Green. (Imbriani, S) (Entered: 09/10/2025) |
| 09/09/2025 | 42 | Memorandum in Opposition re 40 MOTION for Summary Judgment filed by Courtney Green. (Attachments: # 1 Exhibit, # 2 envelope)(Imbriani, S) (Entered: 09/10/2025) |
| 09/09/2025 | 43 | PLAINTIFF'S DECLARATION in Opposition re 40 MOTION for Summary Judgment filed by Courtney Green. (Imbriani, S) (Entered: 09/10/2025) |
| 09/09/2025 | 46 | PLAINTIFF'S Statement of Disputed Factual Issues re 40 MOTION for Summary Judgment filed by Courtney Green. (Imbriani, S) (Entered: 09/10/2025) |
| 09/12/2025 | 47 | ORDER: On June 12, 2025, Defendants filed a motion for summary judgment. In accordance with the local rules, Plaintiff's response was due on July 3, 2025. *See* L. R. Civ. Pro. 7(a)(2) ("Unless otherwise ordered by the Court, all opposition |

AA-08

| | | |
|---|---|---|
| | | memoranda shall be filed within twenty-one (21) days of the filing of the motion.") Considering the special solicitude owed to pro se litigants, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006), and Plaintiff's status as an incarcerated individual, the Court *sua sponte* extends Plaintiff's deadline to **September 11, 2025.**<br><br>Signed by Judge Vernon D. Oliver on 9/12/2025.(Pastor, G) (Entered: 09/12/2025) |
| 09/22/2025 | 48 | REPLY to Response to 40 MOTION for Summary Judgment filed by Caron, Coggeshall, Ogando, Quiros, Starzyk. (Mancini, Dennis) (Entered: 09/22/2025) |
| 11/03/2025 | 49 | ORDER: The Court **ADMONISHES** Defendants for missing their deadline to respond to 44 Motion for In Camera Review *by more than a month*. Nevertheless, in the interest of justice, the Court *sua sponte* extends Defendants' deadline to respond to **November 14, 2025.**<br>Signed by Judge Vernon D. Oliver on 11/3/2025. (Frostbutter, S) (Entered: 11/03/2025) |
| 11/03/2025 | | Reset Deadlines as to 44 MOTION for In Camera Review. Responses due by 11/14/2025 (Bergeson, S) (Entered: 11/04/2025) |
| 11/04/2025 | 50 | RESPONSE re 49 Order, 44 MOTION for In Camera Review filed by Caron, Coggeshall, Ogando, Quiros, Starzyk. (Mancini, Dennis) (Entered: 11/04/2025) |
| 11/06/2025 | 51 | ORDER **denying** 44 Motion for In Camera Review. Plaintiff moves the Court to conduct an in camera review of videos depicting the visiting room at Robinson CI. "In camera review is considered the exception, not the rule, and the propriety of such review is a matter entrusted to the district court's discretion." *Local 3, Int'l Bd. Of Elec. Workers v. NLRB*, 845 F.2d 1177, 1180 (2d Cir. 1988). "[G]iven the burdens associated with in camera review, a court should not indulge a party's invitation to conduct one unless that party has made some minimal showing that review is likely to support its position." *BBAM Aircraft Mgmt. LP v. Babcock & Brown LLC*, No. 3:20-CV-1056 (OAW), 2022 WL 3716574 (D. Conn. Aug. 29, 2022) (citation omitted).<br><br>The videos are not probative of any issues in the case. Plaintiff claims the videos illustrate material facts in dispute about the reasonableness of the searches. (ECF No. 44, at 1). However, in his description of the videos, he states that they show himself and other inmates walking to their various designated visits (contact, non-contact, and video). *Id.* Defendant largely agrees and explains that the videos depict inmates in the visiting room. (ECF No. 50, at 2). Further, neither party disputes that strip searches following video calls are a routine practice at Robinson CI. Accordingly, the Court **denies** Defendant's 44 Motion for In Camera Review because he failed to make a "minimal showing" that the videos are likely to support his position at summary judgment.<br><br>Signed by Judge Vernon D. Oliver on 11/6/2025. (Frostbutter, S) (Entered: 11/06/2025) |
| 03/04/2026 | 52 | ORDER: For the reasons in the attached memorandum, the Court **GRANTS** Defendants' 40 Motion for Summary Judgment. The Clerk is directed to enter judgment and close the case.<br>Signed by Judge Vernon D. Oliver on 3/4/2026. (Frostbutter, S) (Entered: |

AA-09

| | | |
|---|---|---|
| | | 03/04/2026) |
| 03/05/2026 | 53 | JUDGMENT entered in favor of Caron, Coggeshall, Ogando, Quiros, Starzyk against Courtney Green.<br><br>For Appeal Forms please go to the following website: http://www.ctd.uscourts.gov/forms/all-forms/appeals_forms<br>Signed by Clerk on 03/05/2026. (Kelsey, N) (Entered: 03/05/2026) |
| 03/05/2026 | | JUDICIAL PROCEEDINGS SURVEY - FOR COUNSEL ONLY: The following link to the confidential survey requires you to log into CM/ECF for SECURITY purposes. Once in CM/ECF you will be prompted for the case number. Although you are receiving this survey through CM/ECF, it is hosted on an independent website called SurveyMonkey. Once in SurveyMonkey, the survey is located in a secure account. The survey is not docketed and it is not sent directly to the judge. To ensure anonymity, completed surveys are held up to 90 days before they are sent to the judge for review. We hope you will take this opportunity to participate, please click on this link:<br><br>https://ecf.ctd.uscourts.gov/cgi-bin/Dispatch.pl?survey<br>(Kelsey, N) (Entered: 03/05/2026) |
| 04/03/2026 | 54 | NOTICE OF APPEAL as to 52 Order on Motion for Summary Judgment, 53 Judgment, by Courtney Green. Filing fee $ 605, receipt number BPT-15572. (Attachments: # 1 envelope)(Imbriani, S) (Entered: 04/03/2026) |
| 04/03/2026 | 55 | CLERK'S CERTIFICATE RE: INDEX AND RECORD ON APPEAL re: 54 Notice of Appeal. The attached docket sheet is hereby certified as the entire Index/Record on Appeal in this matter and electronically sent to the Court of Appeals, with the exception of any manually filed documents as noted below. Dinah Milton Kinney, Clerk. Documents manually filed not included in this transmission: None (Imbriani, S) (Entered: 04/03/2026) |
| 04/03/2026 | 56 | USCA Appeal Fees received from Courtney Green: $ 605 receipt number BPT-15572 re: 54 Notice of Appeal filed by Courtney Green (Fanelle, N.) (Entered: 04/06/2026) |

AA-10

SCANNED at
and Emailed
2/14/24 by JC . 13 pages
date        initials  No.

United States District Court
District of Connecticut

Courtney Green

(Plaintiff)

V.

CV. No. _____

Jury Trial Demanded

8 / 14 / 2024

Commissioner Quiros,

Warden Caron, Deputy Warden Ogando,

Correctional Officer Starzyk,

Correctional Officer Coggeshall

(Defendant's)

## Verified Complaint For Money Damages;, Injunction

I. Jurisdiction

1. Plaintiff brings this lawsuit pursuant to 42 U. S. C. Section 1983. This court has jurisdiction under 28 U. S. C. Section (s) 1331, 1343. This court has supplemental jurisdiction over plaintiff's state - law claims pursuant to 28 U. S. C. Section 1367.

II. Venue

2. The District of Connecticut is an appropriate venue under 28 U. S. C. Section 1381 (b) (2), because a substantial part of the events or omissions giving rise to the claims occurred in this district.

III. Parties

3. Plaintiff Courtney Green was at all times relevant to this action a prisoner incarcerated at Carl Robinson C.I. since April of 2021.

1

AA-10

4. Defendant Angel Quiros has served as Commissioner of Correction since about 2020. Defendant Quiros' statutory duties are set forth in Connecticut General Statutes Section 18 - 81 and his duties are, but not limited to , administer, coordinate, and control the operations of the department, be responsible for the overall supervision and direction of all institutions; establish policies and procedures for the administration of Department of Correction. Defendant Quiros created a policy under which unconstitutional strip searches were promulgated as a result.

5. Defendant Zelynette Caron was at all times relevant to this action the Warden at Carl Robinson C.I. Defendant Carons' duties are, but not limited to, directing staff and the operations of a correctional institution, center, facility or major program area as designated in accordance with the policies, procedures and directives of the commissioner of correction. Defendant Caron created a policy or custom under which unconstitutional strip searches occurred

6. Defendant Ogando was at all times relevant to this action the Deputy Warden of operations at Robinson CI. Defendant Ogandos' duties are, but not limited to, overseeing staff and operations of custody and security. Defendant Ogando created a policy or custom under which unconstitutional strip searches occurred.

7. Defendant Starzyk was at all times relevant to this action a correctional officer at Robinson CI. Defendant Starzyks' duties are, but not limited to, accountable for the confinement, safety, control and monitoring of sentenced and / or unsentenced inmates and security of the facility; and performing strip searches on inmates in certain instances. Defendant Starzyk directly participated in unconstitutional routine strip searches (s) of the plaintiff at the conclusion of non - contact video visits.

8. Defendant Coggeshall was at all times relevant to this action a correctional officer at Robinson CI. Defendant Coggeshall duties are, but not limited to, accountable for the confinement, safety, control and monitoring of sentenced and / or unsentenced inmates

2

AA-12

and security of the facility; and performing strip searches on inmates in certain instances. Defendant Coggeshall directly participated in unconstitutional routine strip search(s) of the plaintiff at the conclusion of non - contact video visits.

9. All Defendants are being sued in their official capacities for injunctive relief and in their individual capacities for money damages.

IV. Exhaustion of Remedies

10. Plaintiff took the steps to and did exhaust the administrative remedies available to him, including filing complaints with the respective warden.

V. Statement of Fact

11. This claim herein arises out of invasive and unreasonable searches at the behest of the named plaintiff, who has been forced to submit to dehumanizing, humiliating, repulsive, and embarrassing routine strip searches following the conclusion of non - contact video (virtual) visits, which lack, both probable cause and / or reasonable suspicion which are also being conducted in front of others that are not involved in the search process.

12. As set forth below, compelling plaintiff to submit to routine strip searches at the conclusion of a non - contact video visit reflects a pattern and custom of unreasonable searches being implemented and executed on the part(s) of the commissioner of correction, warden, deputy warden, and correctional officers'. Compelling plaintiff to submit to above stated strip searches after non - contact video visits violates the plaintiff's rights under the constitution of the United States and the State of Connecticut.

13. In or around 2020, Connecticut's prisons implemented virtual video visits during the height of the covid-19 pandemic in efforts to stem the spread of covid-19 throughout Connecticut's prison system. More recently and regularly, video visits have become another option for social visits, in addition to contact visits, and non - contact visits.

14. Video visits are described as a visit conducted utilizing a laptop, tablet or mobile device with video capabilities. See Administrative Directive 10.6 Section 3, subsection v.

3

AA-13

15. Visitors participating in video visits do not enter the premises of a correctional facility nor do the have any contact with prisoners confined at Robinson CI, thus the feat of the plaintiff or any other prisoner at Robinson CI who participate in video visits being able to harbor, smuggle contraband, i.e., weapons, money, drugs, or any prohibited items into an institution are highly unlikely, and / or improbable.

16. It is a well known fact that the most likely source of contraband for prisoners is through contact visits and not through non - contact and / or virtual video visits.

17. Virtual video visits occur in the visiting room in a far corner, where there are about twelve laptop computers, several chairs are in this area which are positioned behind the laptops where correctional officers are seated and continuously monitor prisoners participating in virtual video visits. Visitors from outside of the institution do not come in proximity of the area where virtual visits occur nor are they allowed in said area, nor does said visitors come within the province of prisoners participating in virtual video visits, further illustrating that virtual video visits are the highly unlikely source of conveying contraband in Carl Robinson CI.

18. Each housing unit at Robinson CI are accorded virtual video visits once per week on a rotational time basis, however, only one housing unit at a time occupies the area where virtual video visits take place, e.g., when the plaintiff's housing until (9A) had virtual video visits on 6 -10-24 at 8pm - 9pm no other housing unit had a virtual video visit at said time, and date.

19. When exiting the video visiting area, inmates are escorted through a door into an area with only the inmates who just participated in virtual video visits, inmates who participated in contact visits are not strip searched in the strip search area simultaneously with the prisoners who had virtual video visits.

20. In the strip search area, there lies about 7 or 8 small partitions where prisoners are strip searched at Robinson CI at the conclusion(s) of contact, non - contact, and virtual video

AA - 14

4

visits. Directly across from the partitions is a control area for correctional officers overseeing inmate visits. The control area door remains open for officers to continuously walk to and from the strip search area which is adjacent to the control areas door. Correctional officers continuously monitor and observe the strip search area making it virtually impossible for prisoners to discard or obtain contraband without getting caught!!

21. On or about 6 - 3 - 2024 the plaintiff had a virtual video visit with an approved visitor. Upon the plaintiff's arrival to the visiting control area and prior to entering into the visit room, the plaintiff was pat searched with negative findings for contraband and then allowed to enter the visiting room and sit at the laptop that he was instructed to, where the plaintiff had his virtual video visit without incident.

22. After the one hour time duration for virtual video visits, Defendant Starzyk came to the virtual video visit area and announced that said visits were over Defendant Starzyk and the other officers working the floors of the visiting room then instructed the plaintiff and other prisoners who just participated in virtual video visits to line up at the door, (said door allows one to enter and exit the visiting room), aka, offender holding area.

23. Defendant Starzky then instructed the plaintiff and the other prisoners from 9A who participated in virtual video visits to exit the visiting room. All prisoners did so followed by Defendant Starzyk the other correctional officers who were present. Prisoners who were / are in contact, and non - contact visits are / were not strip searched with prisoners who participated in virtual video visits.

24. While in the strip search area, Defendant Starzky instructed plaintiff to the last semi - partitioned stall, unto which the other correctional officers. Also instructed the other prisoner in this area to stand in front of semi - partitioned stalls. As the plaintiff stood in front of said partition, Defendant Starzyk put on a pair of sky blue, presumably latex gloves, and the plaintiff raised both of his arms in the air and turned around backwards

AA-13

5

to submit to the standard pat search that concludes prisoners participating in virtual video visits.

25. Defendant Starzyk instructed the plaintiff to turn around facing forward and to remove his clothing piece by piece", at Defendant Starzyks direction because the plaintiff is being strip searched, not pat searched!

26. A strip search is a visual inspection of an unclothed person's body cavities, hair ( to include the individual's cars, nose, mouth, under arms, soles of the feet and between the toes, rectum and genitalia. See Administrative Directive 6.7 Section 3, subsection (p).

27. The plaintiff responded to Defendant Starzyk ``A strip search after a video visit, you must be crazy". Plaintiff then said to Defendant Starzyl" strip searches after video visits are not authorized in Administrative Directive 6,7. Defendant Strazky replied: " I know that it's not in 6,7 but I'm just following my post orders and direct orders. Plaintiff responds: "you don't have to follow unlawful orders which strip searching plaintiff after a non - contact virtual video visit is unlawful and doing so violates your Administrative Directive 6.7, and the plaintiff's constitutional rights to limited bodily privacy.

28. Defendant Starzyk instructed plaintiff to address his issues regarding strip searches after virtual video visits with the Warden ( Defendant Caron).

29. Defendant Starzyk again instructed plaintiff to remove his clothing articles for a visual inspection of his body cavities unto which the plaintiff complied with the strip search, got dressed and left without further incident.

30. On or about 6-7-2024, Defendant's Caron, Ogando toured 9A housing unit, the plaintiff's housing unit. During Defendant's Caron, Ogando's tour,  the plaintiff addressed his issues with both defendant's regarding their policy of having the plaintiff and inmate population submit to strip searches at the conclusion of virtual video visits when no such authority is promulgated in Administrative Directive 6.7.

AA - 1G

6

31. Defendant Ogando responded " I'm aware that strip searches after video visits is not in the directives but we are working on changing the language in the directive to incorporate strip searches after non - contact and video visits, the Commissioner ( Defendant Quiros) signed off on a request to revise Administrative Directive 6.7 which will authorize strip searches after non - contact, and virtual video visits. Plaintiff responded "so you're anticipating the directives changing to include the authorization of strip searches at the conclusion of virtual video visits, well if and until that happens, even if does happen you're gonna violate and continue to violate my rights to limited bodily privacy? Unto which Defendant Caron responded "their is reasonable suspicion to believe that any inmate that accesses the visiting room may be in possession of contraband and will be strip searched regardless if it's a video visit or non - contact visit.

32. Plaintiff replying to Defendant Caron states' ' what you've just described as your reason(s) for strip searching prisoners at the conclusion of video and non - contact visits is a blanket policy of strip searches following video and non - contact visits and is not based on probable cause nor reasonable suspicion. Defendant Caron responded "the policy is not changing, strip searches will continue after video and non - contact visits". Discussions with plaintiff and Defendant's Caron, Ogando ended without incident.

33. On or around 6-10-2024, plaintiff and 9A housing had virtual video visits in Robinson CI's visiting room, upon plaintiff's arrival in the visiting room he was pat searched with negative findings and proceeded to his video visit.

34. At the conclusion of his video visit a correctional officer "yelled recall 9A video visits" this officer is a non - defendant to this action, who then instructed plaintiff and other prisoners to exit the visiting room via the offender holding area. Plaintiff and the other prisoners did so without further incident.

35. While in the offender holding area, standing directly in front of the partitions, Defendant Coggeshall motioned for plaintiff to come to him at the second to last partition and

AA - 19

7

plaintiff did as instructed. Defendant Coggeshall directed plaintiff to remove his shirt(s), pant(s), sock(s), sneakers(s), underwear, and hand them to him at his direction, before plaintiff did such he said to Defendant Coggeshall "there is nothing in Administrative Directive 6.7 that proscibes or permits you to strip search (plaintiff) after virtual video visits and in doing so your not adhering to the directives and you're violating my rights to limited bodily privacy". Defendant Coggeshall responded "I'am not going to argue with you; unto plaintiff replied "I know that you're not because you know that i'm right".

36. After removing all of his clothes, Defendant Coggeshall instructed plaintiff to lift his arms, lift his testicles, turn around, bend, squat, cough while spreading his buttocks.Defendant Coggeshall then instructed plaintiff to turn back around facing him, and to open his mouth wide using his hands that he just lifted his testicles and spread his buttocks with. Plaintiff objected to this instruction by Defendant Coggeshall and after a few moments of back and forth the plaintiff complied with the instruction given.

37. During the relevant time that plaintiff was subjected to a visual inspection of his body by Defendant Coggeshall other prisoners from 9A who were done being strip searched and exiting from their partitions were able to see in clear view plaintiff's unclothed and nude body. Other correctional officers who were not involved in plaintiff's strip search were also able to view plaintiff's unclothed nude body because the partitions sides do not erect enough to provide side blockage and their is nothing to provide frontal blockage of these partitions which exposed plaintiff's nude body in clear view of others not involved in the strip process. Plaintiff expressed his dissatisfaction with Defendant Coggeshall for strip searching him in plain view of others not involved in the strip search process; and was disregarded by him. Plaintiff eventually got dressed and exited the offender holding area without further incident.

38. Previously Administrative Directive 6.7 read;A strip search shall be conducted at the conclusion of any contact visit. Subsequently Administrative Directive 6.7 section 5 (b)

8

AA - 18

(ix) was revised by Defendant Quiros to read as follows: A strip search shall be conducted for the following circumstances: (ix) At the conclusion of any contact visit, or after entering any public visiting area.

39. Defendant Quiros' slight revision in the language of Administrative Directive 6.7 section 5 (b) (ix) that now includes; or after entering any public visiting area which covertly enabled Defendant's Caron, and Ogando to implement a policy at Robinson CI that would authorize any inmate who enters the visiting room to be strip searched regardless of the fact they did not have a contact visit.

40. In or around May of 2024, plaintiff wrote a letter to Defendant Quiros apprising him that Defendant Caron has instituted a policy that authorizes prisoners to be strip searched at the conclusion of non - contact, and virtual video visits, which is not explicated in the Administrative Directive(s) promulgated by Defendant Quiros. Defendant Quiros didn't respond to plaintiff's correspondence, instead plaintiff's correspondence was forwarded to Defendant Caron's office for a reply, who did reply, standing on Administrative Directive 6.7 section 5 (b) (ix).

41. Even after the plaintiff's filing of his administrative remedies challenging Defendant Caron's policy instituting routine strip searches at the conclusion of non - contact, and virtual video visits, said strip searches continue and have subjected plaintiff to multiple unreasonable strip searches at the conclusion of non - contact virtual video visits.

42. This action is brought to end the pattern and practice of unreasonable searches being conducted after non - contact video visits infringing on plaintiff's limited right to bodily privacy.

VI. Count One

Plaintiff Was Subjected To Unreasonable Searches In Violation of The Fourth Amendment To The Constitution

43. Plaintiff incorporates paragraphs 1 through 42 as though they were stated fully herein.

9

AA-19

44. Defendant Quiros violated plaintiff's rights to be free from unreasonable searches by covertly revising the verbiage of Administrative Directive 6,7 section 5 (b) (ix), hence a policy was promulgated that subjected plaintiff to unconstitutional routine strip searches at the conclusion of non - contact virtual video visits, without establishing reasonable suspicion to do so.

45. Defendant's Caron, Ogando violated plaintiiiiff's right to be free from unreasonable searches by creating a policy or custom under which plaintiff was subjected to unconstitutional routine strip searches at the conclusion of non - contact virtual video visits without establishing reasonable suspicion to so. Defendant's Caron, Ogando knew plaintiff couldn't smuggle contraband through a video visit.

46. Defendant's Starzyk, Coggeshall violated plaintiff's right to be free from unreasonable searches by performing unconstitutional routine strip searches on plaintiff at the conclusion of non - contact virtual video visits without establishing reasonable suspicion to do so, which humiliated and embarrassed plaintiff. Defendant's Starzyk, Coggeshall knew plaintiff couldn't smuggle contraband through a video visit.

Count Two

Plaintiff Was Subject To Unreasonable Searches In Violation of The Fourteenth Amendment to The Constitution

47. Paragraphs 1 through 46 are incorporated as though they were stated fully herein.

48. Defendant Quiros violated plaintiff's rights to be free from unreasonable searches by covertly revising the verbiage of Administrative Directive 6.7 section 5 (b) (ix), hence a policy was promulgated that subjected plaintiff to unconstitutional routine strip searches at the conclusion of non - contact virtual video visits, without establishing reasonable suspicion to do so.

49. Defendant's Caron, Ogando violated plaintiff's rights to be free from unreasonable searches by creating a policy or custom under which plaintiff was subjected to


AA-20

10

unconstitutional routine strip searches at the conclusion of non - contact virtual visits, without establising reasonable suspicion to do so. Defendant's knew plaintiff couldn't smuggle contraband through a video visit.

50. Defendant's Starzyk, Coggeshall violated plaintiff's rights to be free from unreasonable searches by performing unconstitutional routine strip searches on plaintiff at the conclusion of non - contact virtual video visits without establishing reasonable suspicion to do so, which humiliated and embarrassed plaintiff. Defendant's knew plaintiff couldn't smuggle contraband through a video visit.

Count Three

Plaintiff Was Subject To Unreasonable Searches In Violation of Article First Sec. 7 of

The State Constitution

51. Paragraphs 1 through 50 are incorporated as though they were stated fully herein.

52. Defendant's Starzyk, Coggeshall violated plaintiff's rights to be free from unreasonable searches by performing unconstitutional routine strip searches on plaintiff at the conclusion of non - contact virtual video visits without establishing reasonable suspicion to do such, which humiliated and embarrassed plaintiff. Defendant's knew plaintiff couldn't  smuggle contraband through a video visit.

AA - 21

11

Claims For Relief

Plaintiff demands as follows:

a. Injunctive relief by way of ordering Defendant's Quiros, Caron to discontinue routine strip searches on inmates returning from non - contact, and virtual video visits unless there is probable cause.

b. Punitive damages.

c. Compensatory damages.

d. Reasonable attorney's fee; and

e. Waive all costs of incarceration and costs of suit.

f. Any other relief this court deems just and equitable.

AA - 23

Verification

Pursuant to 28 U . S. C. Section 1746, I Courtney Green, declared under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Dated this ___14 th___ day of ___August___ 2024.

Courtney Green #320094

CRCI

285 Shaker Rd

Enfield, Ct 06082

AA-23

13

United States District Court

District of Connecticut

Courtney Green

V

Commissioner Quiros, et al

No. 3:24-CV-01317-VDO

9 / 5 / 25

Plaintiff's Declaration In Opposition To Defendant's Motion For Summary Judgment

Courtney Green states:

1. I am the plaintiff in the above captioned case. I make this declaration in opposition to Defendants Quiros, Caron, Ogando, Starzyk and Coggeshall's motion for summary judgment on my claims concerning violations of my Fourth Amendment under the United States Constitution by subjecting me to unreasonable searches at the conclusion of non - contact video visits absent reasonable suspicion.

2. Defendants Quiros, Caron, Ogando, Starzyk and Coggeshall are not entitled to summary judgment because there are genuine issues of material fact to be resolved. These issues are identified in the accompanying statement of disputed factual. Issues filed by the plaintiff pursuant to local rule 56 ( a ) 2 of this district court. The facts are set out in this declaration.

3. In or around April 2021 I was transferred to Carl Robinson CI.

4. When I was transferred to Robinson CI the COVID - 19 pandemic was in effect, therefore contact visits were not accorded at Robinson CI in efforts to stem the spread of COVID - 19 in Connecticut's prisons,

5. Carl Robinson CI did accord me and the prison population non - contact video visits during the COVID - 19 pandemic.

6. Video visits are conducted by utilizing a laptop, tablet or mobile device with video capabilities. See exh., 3 at # 12.

AA-24

1

7. Visitors who participate in video visits do not enter the correctional facilities premises to do such, nor do they have contact with prisoners that are confined at Robinson CI. See compl., at par. 15.

8. Prisoners confined at Robinson CI who have video visits are not able to obtain, control, or possess contraband through a computer screen with their visitor,

9. During my 16 ½ yrs of incarceration, and based upon my personal knowledge, contact visits are the source of how contraband is introduced into Robinson CI during visits.

10. Contrary to the defendant's position, officer(s) have not interdicted drugs from inmate(s) that participated in video visits. See exh., 8 at 19.

11. During video visits, inmates sit in a far corner away and not in the presence or vicinity of those who are having contact visits, so it is very unlikely that contraband and would; and or could be exchanged.

12. In the visiting room there are 10 spots for video visits. See exh., 17.

13. Inmates participating in visits in general are either called for via the telephone from the officer working visit is at their housing unit if inmates have either a contact visit or non - contact visits. Inmates that have video visits are / must be on the list to enter the visiting room.

14. If inmates enter the visiting room without authorization they are / will be subject to disciplinary action for being out of place. See administrative directive 9.5 attachment B class " B " offenses # 10.

15. From about April of 2021 up until November of 2024 I was incarcerated at Robinson CI and during said time period I received an abundant amount of video visits.

16. Most notably, I had a video visit on 3/15/24, 3/23/24, 6/3/24, and 6/10/24 and after each of those video visits I was directed to submit to visual cavity search without reasonable suspicion. See exh. 16 at :002 - 003.

AA-25

2

17. On or about 6/3/24 I had a virtual video visit, at the conclusion of said visit, Defendant Starzyk instructed me to remove my clothes piece by piece because he is being strip searched.

18. After a brief protest, I complied with the Defendant Starzyk's order and removed my clothes and submitted to being strip searched.

19. Contrary to the defendant's position, the standard DOC policy that was in effect on 6-3-24 did not authorize, or explicate that inmates are to be strip searched after video visits. See exh. 19 at :012 - 013.

20. Similarly so standard DOC policy that was in effect on March 25, 2024 did not authorize, nor explicate that inmates are to be strip searched at the conclusion of virtual video visits. See exh. 19 at :012 - 013.

21. On 6-10-24, I had a virtual video visit with an approved visitor. After the video visit Defendant Coggeshall instructed me to the partitions and to remove my clothing because I was being strip searched. After a brief protest I submitted to Defendant Coggeshall's order and complied with his strip search.

22. A strip search is a visual inspection of an unclothed persons body cavities, hair ( to include the individual's nose, mouth, under arms, soles of the feet and between the toes, rectum and genitalia. See Administrative Directive 6.7 Section 3. Subsection ( p. ),

23. Administrative Directive 6.7 was revised on 6-4-24, contrary to the defendants version. See exh. 11 at :0073.

24. Even in the revision of Administrative Directive 6.7 it does not mention that inmates are to be strip searched at the conclusion of video visits but it does instruct staff to strip search inmates at the conclusion of contact visits. See exh. 11 :0073 - 0074 ( ix ).

25. During the multiple instances that I was strip searched, it left me feeling upset and agitated because it is no standard DOC policy.

AA-26

3

26. Contrary to the defendant's position, me being strip searched at the conclusion of contact visits and shakedown is standard DOC policy. See exh. 11 at :0074.

27. Contrary to the defendant's position, inmates that participate in video visits are not in the same space as those who participate in contact visits.

28. Contrary to the defendant's position, but they fail to mention that contraband has not been recovered from inmates who participated in video visits.

29. Contrary to the defendant's position, Administrative Directive 6.7 was not revised to clarity that facilities must strip search inmates at the conclusion of video visits. See exh. 11 at :0074.

30. Contrary to the defendant's position, visits are one hour in duration. See exh. 17. Visits for a housing unit is not for 3 hours. There are 10 spots for video visits, not 13. See Id. See also exh. 13.

31. Subsequent to the strip searches that I was subjected to at the conclusion of video visits, I filed a grievance after writing to Captain Martinez, who did not respond to the inmate request I wrote her. See exh. 20 at :018 - 019.

32. In the grievance I submitted I included Defendant Starzyk's name.

33. Contrary to the defendant's position, standard DOC policy did not require me to put Defendant Coggeshall's name in my grievance. See exh. 30 at :006.

34. I complied with the standard DOC policy contrary to the defendant's position.

35. On 7-18-24 my grievance was rejected for being a repetitive request for an administrative remedy, further exemplifying that I challenged the strip search policy at the conclusion of video visits. Exh. 20 at :018 - 019. See also exh. 16 at 002 - 003; exh. 18 at :007 - 010.

36. Contrary to defendants position, I was subject to unreasonable searches at the conclusion of video visits on 6-3-24, 6-10-24 at the behest of defendants Starzyk and Coggeshall, without them establishing reasonable suspicion.

AA-27

4

37. Defendants Quiros, Caron and Ogando created the strip search policy that is unconstitutional.

38. Based upon the foregoing, all of the defendants violated my rights to be free from unreasonable searches.

Declaration Under Penalty of Perjury

I, Courtney Green, pursuant to 28 U. S. C. section 1746, declare under the pains penalties of perjury that the foregoing is true and accurate to the best of my knowledge and belief.

Executed on __9_/_5_/_25_.

Courtney Green

5

AA-28

United States District Court

District of Connecticut

Courtney Green

No. 3:24-CV-01317-VDO

V.

Commissioner Quiros, et al

9 / 5 / 2025

Plaintiff's Statement of Disputed Factual Issues

Pursuant to local rule 56 (a) 2, the plaintiff submits the following list of genuine issues of material fact that require the denial of defendant's motion.

1. Whether plaintiff exhausted his administrative remedies that were available to him. See Exh. 18.

2. Whether the plaintiff challenged the strip search policy that occurred after video visits.

3. Whether the plaintiff's administrative remedy should have been subject to level 3 review. See Exh. 18 at 007;

4. Whether the plaintiff was strip searched after a video visit prior to 6/4/24.

5. Whether the defendants had a policy in effect that required the plaintiff to submit to strip searches after video visits prior to 6/4/2024.

6. Whether Administrative Directive 6.7 did not require plaintiff to be strip searched after video visits prior to 6/4/24. See Exh. 19 at 013 See .IX

7. Whether Administrative Directive 6.7 currently contradicts Bell v. Wolfish, 441 U. S. 520 (1979) by requiring inmates to submit to strip searches after non - contact video visits.

8. Whether reasonable suspicion existed when the plaintiff was strip searched after video visits on 6/3/2024, 6/10/2024.

9. Whether plaintiff being strip searched after video visits on 6/3/2024, 6/10/2024 was reasonably related to a legitimate penological goal.

10. Whether plaintiff maintained a right to limited bodily privacy while incarcerated on 6/3/2024, 6/10/2024.

1

AA-29

11. Whether Defendant Caron directs the programs and operations of the correctional center, facility, institution or major program; directs all staff.

12. Whether Defendant Caron directs staff and operations of a correctional institution, center, facility or major program area as designated in accordance with the policies, procedures and directives of the commissioner of correction.

13. Whether Defendant Caron is / was aware of the term reasonable suspicion. See Exh. 16 at 002.

14. Whether Defendant Caron was aware of Bell v. Wolfish 441 U. S. 520 (1979). See Exh. 18 at 008 - 010, Exh. 16 at 003.

15. Whether Defendant Caron instituted a blanket policy at Robinson CI subjecting plaintiff to strip searches after non - contact video visits.

16. Whether plaintiff was subject to unreasonable searches after non - contact video visits on 6/3/2024, 6/10/2024.

17. Whether contraband can be obtained from a visitor through a computer screen during non - contact video visits.

18. Whether contact visits are the most likely source of how contraband is conveyed into correctional facilities.

19. Whether Defendant Quiros covertly authorized strip searches to occur at the conclusion of non - contact video visits.

20. Whether Defendant Ogando oversaw the operations at Robinson CI. See Exh. 27 At: 0056

21. Whether Defendant Ogando ensures enforcement of agency and institution rules, regulations. See Exh. 27.

22. Whether Defendant Ogando interprets and administers pertinent laws. See Exh. 27.

23. Whether Defendant Starzky strip searched plaintiff after a non - contact video visit on 6/3/2024.

2

AA-30

24. Whether reasonable suspicion existed when Defendant Starzky strip searched plaintiff on 6/3/2024.

25. Whether Defendant Coggeshall strip searched plaintiff after a non - contact video visit on 6/10/2024.

26. Whether reasonable suspicion existed when Defendant Coggeshall strip searched plaintiff on 6/10/2024.

27. Whether Robinson CI's visiting room is a public area.

28. Whether visitors need to be approved prior to gaining access to Robinson CI visiting room.

29. Whether inmates at Robinson CI need authorization prior to entering the visiting room.

30. Whether contraband can be obtained from a visitor through a computer screen during a non - contact video visit,

31. Whether contraband has been found on inmates after participating in non - contact video visits.

32. Whether correctional officers search the non - contact video visit area after their completion.

33. Whether correctional officers search the visiting room at irregular intervals.

34. Whether inmates participating in video visits are instructed by correctional staff to sit at assigned computers during said visits.

35. Whether inmates participating in contact visits have contact with inmates participating in non - contact video visits.

36. Whether inmates are strip searched after having interactions in the mess hall during mass feeding.

37. Whether inmates are strip searched after having interactions in the gymnasium.

38. Whether a grievance that is rejected can be appealed.

3

AA 31

39. Whether correctional officer(s) have ever interdicted drugs from an inmate that participated in a video visit. See Exh. 8 at 19.

40. Whether Robinson CI's visiting room was considered a public area prior to 6/3/2024. See Exh. 12 see. 5 b, 7, IX.

41. Whether Defendant Caron acquiesced and / or implemented the policy requiring inmates to submit to strip searches at the conclusion of video visits. See Exh. 4 at 23.

4

AA-32

Certification

I hereby certify that a copy of the foregoing was sent by mail on __9__ / 5 / 2025 to

Dennis Mancini at 165 Capitol Ave, Hartford, Ct 06106.

By Courtney Green

Courtney Green

30 Trowel Street

Bridgeport, Ct 06607

5

AA 33

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

COURTNEY GREEN,          :          No. 3:24-cv-01317 (VDO)
    *Plaintiff,*          :
                :

    v.          :

                :
COMMISSIONER QUIROS, et al.    :          JUNE 12, 2025
    *Defendants.*          :

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The defendants move for summary judgment. Fed. R. Civ. Pro 56; D. Conn. L.

Civ. R. 56; see also 28 U.S.C. § 1915(e)(B). There are no genuine disputes of material

fact as to the arguments presented herein, and the defendants are entitled to

judgment as a matter of law. The defendants did not violate Plaintiff's Fourth

Amendment rights. Any strip searches of the Plaintiff were conducted in a

professional manner and for a legitimate penological purpose—to reduce the risk of

contraband being introduced into a correctional facility. In addition, the defendants

are entitled to qualified immunity because their actions were reasonable under the

circumstances and did not violate any clearly established law. Additionally,

defendant Quiros had no personal involvement, which provides an additional basis to

grant him qualified immunity. Finally, as to defendant Coggeshall, there are no

genuine disputes of material fact as to the Defendants' Affirmative Defense from their

Answer, which asserts that Plaintiff failed to properly exhaust his administrative

remedies before filing this action as he was required by the Prison Litigation Reform

Act ("PLRA"), 42 U.S.C. § 1997e(a). (Doc. 28, "Third Affirmative Defense").

**ORAL ARGUMENT NOT REQUESTED**
**NO TESTIMONY REQUIRED**

AA-34

Filed herewith is a Memorandum of Law in support of Defendant's Motion, a

Rule 56(a)(1) Statement of Material Facts and exhibits in support thereof.

*Respectfully submitted,*

DEFENDANTS
Commissioner Quiros, Warden Caron,
Deputy Warden Ogando, Officer
Starzyk, and Officer Coggeshall

WILLIAM TONG
ATTORNEY GENERAL

BY: /s/ *Dennis V. Mancini*

Dennis V. Mancini (ct30239)
Assistant Attorney General
State of Connecticut
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
dennis.mancini@ct.gov
Tel: (860) 808-5450
Fax: (860) 808-5591

/s/ *Owen R. Eagan*

Owen R. Eagan (ct31804)
Assistant Attorney General
State of Connecticut
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
owen.eagan@ct.gov
Tel: (860) 808-5450
Fax: (860) 808-5591

2

AA-35

## CERTIFICATION

I hereby certify that on June 12, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. A copy was also mailed to the following:

**Courtney Green**
**30 Trowel Street**
**Bridgeport, CT 06607**
**greencourtney542@gmail.com**

/s/ *Dennis V. Mancini*

Dennis V. Mancini
Assistant Attorney General

3

AA-36

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| COURTNEY GREEN, *Plaintiff,* | : | No. 3:24-cv-01317 (VDO) |
| | : | |
| v. | : | |
| | : | |
| COMMISSIONER QUIROS, et al., *Defendants.* | : | JUNE 12, 2025 |

### MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The undersigned defendants move for summary judgment. Fed. R. Civ. P. 56; D. Conn. L. Civ. R. 56; *see also* 28 U.S.C. § 1915(e)(B). There are no genuine disputes of material fact as to the arguments presented herein, and the defendants are entitled to judgment as a matter of law. The defendants did not violate Plaintiff's Fourth Amendment rights. Any strip searches of the Plaintiff were conducted in a professional manner and for a legitimate penological purpose—to reduce the risk of contraband being introduced into a correctional facility. In addition, the defendants are entitled to qualified immunity because their actions were reasonable under the circumstances and did not violate any clearly established law. Additionally, defendant Quiros had no personal involvement, which provides an additional basis to grant him qualified immunity. Finally, as to defendant Coggeshall, there are no genuine disputes of material fact as to the Defendants' Affirmative Defense from their Answer, which asserts that Plaintiff failed to properly exhaust his administrative remedies before filing this action as he was required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (Doc. 28, "Third Affirmative Defense").

AA-37

## I.    BACKGROUND AND PROCEDURAL HISTORY

### A.    Background.

Plaintiff is a *pro se* inmate incarcerated within the Connecticut Department of Correction ("DOC"). (Defs. Local Rule 56(a)(1) St., at ¶ 1). Plaintiff brings this action under 42 U.S.C. § 1983. (Doc. 1 p. 1). Plaintiff filed the action from prison while he was incarcerated within the Carl Robinson Correctional Institution ("Robinson CI"). *See* (Doc. 1). Plaintiff initially brought suit against DOC Commissioner Angel Quiros; Robinson CI Warden Zelynette Caron; Robinson CI Deputy Warden Lenny Ogando; and Correctional Officers Richard Starzyk and Herbert Coggeshall in their *official capacities* seeking injunctive relief and in their *individual capacities* for money damages. (Doc. 1, Pg. 2 – 3).

Following its initial review, the Court allowed Plaintiff to proceed on his Fourth Amendment challenge to the strip search policy against Commissioner Quiros, Warden Caron, and Deputy Warden Ogando, and to proceed on a Fourth Amendment claim alleging unreasonable searches conducted by Correction Officers Starzyk and Coggeshall. (Doc. 11, Pg. 7 – 10, 11). These claims were allowed to proceed against defendants in their individual capacities for money damages and in their official capacities to remedy an alleged ongoing Fourth Amendment violation. (Doc. 11, Pg. 7 – 10, 11). Plaintiff was also initially allowed to proceed on a state law claim under Article First, Section 7 of the Connecticut Constitution against the defendants in their individual capacities. (Doc. 11, Pg. 11). Plaintiff's Fourteenth Amendment claims were dismissed. (Doc. 11, Pg. 10).

AA-38

On January 21, 2025, the defendants moved to dismiss Plaintiff's *official capacity* Fourth Amendment injunctive relief claims as moot and Plaintiff's *individual capacity* state law claim under Article First, Section 7 of the Connecticut Constitution because that section of the Connecticut Constitution does not provide for a private cause of action under the circumstances of this case. On March 7, 2025, the Court granted the defendants' partial motion to dismiss. (Doc. 27). <u>As a result, Plaintiff's only remaining claim concerns his Fourth Amendment allegations against the defendants in their *individual capacities* for money damages.</u>

Plaintiff alleges that on or about June 3, 2024, he had a video visit with an approved visitor in the facility's visiting room. (Doc. 1 at ¶ 21). Plaintiff states that, prior to entering the visiting room, he was pat searched with negative findings for contraband, and then allowed to enter the visiting room. *Id.* Plaintiff indicates that, after entering the visiting room, he conducted his video visit without issue. *Id.* At the end of the allotted visiting time, Plaintiff states that he was instructed by defendant Starzyk to exit the visiting area and line up at the door of the holding area. *Id.* at ¶ 22. Plaintiff asserts that after leaving the visiting area he was instructed by defendant Starzyk to remove his clothing and submit to a visual cavity search, to which Plaintiff eventually complied without incident, after stating a verbal objection to the procedure on policy grounds. *Id.* at ¶¶ 27-29.

According to Plaintiff, on or about June 10, 2024, he attended another video visit at Robinson CI and was again pat searched before entering the visiting room with negative findings for contraband. *Id.* at ¶ 33. Similar to the previous incident,

AA-39

according to Plaintiff, at the end of his visit he was instructed to exit the visiting area by a non-party and subsequently had a visual cavity search, this time by defendant Coggeshall. *Id.* at ¶¶ 34-37.

Defendants do not deny that strip searches were conducted following video visits at Robinson CI, however, **Plaintiff neglects to mention that all visits at Robinson CI are conducted in the same visiting room, and that both contact and video visits can occur simultaneously**. Therefore, because video visits occur in a public visiting area, potentially with members of the public who are conducting separate visits or who have been present there in the past, <u>strip searches are penologically necessary and constitutionally appropriate to prevent the introduction of contraband into the facility.</u>

### B.   Facts Concerning Administrative Remedies.

Generally, Connecticut inmates who wish to exhaust their administrative remedies and bring matters to the attention of the DOC do so by following the process set forth in the DOC's Administrative Directive 9.6 § 5 and § 6 *et seq. See* (A.D. 9.6 p. 2 – 6 § 5; p. 6 – 8 § 6 *et seq.*)(eff. 4-30-2021)(Att. 1 to Ex. H). The requirements of A.D. 9.6 § 6 have been detailed repeatedly across a large swath of Court decisions throughout this District. *See, e.g., Baldwin v. Arnone,* Civil Action No. 3:12-cv-243 (JCH), 2013 U.S. Dist. LEXIS 22520, at *16–*20 (D. Conn. Feb. 15, 2013); *Sanders v. Viseau,* No. 3:20CV00250, 2021 U.S. Dist. LEXIS 247916, at *8-*9 (D. Conn. Dec. 30, 2021) (collecting cases); *Correa v. McLeod,* No. 3:17-cv-1059 (VLB), 2018 U.S. Dist. LEXIS 242249, at *7-*10 (D. Conn. June 4, 2018); *Shehan v. Erfe,* CASE NO. 3:15-cv-

AA-40

1315 (MPS), 2017 U.S. Dist. LEXIS 1116, at *13-*22 (D. Conn. Jan. 4, 2017); *see also Riles v. Buchanan*, 656 F. App'x 577, 579–82 (2d Cir. Sept. 1, 2016) (summary order).

The process requires an aggrieved inmate to first seek informal resolution of his issues, in writing, through the use of an Inmate Request Form prior to filing a formal grievance, with a response to be made within 15 days. (A.D. 9.6, Pg. 6 § 6(a)(i)). If the inmate is not satisfied with the informal resolution offered, the inmate must file a grievance and attach the Inmate Request Form containing the appropriate staff member's response, among other requirements. (*Id.* at Pg. 6 § 6(a)(ii)). This filing must be submitted within 30 days of the cause of the grievance. (*Id.* at Pg. 7 § 6(a)(ii)(4)) ("Any CN 9602, Inmate Grievance Form- Level 1, *must* be filed within 30 calendar days of the occurrence or discovery of the cause of the Grievance.") (emphasis added); *see also Riles*, 656 F. App'x at 579. From there, an inmate can appeal the decision of the Level-1 Grievance by filing a Level-2 Appeal within either (1) 5 calendar days of the receipt of the decision of the Level-1 Grievance, or (2) within 65 days of the date of the filing of the Level-1 Grievance if the inmate does not receive a timely response to the Level-1 Grievance. (Defs. Local Rule 56(a)(1) St., at ¶ 36).

In this case, there can be no dispute of fact that Plaintiff filed a single grievance following the June searches at issue. (Defs. Local Rule 56(a)(1) St., at ¶ 40). Moreover, this grievance only describes two searches by defendant Starzyk, while making no mention of Officer Coggeshall whatsoever. (*Id.* at ¶41 – 42).

5

AA-41

### C. Short Synopsis of Arguments Presented Herein.

For the foregoing reasons, and as discussed further below, the defendants now move for summary judgment. First, Plaintiff cannot establish a Fourth Amendment violation, because the strip searches in question were conducted in a professional manner and for a legitimate penological interest. (*Id.* at ¶¶32 & 17). Second, it follows that the defendants are entitled to qualified immunity in connection with those searches. Third, as for defendant Quiros, he is separately entitled to qualified immunity for a lack of personal involvement with respect to the searches in question. Fourth and finally, Plaintiff's failure to properly exhaust his available DOC administrative remedies, as required by the PLRA, bars any claims against defendant Coggeshall. (*Id.* at ¶44).

## II.   ARGUMENT

### A.    Legal Standards, Motion for Summary Judgment.

Federal Rule of Civil Procedure 56 requires the entry of summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "[T]he mere existence of a factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no genuine issue of material fact." *Id.* at 247-48. A factual dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Further,

6



a "material fact" is one whose resolution will affect the ultimate determination of the case. *Id.* In determining whether a material fact exists, the court must resolve all ambiguities in favor of the non-moving party. *Id.* at 255; *see also J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir. 1990), *cert. denied*, 499 U.S. 921 (1991).

The Supreme Court confirms:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules, as a whole, which is designed to secure the just, speedy and inexpensive determination of every action.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Used properly, Rule 56 is a "vital procedural tool to avoid wasteful trials." *Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs.*, 996 F.2d 537, 541 (2d Cir.), *cert. denied*, 510 U.S. 497 (1993). It is properly used to "isolate and dispose of factually unsupported claims." *Celotex Corp.*, 477 U.S. at 323-24.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the portions of the pleadings, affidavits or other documentary evidence that "it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. Those facts that are material will be identified by the substantive law governing the case. *Anderson*, 477 U.S. at 248. Once the moving party meets its initial burden, the burden to produce evidence tending to establish a disputed issue of material fact then shifts to the non-moving party. *See Gutwein v. Roche Laboratories, Div. of Hoffman-La Roche, Inc.*, 739 F.2d 93, 95 (2d Cir. 1984).

AA-43

To defeat a motion for summary judgment, the non-moving party may not merely rely upon unsupported allegations made in the complaint, nor rely on "mere speculation or conjecture." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986), *cert. denied*, 480 U.S. 932 (1987). The evidence must be presented in a manner consistent with its admissibility at trial. *See First Nat'l Bank Co. v. Ins. Co. of N. Am.*, 606 F.2d 760, 766 (7th Cir. 1979) (in ruling on summary judgment motion, courts properly rely upon documents and exhibits identified by affidavit). Unsworn statements of the parties, letters addressed to the litigants from third persons, and hearsay not within the one or more exceptions in Rules 803–805 of the Federal Rules of Evidence, may not be properly considered on summary judgment. *See, e.g.*, Fed. R. Civ. P. 56 (c) (parties "must support" assertions of genuine disputes of material fact by "citing to . . . depositions, . . . affidavits or declarations, [etc.] . . .;" not listing unsworn statements); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1970) (noting that unsworn statement "does not meet the requirements of Fed. Rule Civ. Proc. 56"); *United States v. 143-147 E. 23rd St.*, 77 F.3d 648, (2d Cir. 1996) ("The submission of [an] unsworn letter was an inappropriate response to the . . . motion for summary judgment, and the factual assertions made in that letter were properly disregarded by the court."); *Barlow v. Connecticut*, No. 3:00-CV-1983 (EBB), 2004 U.S. Dist. 9237, at *1 (D. Conn. May 4, 2004) ("Unsworn statements, letters addressed to litigants, and affidavits composed of hearsay and non-expert opinion evidence do not satisfy Rule 56(e) and must be disregarded."); *see also Beyene v. Coleman Sec.*

8

AA-44

*Servs., Inc.*, 854 F.2d 1179, 1180-83 (9th Cir. 1988); *Edward B. Marks Music Corp. v. Stasny Music Corp.*, 1 F.R.D. 720, 721-22 (S.D.N.Y. 1941).

Moreover, the Plaintiff must point to and support with admissible evidence "each issue of material fact as to which it is contended there is a genuine issue to be tried." Local R. 56(a) *et seq.*; *see also Anderson*, 477 U.S. at 248. Moreover, the Plaintiff must produce evidence to show the existence of every element essential to the case which he bears the burden of proving at trial. *Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.*, 812 F.2d 141, 144 (3d Cir. 1987).

**B.    Plaintiff Cannot Establish a Fourth Amendment Violation.**

"[I]nmates retain a limited right to bodily privacy under the Fourth Amendment." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016). "Courts assessing an inmate's claim that officers infringed his or her right to bodily privacy must undertake a two-part inquiry: (1) First, the court must determine whether the inmate has 'exhibit[ed] an actual, subjective expectation of bodily privacy'; and (2) second, the court must determine 'whether the prison officials had sufficient justification to intrude on [the inmate's] fourth amendment rights.'" *Id.* (quoting *Covino v. Patrissi*, 967 F.2d 73, 77-78 (2d Cir. 1992)). Here, Plaintiff asserts a Fourth Amendment challenge to the strip search policy against defendants Quiros, Caron, and Ogando, and separately a Fourth Amendment violation arising from individual unreasonable searches conducted by defendants Starzyk and Coggeshall. (Doc. 10, Pg. 7).

As to the first prong, Plaintiff alleges he was subjected to a visual cavity search by defendant Starzyk following a video visit on June 3, 2024. (Doc. 1, ¶ 29). Plaintiff alleges a similar visual cavity search by defendant Coggeshall on June 10, 2024. (Doc.

9

AA-45

1, ¶ 36). Courts in this Circuit have held that "a visual body cavity search is a 'serious invasion of privacy.'" *Velez-Shade v. Population Management*, No. 3:18cv1784(JCH), 2019 U.S. Dist. LEXIS 163779, at *23 (D. Conn. Sept. 25, 2019) (citing *Harris*, 818 F.3d at 58). Next, the Court must "determine[e] the validity of a prison regulation claimed to infringe on an inmate's constitutional rights" by "ask[ing] whether the regulation is reasonably related to [a] legitimate penological interest[]." *Covino*, 967 F.2d at 78 (citing *Washington v. Harper*, 494 U.S. 210, 223-24 (1990)).

Turning to the second prong, "courts apply one of two separate but overlapping frameworks." *Harris*, 818 F.3d at 57. "If the inmate's Fourth Amendment claim challenges a prison regulation or policy, courts typically analyze the claim under *Turner v. Safley*, 482 U.S. 78, [ ] (1987)." *Id.* at 57. "Under *Turner*, 'the regulation is valid if it is reasonably related to legitimate penological interests.'" *Id.* at 57-58. Alternatively, "if the inmate's Fourth Amendment claim challenges an isolated search, courts typically apply the standard set forth in *Bell v. Wolfish*, 441 U.S. 520 [ ] (1979)." *Id.*

As discussed in detail below, <u>regardless of the test applied, the searches in question were easily justified by the legitimate penological interest of keeping contraband out of a correctional facility</u>. It follows that if searches after contact visits are justified, then searches after video visits, that co-occur with contact visits, would also be constitutionally appropriate.

> a. **Plaintiff's Challenge to the DOC Strip Search Policy Fails as a Matter of Law.**

AA-46

The *Turner* Court listed the following four factors "governing the review of prison regulations:"

(i)     whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

(ii)    whether there are alternative means of exercising the right in question that remain open to prison inmates;

(iii)   whether accommodation of the asserted constitutional right will have an unreasonable impact upon guards and other inmates, and upon the allocation of prison resources generally; and

(iv)    whether there are reasonable alternatives available to the prison authorities.

*Covino*, 967 F.2d at 78-79 (citing *Turner v. Safley*, 482 U.S. 78, 89-90 (1987)) (spaced factors for readability).

"Correctional officials have a legitimate interest, indeed a responsibility, to ensure that jails are not made less secure by reason of what new detainees may carry in on their bodies." *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 322 (2012). Courts in this Circuit have thus recognized that there is "a valid, rational connection between [a correctional institution's] post-classification strip search policy and the legitimate governmental interest of preventing contraband distribution within the [correctional institution]." *Sassi v. Dutchess Cnty.*, No. 9:16-cv-1450, 2019 U.S. Dist. LEXIS 15387, 2019 WL 401951, at *14 (N.D.N.Y. Jan. 23, 2019). This is so because a newly arriving inmate can secrete contraband into his body and distribute it to other inmates once inside the facility. *See id.; see also Shain v. Ellison*, 273 F.3d 56, 64 (2d Cir. 2001) (noting that "contraband often is passed" during contact visits in prisons);

11

AA-47

*Barnes v. Fedele*, No. 07-CV-6197L, 2021 U.S. Dist. LEXIS 243496, at *10 (W.D.N.Y. Dec. 21, 2021) ("[B]y any measure, reducing the risk of smuggled-in contraband is a legitimate penological objective.") (internal quotation marks omitted) (citing *Bell*, 441 U.S. at 559 (1979)); Conn. Gen. Stat. § 53a-174 (a) (class D felony to convey into a correctional facility inter alia "any controlled drug, as defined in section 21a-240 [which include but are not limited to 'those drugs which contain any quantity of a substance which has been designated as subject to the federal Controlled Substances Act'] . . ."); Conn. Gen. Stat. § 53a-174 (b) (class A misdemeanor crime to convey in into a Connecticut prison any unauthorized "letter or other missive which is intended for any person confined therein . . . .").

Plaintiff asserts that he was strip searched following video visits at Robinson CI. (Doc. 1, ¶¶29, 36). However, Plaintiff neglects to mention that all visits at Robinson CI are conducted in the same physical space, (Defs. Local Rule 56(a)(1) St., at ¶6.), and it is undisputed that the visiting room at Robinson CI is the only appropriate location at that facility that can accommodate social visits. (*Id.* at ¶8.) It is also undisputed that strip searches of inmates returning from the Robinson CI visiting room have resulted in the discovery of contraband. (*Id.* at ¶19.) Additionally, hidden contraband has been located within the visiting room, presumably left with the intention that inmates would eventually retrieve it. (*Id.* at ¶20). Therefore, although inmates participating in video visits do not have contact with their visitors, a strong possibility exists that they can obtain contraband either directly from outside visitors or through a separate inmate conducting a contact visit, as an intermediary.

12

AA-49

Applying the *Turner* framework, Robinson CI has a valid, legitimate penological interest in conducting strip searches following video visits where contact and video visits are conducted in the same physical space simultaneously. *See Block v. Rutherford*, 468 U.S. 576, 586 (1984) (noting that "[c]ontact visits . . . open the institution to the introduction of drugs, weapons, and other contraband. Visitors can easily conceal guns, knives, drugs, or other contraband in countless ways and pass them to an inmate unnoticed by even the most vigilant observers."). Thus, the Supreme Court has upheld a prison policy of conducting visual body cavity searches after every contact visit with someone from outside the prison. *See Bell v. Wolfish*, 441 U.S. 520, 559-60, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979); *see also Sassi*, 2019 U.S. Dist. LEXIS 15387, at \*27, \*39-\*44 (In the context of a post-classification strip search, a "[c]onfirmatory visual non-contact search" was deemed appropriate, in part, because inmates "may have had potential contact with other inmates.")

"As to the second and third *Turner* factors, although inmates do possess a limited right to bodily privacy, some aspects of that right must yield to searches for contraband, even random visual body-cavity searches, so that prison administrators may maintain security and discipline in their institutions." *Covino*, 967 F.2d at 79. Strip searching inmates who participated in contact visits, while ignoring inmates who, moments earlier were present in the same public space perhaps a few feet apart, only because the latter were positioned in front of a computer screen, would create an obvious facility safety and security concern.

13

AA 49

Finally, as to the fourth *Turner* factor, it is not a "'least restrictive alternative' test, rather it requires the inmate to 'point to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests.'" *Id.* (citing *Turner,* 482 U.S. at 90-91). In considering this final factor, the Second Circuit noted that courts should "defer to the expertise of the state prison officials, who may anticipate security problems and adopt appropriate solutions for the many problems associated with prison administration." *Covino,* 967 F.2d at 80. And as the Second Circuit expressed just two years ago, "absent 'substantial evidence' of an 'exaggerated' response to penological concerns, the 'security imperatives involved in jail supervision override the assertion that some detainees must be exempt from the more invasive search procedures at issue absent reasonable suspicion of a concealed weapon or other contraband.'" *Murphy v. Hughson,* 82 F.4th 177, 185 (2d Cir. 2023) (citing *Florence,* 566 U.S. at 330).

In viewing the strip search policy at Robinson CI as a whole, it becomes clear that Plaintiff's limited right to bodily privacy did not outweigh the facility's significant safety and security concerns in light of the situation where inmates attending video visits occupy the same physical space as inmates conducting contact visits, and the general visiting public.

### b. Plaintiff's Challenge of Searches Conducted by Correction Officers Starzyk and Coggeshall Also Fails as a Matter of Law.

In its initial review, this Court allowed Plaintiff to proceed on his Fourth Amendment claim against Officers Starzyk and Coggeshall in connection with their

AA 50

specific, individual strip searches. As discussed in the previous section, these searches were performed for a legitimate penological reason. Notwithstanding, even applying the *Bell* factors to the individual searches, it is clear that Plaintiff cannot establish a Fourth Amendment violation.

Pursuant to *Bell*, "each case [ ] requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider [1] the scope of the particular intrusion, [2] the manner in which it is conducted, [3] the justification for initiating it, and [4] the place in which it is conducted." *Harris*, 818 F.3d at 58 (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)).

In the present case, as to the first factor, Plaintiff alleges he was subjected to a standard visual cavity search that did not include any contact by the correction officer defendants and his body. *See* (Doc. 1 at 5 – 8) (specifying that the defendant correction officers performed *visual inspections* of the Plaintiff in the challenged strip searches); *see also* (Defs. Local Rule 56(a)(1) St., at ¶¶29 – 33). Further, Plaintiff raises no claim of a cross-gender search. It has further been established that the strip searches at Robinson CI take place within separate partitions within the strip search area adjacent to the visiting room. (Defs. Local Rule 56(a)(1) St., at ¶15). Accordingly, the scope of the particular intrusion here was limited.

As to the second factor, Plaintiff acknowledged that the searches were conducted in a professional manner, and in line with other prior strip searches that he had experienced in the past. (Defs. Local Rule 56(a)(1) St., at ¶¶32 & 33). In other

15

AA-51

words, the strip searches were practically or mechanically unremarkable, or run-of-the-mill correction officer encounters in the Plaintiff's own view.

As to the third factor, to re-emphasize the justification for the search as outlined in the previous section, the purpose of the search was to prevent the infiltration of contraband into the facility. (Defs. Local Rule 56(a)(1) St., at ¶16).

Finally, as to the fourth factor, as noted above the strip searches in question were conducted in separate partitions in an area designated for the purpose of strip searching, as opposed to in view of other inmates or in an unexpected place.[1] (Defs. Local Rule 56(a)(1) St., at ¶15). Accordingly, the placement of the strip searches should lend further credence to the defendants' argument.

In fact, notwithstanding the fact that Plaintiff himself did not participate in a contact visit, the situation at Robinson CI is otherwise identical to the conduct discussed in *Bell v. Wolfish*, where the Court expressly approved the use of visual cavity searches following contact visits because a "detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence." *Bell*, 441 U.S. at 559 99 S. Ct. 1861, 60 L. Ed. 2d 447. Here, too, the record reflects not only the discovery of contraband during post-visit searches, but also hidden contraband within the visiting room itself. *See* (Defs. Local Rule 56(a)(1) St., at ¶¶10 & 20); *Bell*, 441 U.S. at 559 99 S. Ct. 1861, 60 L. Ed. 2d 447.

---

[1] However, the presence of other inmates and employees of a correctional facility does not make an otherwise constitutional strip search unconstitutional. *See Montgomery v. Hall*, 2013 U.S. Dist. LEXIS 103129, at *12 (S.D.N.Y. May 14, 2013) ("[T]he constitutionality of a strip search is not negated by the presence of other inmates and employees of the facility — of either sex — during the search.").



Other courts have held similarly. For instance, in the Court's initial review it cited *Bono v. Saxbe*, 620 F.2d 609, 617 (7th Cir. 1980), in which the Seventh Circuit noted that searches of inmates following non-contact visits could be supported by "a showing that there is some risk that contraband will be smuggled into [the prison] during non-contact, supervised visits, or that some other risk within the prison will be presented." In other words, *Bono* stands for the proposition that strip searches following non-contact visits, like other prison practices aimed at serving legitimate penological interests, can be justified by relevant policy considerations within the expertise of prison administrators. *See id.*; *see also Rhodes v. Chapman*, 452 U.S. 337, 352 (1981) ("In discharging [their] oversight responsibility . . . courts cannot assume that state legislatures and prison officials are insensitive to the requirements of the Constitution or to the perplexing sociological problems of how best to achieve the goals of the penal function in the criminal justice system: to punish justly, to deter future crime, and to return imprisoned persons to society with an improved chance of being useful, law-abiding citizens."); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (valid penological objectives include, inter alia, "deterrence of crime," and "institutional security"); *Reynolds v. Quiros*, 25 F.4th 72, 79 (2d Cir. 2022) (valid penological interests include "promoting a non-hostile work environment for DOC staff, [and] enhancing the safety and security of DOC facilities"). And in fact, on remand, in *Bono v. Saxbe*, 527 F. Supp. 1182 (S.D. Ill. 1980), the District Court approved the use of strip searches both *before* and *after* non-contact visits after finding that "the beliefs of prison officials [concerning the likelihood of disruption to

17

AA-53

prison order or stability] [were] reasonable, and that the strip searches [were] justified as valid security measures." *Id.* at 1186.

## C.    All Defendants Are Entitled to Qualified Immunity.

The defendants are also entitled to qualified immunity. Defendant Quiros had no personal involvement in any of Plaintiff's searches, and his connection to the search policy in question as it relates to the application of rules at Robinson CI regarding the use of the visiting room is too attenuated to establish any liability for him under Second Circuit precedent. As for the remaining defendants, there is no evidence that any of them violated the Constitution, and it is not clearly established that either creating a policy of strip searches following mixed contact and video only visits, or conducting the strip searches themselves was improper.

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (citations omitted). Qualified immunity "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken—decisions." *DiStiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012). To overcome qualified immunity, a plaintiff must show that (1) the defendant officials violated a statutory or constitutional right, and that (2) the right was clearly established at the time of the challenged conduct. *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015). "'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." *District of Columbia v. Wesby*,

18

AA-54

138 S. Ct. 577, 589 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "To be clearly established, a legal principle must have a sufficiently clear founding in then-existing precedent [and t]he rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *Id.* at 589-90 (citations omitted).

The U.S. Supreme Court has repeatedly instructed courts "not to define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015); *see also City of Escondido*, 139 S. Ct. at 503. For courts to avoid defining rights too broadly, correct analysis requires that "the clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017). "The dispositive question is 'whether the violative nature of *particular conduct* is clearly established." *Mullenix*, 136 S. Ct. at 308 (emphasis added). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* The qualified immunity analysis must be "particularized" in the sense that "'[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Doninger v. Niehoff*, 642 F.3d 334, 345-46 (2d Cir. 2011). "The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct." *Id.* at 345.

"The qualified immunity standard is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Grice v. McVeigh*, 873 F.3d 162,

AA-55

166 (2d Cir. 2017). "Even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Taravella v. Town of Wolcott*, 599 F.3d 129, 134 (2d Cir. 2010); *see also Cornejo v. Bell*, 592 F.3d 121, 128 (2d Cir. 2010). Qualified immunity applies regardless of whether an official's error is "a mistake of law, mistake of fact, or a mistake based on mixed questions of law and fact." *Doninger*, 642 F.3d at 353 (internal quotation marks omitted) (citation omitted). So long as a defendant "has an objectively reasonable belief that his actions are lawful," he "is entitled to qualified immunity." *Swartz v. Insogna*, 704 F.3d 105, 109 (2d Cir. 2013) (internal quotation marks omitted); *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 134-35 (2d Cir. 2013).

Legal research reveals no Second Circuit authority that prohibits strip searches following *mixed* contact and video only visits as occurred at Robinson CI. *Cf. Harris*, 818 F.3d at 61 ("Requiring record evidence to support an officer's justification for a visual body cavity search. . ."). Defendants are entitled to qualified immunity because it cannot be said that every reasonable official would have understood that a policy requiring inmates to be strip searched, in a reasonable manner, would be improper following video visits in a situation where contact with outside visitors is possible. *See Wilson v. Layne*, 526 U.S. 603, 618 (1999) ("If judges . . . disagree on a constitutional question, it is unfair to subject [state employees] to money damages for picking the losing side of the controversy."); *Lennon v. Miller*, 66 F.3d 416, 423 (2d

20

AA-56

Cir. 1995) (qualified immunity attaches "if officers of reasonable competence could disagree on the legality of the defendant's actions" (internal quotation marks omitted)). To the contrary, given a valid penological justification, even searches after non-contact visits have been allowed by the federal courts. *See, e.g., Bono*, 620 F.2d at 617; *Bono*, 527 F. Supp. at 1186.

### a. Defendant Quiros Had No Personal Involvement and Is Entitled to Qualified Immunity.

The Second Circuit clarified in *Tangreti v. Bachmann* what the Supreme Court had already determined in 2009 in *Aschroft v. Iqbal*: namely, that there can be no supervisory or vicarious liability for actions brought under 42 U.S.C. § 1983. *See Tangreti v. Bachmann*, 983 F.3d 609, 614-20 (2d Cir. 2020); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution." (emphasis added))

"[A]fter *Iqbal* . . . . a plaintiff must plead and prove 'that each Government-official defendant, through the official's *own individual actions*, has violated the Constitution.'" *Tangreti*, 983 F.3d at 618 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)) (emphasis added). Thus, only direct, personal involvement of the defendant in the constitutional violation is sufficient to establish liability in Section 1983 actions; other theories of personal involvement are not sufficient. *See id.* The *Tangreti* holding is clear and unmistakable: "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation

21

AA-57

directly against the official without relying on a special test for supervisory liability."
*Id.* at 620.

In the present case, Plaintiff takes issue with a strip search policy at Robinson CI. On its face this allegation is insufficient to establish defendant Quiros's personal involvement in any constitutional violation.

Plaintiff claims in May 2024, he "wrote a letter to defendant Quiros apprising him that defendant Caron has instituted a policy that authorizes prisoners to be strip searched at the conclusion of non - contact, and virtual video visits." (Doc. 1, ¶40). Plaintiff further claims, "Defendant Quiros didn't respond to plaintiff's correspondence." *Id.* Even if Plaintiff could demonstrate that he had sent certain letters to defendant Quiros, those letters are insufficient to demonstrate his personal involvement. Indeed,

> [t]he fact that a prisoner sent a letter or written request to a supervisory official does not establish the requisite personal involvement of the supervisory official. *See Rivera v. Fischer*, 655 F. Supp. 2d 235, [238] (W.D.N.Y. 2009) ("Numerous courts have held that merely writing a letter of complaint does not provide personal involvement necessary to maintain a § 1983 claim.") (quoting *Candelaria v. Higley*, No. 04-CV-277, 2008 U.S. Dist. LEXIS 11976, 2008 WL 478408, at *2 (W.D.N.Y. Feb. 19, 2008) (citing cases). Furthermore, the law is well established, that "a failure to process, investigate or respond to a prisoner's grievances does not in itself give rise to a constitutional claim." *Swift v. Tweddell*, 582 F.Supp.2d 437, 445-46 (W.D.N.Y. 2008) (citing cases). Thus, a supervisory official's mere receipt of a letter complaining about unconstitutional conduct is not enough to give rise to personal involvement on the part of the official. *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (prison official who received letter from inmate and forwarded it to subordinate for investigation and response was not personally involved in depriving inmate of constitutional right); *Bumpus v. Canfield*, 495 F. Supp. 2d 316, 322 (W.D.N.Y. 2007) (allegation that defendant did not respond to inmate's letters alleging lack of medical attention was not enough to establish defendant's personal involvement

22

AA-58

in alleged violations); *Smart v. Goord*, 441 F. Supp. 2d 631, 642-643 (S.D.N.Y. 2006) (failure of supervisory prison official to take action in response to letters complaining of unconstitutional conduct is insufficient to demonstrate personal involvement).

*Parks v. Lantz*, No. 3:09-cv-604 (VLB), 2012 U.S. Dist. LEXIS 43221, at *23-*25 (D. Conn. Mar. 28, 2012).

Further, "[a]n inmate's allegation that he lodged informal complaints with supervisory officials and that they subsequently failed to take corrective action falls short of establishing those officials' personal involvement." *Shamel v. Agro*, No. 11 Civ. 9473 (GBD) (HBP), 2013 U.S. Dist. LEXIS 27336, at *33 (S.D.N.Y. Jan. 28, 2013), *report and recommendation adopted, Shamel v. Agro*, No. 11 Civ. 9473 (GBD) (HBP), 2013 U.S. Dist. LEXIS 26156 (S.D.N.Y. Feb. 25, 2013). *See also Sealey*, 116 F.3d at 51 (defendant's brief response to two letters did not demonstrate requisite personal involvement for Section 1983 claim); *Reinoso-Delacruz v. Ruggerio*, Docket No. 3:19-cv-149 (SRU), 2019 U.S. Dist. LEXIS 78369, at *8 (D. Conn. May 9, 2019) (allegation that the plaintiff wrote a letter to the defendants and did not receive a response was insufficient to establish personal involvement). Plaintiff's threadbare allegations are simply too far removed from any personal actions of defendant Quiros to demonstrate his personal involvement.

### D.    Plaintiff Failed to Properly Exhaust His Administrative Remedies Before Bringing This Lawsuit.

The Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a), requires inmates to exhaust administrative remedies before seeking relief in federal court in lawsuits concerning prison conditions. *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

23

AA-59

Exhaustion in cases covered by § 1997e(a) is mandatory. *See id.* at 524 (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)).

"Section 1997e(a) provides: 'No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.'" *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016); *see also Correa*, 2018 U.S. Dist. LEXIS 242249, at *8 (quoting 42 U.S.C. §1997e(a)).

The Supreme Court has held that inmates must exhaust administrative remedies before filing any type of action "about prison life," *Porter*, 534 U.S. at 532, regardless of whether or not the inmate may obtain specific relief he or she desires through the administrative process, *see Booth v. Churner*, 532 U.S. 731, 741 (2001). An inmate who fails to file an administrative grievance may not bring the claim in federal court. *Adekoya v. Fed. Bureau of Prisons*, 375 F. App'x 119, 121 (2d Cir. Apr. 29, 2010) (barring inmate federal lawsuit where inmate failed to exhaust administrative remedies).

There can be no dispute in this case that the Plaintiff's lawsuit challenging prison practices and correction officer strip searches is an action "about prison life." *See generally* (Doc. 1); *Porter*, 534 U.S. at 532. Moreover, there is also no dispute that Plaintiff filed this action from prison and that he was therefore a "prisoner confined in any jail, prison, or other correctional facility" for purposes of the PLRA's exhaustion requirement. *See* (Defs. Local Rule 56(a)(1) St., at ¶¶ 1 – 2); *see also* 42 U.S.C. § 1997e(a).

AA-CO

Furthermore, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "A plaintiff must *fully* exhaust his administrative remedies." *Sanders*, 2021 U.S. Dist. LEXIS 247916, at *8 (quotation omitted) (emphasis in original). This includes meeting the time limits set forth by the DOC administrative directives. *See, e.g., Baldwin*, 2013 U.S. Dist. LEXIS 22520, at *16 (the exhaustion "requirement includes complying with all procedural requirements, including filing deadlines . . . ."); *Shehan*, 2017 U.S. Dist. LEXIS 1116, at *14 ("If the deadline to file a grievance has passed, an unexhausted claim is barred from federal court.") A plaintiff may not smuggle unexhausted claims into a federal lawsuit otherwise based on claims that he or she did properly exhaust. *See Baldwin*, 2013 U.S. Dist. LEXIS 22520, at *17 (inmate must exhaust his administrative remedies with regard to each claim he asserts in his federal complaint).

An inmate may be excused from the exhaustion requirement only if administrative remedies were *not* in fact available. *See Ross*, 136 S. Ct. at 1859-60. The Supreme Court has identified three circumstances in which an administrative remedy is not available to an inmate: (1) "the administrative remedy may operate as a 'dead end,' such as where the office to which inmates are directed to submit all grievances disclaims the ability to consider them . . . [(2)] the procedures may be so confusing that no ordinary prisoner could be expected to 'discern or navigate' the requirements . . . [a]nd [(3)] prison officials may 'thwart inmates from taking

25

AA-C1

advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Shehan*, 2017 WL 53691, at *6 (quoting *Ross,* 136 S. Ct. at 1859-60).

None of these scenarios are supported by the record in the current action. In addition, the Second Circuit has recognized that A.D. 9.6 is "not so opaque as to be unavailable, plainly stating that [i]f the verbal option does not resolve the issue, the inmate shall submit a written request." *Riles*, 656 F. App'x at 581 (summary order).

Here, the DOC administrative remedies procedures are set forth in Administrative Directive 9.6. (A.D. 9.6, dated April 30, 2021, § 6)(Att. 1 to Ex. A); *Riles*, 656 F. App'x at 579 ("The [DOC] requires inmates to submit grievances in accordance with Administrative Directive 9.6 ('AD 9.6')"). The version of A.D. 9.6 that was in effect at the time of the events relevant to the Plaintiff's complaint required an aggrieved inmate at Robinson CI, for instance, to first seek informal resolution of his issues, in writing, through the use of an Inmate Request Form prior to filing a formal grievance, with a response from an appropriate department head to be made within 15 days. (Defs. Local Rule 56(a)(1) St., at ¶ 24). If the inmate was not satisfied with the informal resolution offered, the inmate was required to file a grievance and attach the Inmate Request Form containing the appropriate staff member's response, among other requirements. (*Id.* at ¶ 25). This filing must be made within 30 days of the cause of the grievance. (*Id.*); *see also Riles*, 656 F. App'x at 579. From there, an inmate could appeal the decision of the Level-1 grievance by filing a Level-2 appeal either (1) within 5 calendar days of the receipt of the decision of the Level 1 Grievance, or (2) within 65 days of the date of the filing of the Level 1 Grievance if the inmate

26

AA - 62

did not receive a timely response to the Level 1 Grievance. *See* (Defs. Local Rule 56(a)(1) St., at ¶ 26). Finally, in some limited circumstances, including within 65 calendar days of the filing of a Level-2 Grievance if no response to that grievance was received within 30 business days, an inmate could file a Level-3 Appeal. (*Id.* at ¶ 27).

### 1. Plaintiff Did Not Properly Exhaust His Administrative Remedies Against Defendant Coggeshall.

As explained above, the DOC provides a means for an inmate to seek administrative review of an issue relating to any aspect of an inmate's confinement that is subject to the Commissioner's authority. Att. 1 to Ex. C, §§ 3(a) & 3(c). As detailed above, Administrative Directive 9.6, entitled Inmate Administrative Remedies, sets forth this procedure. *See* Att. 1 to Ex. C; *see also Riles*, 656 F. App'x at 579; *Allen v. Kunkel*, PRISONER CASE NO. 3:18-cv-297 (JCH), 2018 WL 3553335, at *4 (D. Conn. July 22, 2018). Every inmate receives a copy of this directive in either English or Spanish. Att. 1 to Ex. C, § 5(b). All inmates also receive a written summary of this process during their orientation. *Id.* at § 5(b)(ii). DOC Administrative Remedies Coordinators are appointed to oversee the administrative remedies process. *Id.* at § 4.

Plaintiff alleges in his complaint that he was improperly subjected to strip searches following video only visits at Robinson CI on June 3, 2024 by defendant Starzyk, and on June 10, 2024 by defendant Coggeshall. (Doc. 1, ¶¶29, 36).

Records from Robinson CI reveal that Plaintiff filed a single grievance concerning the June strip searches at issue in this case, which Plaintiff signed on June 24, 2024. (Defs. Local Rule 56(a)(1) St., at ¶41; Att. 3 to Ex. C). This grievance

27

AA-63

names only defendant Starzyk and the "'Caron' Administration." This grievance is insufficient to put the DOC on notice regarding any claims against defendant Coggeshall. *See, e.g.*, *Sanchez v. Bell*, Docket No. 3:22-CV-1087 (SVN), 2024 U.S. Dist. LEXIS 23064, at *14-*15 (D. Conn. Feb. 9, 2024) (Plaintiff's "failure to mention [defendant] in this grievance precludes it from exhausting any claims against [that defendant] . . . . [because] his grievances must provide notice to the prison officials as to the factual basis of his claims.") (citing *Espinal v. Goord*, 558 F.3d 119, 127-28 (2d Cir. 2009)).

While this grievance identifies certain actions Plaintiff alleges were taken by defendant Starzyk and arguably correctional administrators at Robinson CI generally, this grievance is wholly inadequate to place the DOC on notice of any claims against Coggeshall. Indeed, the DOC should not be burdened in attempting to address the Plaintiff's grievance with the impossible task of deriving the Plaintiff's meaning concerning an entirely different correction officer from a statement that mentions only one such officer, and that does not even fairly allude to other officers with unknown names, for instance. *See Sanchez*, 2024 U.S. Dist. LEXIS 23064, at *14-*15. To ask the agency to somehow ascertain that the Plaintiff meant to include something in his grievance that he did not, or to read the Plaintiff's mind in any regard, is not a reasonable construction of the case law surrounding the PLRA requiring adherence to DOC administrative policies. *See, e.g., id.*; *see also, e.g.*, *Woodford*, 548 U.S. at 90-91. Plaintiff's failure to exhaust his claims as to defendant Coggeshall means those claims must be dismissed.

28

AA-64

## III.   CONCLUSION

Based on the foregoing argument, the Court should grant this motion and enter summary judgment in favor of all defendants as to all claims, counts, and causes of action brought against them in this action.

*Respectfully submitted,*

DEFENDANTS

Commissioner Quiros, Warden Caron, Deputy Warden Ogando, Officer Starzyk, and Officer Coggeshall

WILLIAM TONG
ATTORNEY GENERAL

BY: */s/ Dennis V. Mancini*

Dennis V. Mancini (ct30239)
Assistant Attorney General
State of Connecticut
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
dennis.mancini@ct.gov
Tel: (860) 808-5450
Fax: (860) 808-5591

*/s/ Owen R. Eagan*

Owen R. Eagan (ct31804)
Assistant Attorney General
State of Connecticut
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
owen.eagan@ct.gov
Tel: (860) 808-5450
Fax: (860) 808-5591

AA-65

## CERTIFICATION

I hereby certify that on June 12, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. A copy was also mailed to the following:

**Courtney Green**
**30 Trowel Street**
**Bridgeport, CT 06607**
greencourtney542@gmail.com

/s/ *Dennis V. Mancini*

Dennis V. Mancini
Assistant Attorney General

AA-GG

United States District Court

District of Connecticut

Courtney Green                                        No. 3:24-CV-01317-VD0

     V

Commissioner Quiros, et al                    9 / 5 / 25

### Plaintiff's Brief In Opposition To Defendant's Summary Judgment Motion

Statement of the case:

This is a 1983 action filed by Courtney Green seeking damages based on invasive / unreasonable searches in violation of his Fourth Amendment rights of the federal constitution by subjecting plaintiff to submit strip searches at conclusion of non - contact video visits absent reasonable suspicion. Defendants Quiros et al have moved for summary judgment as to the plaintiff's claim arguing that (1) their conduct did not violate the plaintiff's Fourth Amendment rights, (2) any strip searches of the plaintiff were conducted for legitimate purposes, (3) the defendants are entitled to qualified immunity because their actions were reasonable and did not violate any clearly established law.

Statement of Facts

On or about June 3, 2024, the plaintiff had a virtual video visit with an approved visitor (Compl. At par 21). Prior to the plaintiff's entry into the visiting room he was pat searched for contraband with negative findings and he was allowed to enter the visiting room. Id. After the one hour time duration for virtual video visits Defendant Starzyk came to the video visit area and announced that video visits were over. (Compl. At par 22). The plaintiff was instructed to line up at the door that leads to the offender holding area. Id. Once through the doors, Defendant Starzky instructed the plaintiff to a semi - partitioned stall where Defendant Starzyk put on a pair of gloves, and the plaintiff raised his arms in the air and turned around to submit to the standard pat search that follows after virtual video visits. (Compl. At par. 24).

AA - 67

1

Defendant Starzyk instructed the plaintiff to turn around, face forward and to remove his clothing piece by piece because he was being strip searched and not pat searched. (Compl. At 25). Strip searches are enunciated in administrative 6.7 section 3, subsection (p). (Compl. At par. 26). The plaintiff expressed his displeasure with Defendant Starzyk regarding strip searches after video visits and how administrative directive 6.7 does not authorize such conduct unto which Defendant Starzyk replied that he's aware that such conduct is not explicated in administrative directive 6.7 but he is just following his post orders. Compl. At par. 27. Defendant Starzyk instructed the plaintiff to address his issues regarding strip searches after virtual video visits with defendant Caron (Compl. At par. 28). Defendant Starzyk instructed the plaintiff again to remove his clothing articles for a visual inspection at his body cavities unto which the plaintiff complied with defendant Starzyk's instructions, got dressed and left without further incident. (Compl. At par. 29). On or about 6 - 7 - 2024, defendants Caron, Ogando toured the plaintiff's housing unit 9A, during this time the plaintiff addressed his concerns with said defendants regarding their policy that requires the plaintiff to submit to strip searches at the conclusion of virtual video visits when no such authority is promulgated in administrative directive 6.7 (Compl. At par. 30). Defendant apprised the plaintiff that they are currently working on changing the language in the directive to incorporate strip searches after non - contact, video visits. (Compl. At par. 31) Defendant Ogando also went on to state defendant Quiros signed off on a request to revise administrative directive 6.7 which will authorize strip searches after non - contact and virtual video visits, Id. The plaintiff replied to defendant Caron by expressing his position regarding the strip search policy after non - contact and video visits and how they lack probable cause and reasonable suspicion. (Compl. At par. 32). Defendant Caron responded to the plaintiff by telling him that" the strip search policy will remain as is, and will continue after non - contact and video visits. Id. On or around 6 - 10 - 2024 the plaintiff had a virtual video visit in Robinson CI's visiting room. (Compl. At par. 33). Upon the plaintiffs arrival in the visiting room he was pat searched with negative findings. And proceeded to his video visit. Id. At the conclusion of the plaintiff's



2

video visit a correctional officer announced recall and the plaintiff evacuated the area without incident. (Compl. At par. 34). When the plaintiff was in the holding area, defendant Coggeshall motioned for the plaintiff to come to him at a partition and the plaintiff complied with his instruction. (Compl. At par. 35). Defendant Coggeshall then instructed the plaintiff to remove his shirt, pants, socks, sneakers, and underwear, and hand said articles to him. Id. The plaintiff expressed his displeasure with defendant Coggeshall's instructions but after a few back and forths the plaintiff removed his clothing and submitted to defendant Coggeshall's direction to comply with a visual inspection of his body. (Compl. At pars. 36 - 37). Administrative directive 6.7 was revised by defendant Quiros to allow inmates to be strip searched at the conclusion of any contact visit, or after entering any public visiting area. (Compl. At pars. 38 - 39). In May of 2024 the plaintiff wrote a letter to defendant Quiros apprising him that defendant Caron instituted a policy that authorizes strip searches on inmates at the conclusion of non - contact and virtual video visits, defendant Quiros did not respond to plaintiff's correspondence the correspondence was forwarded to defendant Caron's office for a reply. (Compl. At par. 40). The plaintiff filed his administrative remedies challenging defendant Caron's policy regarding strip searches at the conclusion of non - contact virtual video visits and how they are unreasonable. (Compl. At 41). The plaintiff exhausted his administrative remedies available to him. (Compl. At par, 10).

A. Summary Judgment Standard

Summary judgement is to be granted only if the record before the court shows "that there is no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law" Fed. R. Civ. P. 56 (a) see Anderson v. Liberty Lobby Inc., 477 U. S. 242, 256 (1986). Cowan v. Breen, 352 F. 3d 756, 760 (2d Cir. 2003). When a court makes a ruling on a summary judgment motion, the court must construe the facts in the light most favorable to the non - moving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson, 477 U. S. at 255; Matsu shita Elec. Indus, Co., v. Zenith Radio

AA-69

3

Corp., 475 U. S. 574, 587 (1986). See also Aldrich v. Randolph Cent. Sch. Dist., 963 F. 2d 520, 523 (2d Cir. 1992) (Court is required to resolve all ambiguities and draw all inference in favor of the non - moving party). Anderson v. Lobby Inc., 477 U. S. 242, 247 (1986). The court may not weigh the evidence even when the court believes such evidence is implausible. See Anderson, 477 U. S. at 249 R. B. Ventures Ltd. v. Shane, 112 F.3d., 54, 58 - 59 (2d Cir 1995) only when reasonable minds could not differ as to the import of the evidence is summary judgment proper. Bryant v. Maffucci 923 F. 2d 979, 982 (2d Cir., 1991). See also Suburban Propane v. Proctor Gas Inc., 953 F.2d 780, 788 (2d Cir. 1992). If the non - moving party submits evidence that is" merely colorable or is not" significant probative" summary judgment may be granted. Anderson, 477 U. S. at 249 - 50. And where one party is proceeding pro se the court interprets the pro se parties paper liberally to raise the strongest argument they suggested. "Suggested. "See Abbas v. Dixon, 480 F.3d 636, (2d Cir., 2007). Despite this liberal interpretation, however, an unsupported assertion cannot overcome a properly supported motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir., 1991). There mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. See U. S. v. Diebold Inc., 369 U. S. 654, 655, 8 L. Ed. 2d 176, 82 S. Ct. 993 (1962); Hawkins v. Steingat, 829 F.2d 317, 319, (1987); Consarc Corp v. Marine Midland Bank, NA., 996 F.2d 568, 572 (2d Cir., 1993). This standard bars the court from resolving disputed issues of facts. If there are material factual issues the court must deny summary judgment. See e.g. Knight v. U. S. Fire Insurance Co., 804 F.2d 9, 11. (2d Cir. 1986)., Cert. denied, 480 U. S. 932, 94 L. Ed 2d 761, 107 S. Ct 1569 (1987).

B. Argument

The Plaintiff Does Establish A Fourth Amendment Violation

"[I]nmates retain a limited right to bodily privacy under the Fourth Amendment. "Harris v. Miller, 818 F. 3d 49, 57 (2d Cir., 2016). "Courts assessing an inmate's claims that officers infringed his

AA- 70

4

or her right to bodily privacy must undertake a two - part inquiry: (1) First the court must determine whether the inmate has exhibited an actual subjective expectation of bodily privacy; and (2) second the court must determine 'whether the prison officials had sufficient justification to intrude on [the inmate's] fourth amendment rights."Id. (quoting Covino v. Patrissi, 967 F.2d 73, 77 - 78 (2d Cir., 1992). When considering the second question, "courts apply one of two separate but overlapping frameworks. "Id. "If the inmate's Fourth Amendment claim challenges a prison regulation or policy, courts typically analyze the claim under Turner v. Safely, 482 U. S. 78 (1987). "Id. "Under Turner the regulation is valid if it is reasonably related to a legitimate penological interests. "Id. at 57 - 58. Courts rely on the four factors discussed in Turner to decide if the regulation is reasonable. Id. (citing Covino, 967 F.2d at 78 - 79 (discussing the Turner factors)). On the other hand, "if the inmates's Fourth Amendment claim challenges an isolated search, courts typically apply the standard set forth in Bell v. Wolfish, 441 U. S. 520 (1979). "Id. Before the court determines whether Turner or Bell applies, it must determine whether the plaintiff had an "actual, subjective expectation of bodily privacy "when he was strip searched see id at 57 and whether "the subjective expectation is one that society is prepared to accept as reasonable. "White v. Doe No. 3:16-CV-01874 (JAM), 2021 WL 4034164, at *4 (D. Conn Sept. 3, 2021) (citing Covino, 967 F.2d at 77 (appropriate inquiry is whether the prisoner "has exhibited a subjective expectation of privacy and whether society is prepared to recognize that expectation of privacy as reasonable")). The strip search that the plaintiff was subjected to required him to lift his testicles, bend, squat and cough while spreading his buttocks. See compl. At par. 36. The plaintiff was also instructed to open his mouth using his hands that he just used to lift his testicles and spread his buttocks at defendant Coggeshall's direction. Id. "[T]here is no dispute that a visual body cavity search is a 'serious invasion of privacy." Velez - Shade v. Population Mgmt. No. 3:18CV1784 (JCH) 2019) WL 467 4767, At*9 (D. Conn. Sept. 2019) (citing Harris, 818 F.3d At 58). Next, the court must determine whether invading the plaintiff's privacy was justified. See Harris, 818 F.3d At 57 (quoting Covino, 967 F.2d At 77 - 78). Here the

AA - 71

5

plaintiff describes multiple strip searches. See Compl. At par. 41. If the plaintiff's strip search was an isolated incident, the court would analyze the justification for it under Bell v. Wolfish, 441 U. S. At 58 (applying Bell to challenges of an "isolated search"). In this instance the plaintiff's strip searches were conducted under a "routine strip search policy", thus subjecting him to multiple strip searches. (Compl. At par. 41). Since the plaintiff challenges a policy as opposed to an isolated incident the court must analyze the justification for the intrusion under Turner. See Harris, 818 F.3d At 57 (Turner applies to challenges to prison regulations or policy. To the contrary of the defendants position, which is explicated in detail at bottom when applying the Turner test to the facts of this case will show that the searches in question / policy is / was unrelated to a legitimate goal. The defendant's argument that if searches after contact visits are justified then searches after video visits, that co - occur with contact visits would also be constitutionally appropriate, must fail as a matter of law!!

    C.  The Plaintiff's Challenge To The DOC Strip Search Policy States A Legitimate Claim As A Matter Of Law.

The Turner Court "listed four factors governing the review of prison regulations".

( i ) Whether there is a valid, rational connection between the regulation and the legitimate governmental interest put forward to justify it:

( ii ) Whether there are alternate means of exercising the right in question that remain open to prison inmates;

( iii ) Whether accommodation of the asserted constitutional right will have an unreasonable impact upon guards and other inmates, and upon the allocation of prison resources generally; and

( iv ) Whether there are reasonable alternatives available to the prison authorities. "Covino, 967 F.2d At 78 - 79 (citing Turner v. Safely, 482 U. S. 78, 89 - 90 (1987).

"Correctional officials have a legitimate interest, indeed a responsibility, to ensure that jails are not made less secure by reason of what new detainees may carry in on their bodies. "Florence

AA-72

6

v. Bd of Chosen Freeholders, 566 U. S. 318, 322 (2012). Courts in this circuit have thus recognized that there is "a valid, rational connection between a correctional institution's post - classification strip search policy and the legitimate governmental interest of preventing contraband distribution within the correctional institution. "Sassi v. Dutchess Cnty. No. 9;16-CV-1450, 2019 U. S. Dist. Lexis 15387, 2019 WL 401951, At*14 ( N. D. N. Y. Jan. 23, 2019). This is so because a newly arriving inmate can secrete contraband into his body and distribute it to other inmates once inside the facility. See id. The same concerns apply when an inmate has a contact visit. See Block v. Rutherford, 468 U. S. 576, 586 (1984) noting that "[C]ontact visits ... open the institution to the introduction of drugs, weapons and other contraband. Visitors can easily conceal guns, knives, drugs, or other contraband in countless ways and pass them to an inmate unnoticed by even the most vigilant observers.") Thus, the Supreme Court has upheld a prison policy of conducting visual body cavity searches after every contact visit with someone from outside the prison see Bell, 441 U. S. at 559 - 60. Nevertheless, the security concerns animating those decisions are not present here. The visits here are by video, not in person. See Compl., at par. 12. Nor does the visitor enter upon Robinson CI's premises for such visits. See Exh. 5 at #9. Thus, the feat of the plaintiff or any other prisoner at Robinson CI who participate in video visits being able to harbor, smuggle contraband into the institution highly unlikely and or improbable. See Compl., at 15. Defendant Starzyk acknowledged that strip searches at the conclusion of video visits are not authorized in administrative directive 6.7. See Compl., at par. 27. Administrative directive 6.7 is the policy that governs strip searches in Connecticut's prisons. See Exh. 3 at #16. Other courts have concluded that strip searches under similar circumstances are unjustified by a legitimate penological interest. See, e.g., Bono v. Saxbe, 620 F.2d 609, 617 (7th Cir. 1980) (observing policy of strip searching prisoners after non - contact visit is not justified by the rationale in Bell, which should not be extended to these searches "without a showing that there is some risk that contraband will be smuggled into [the prison] during non - contact, supervised visits or that

AA 73

7

some other risk within the prison will be presented."). The defendant's strip search policy at the conclusion of video visits does not serve any legitimate governmental interest The remaining Turner factors are largely inapplicable here. As to "whether there are alternative means of exercising the right in question that remain open to prison inmates. "Covino, 967 F.2d at 78, the right in question" is the Fourth Amendment right to be free from unreasonable searches. If prison officials stop strip searching inmates after video visits, that right would remain respected. The "accommodation of the asserted constitutional right will not have an unreasonable impact upon guards and other inmates or upon the allocation of prison resources generally," id., (bracketed material added) because prison security would still be maintained and correctional officers would expend less time and effort strip searching inmates. And because there would be no further security risk by ending the policy " there are reasonable alternatives available to the prison authorities, in fact the prison would be no worse off if it stopped searching inmates after video visits."[A] strip search is unconstitutional if its is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish. "Jean - Laurent v. Wilkers on, 438 F. Supp. 2d 318, 323 (S. D.N.Y. 2006), aff'd, 461 F. app'x 18 (2d Cir. 2012) citing (Covino, 967 F.2d at 80 (citation omitted; Hodges v. Stanley 712 F. 2d at 34, 35 - 36 (2d Cir 1983) (second strip search performed soon after first strip search served no legitimate interest when prisoner was under continuous escort); Bono, 620 F.2d at 617). The defendant's argument that the plaintiff's challenge to the DOC strip search policy misses the mark. To begin, when the plaintiff was strip searched by defendant Starzyk at the conclusion of video visits on 6/3/24, the DOC did not have this policy in place via their administrative directive 6.7 that would warrant said action by Defendant Starzyk. See. Exh. 19 at 013 (ix). Defendant Starzyk's written policies required him to strip search inmates after contact visits where reasonable suspicion is not required. See Exh. 19 at 012 - 013. Nevertheless, defendant Starzk did not establish reasonable suspicion explicated in DOC policy as he should have done prior to strip searching the plaintiff. See Exh. 19 at 013 (cii). To add insult to injury, Defendant Starzyk is familiar with administrative directive 6.7. See

 AA-74

8

Exh. 9 at #3. Next, the defendants spend a considerable amount of time justifying the DOC strip policy; what the defendants' fail to realize is that the plaintiff had a reasonable expectation of limited bodily privacy even while in prison. The fourth amendment "protects" individual privacy against certain kinds of governmental intrusion…and it is well established that its protections extend to prisoners." Holland v. City of NY, No. 14-5517, F.3d, 2016 WL 3636249, at *7 (S.D.N.Y. June 24, 2016) (quoting Katz v. U. S. 389 U. S. 347 350 (1967) "The test of reasonableness, under the Fourth Amendment is not capable of precise definition or mechanical application" and each case" requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. "Bell, 441 U. S. at 559. Simply put, administrative directive 6.7 directs when prisoners can be strip searched when reasonable suspicion is not required and after video visits is not one. See Exh. 19 at 012 - 013. Administrative directive 6.7 gets its authority and reference from applicable case law. See Exh. 19 at :011 (d). In this instance, the applicable case law relevant here is Bell v. Wolfish, 441 U.S. at 558 - 560 (holding that inmates may be routinely strip, frisked after contact visits; but they may not be strip frisked after non - contact visits. Wherefore, the DOC strip search policy was / is violative of the Fourth Amendment's prohibition of unreasonable searches and seizure.

    D.  The Searches Conducted By Defendants Starzyk and Coggeshall Were Violative Under The Fourth Amendment.

In the previous section, the plaintiff outlined how the defendant's policy of strip searching the plaintiff after non - contact video visits serves no legitimate governmental interest under the Turner factors and it's an over exaggerated response… Nonetheless, the plaintiff invites the court to analyze the strip search conducted by Defendant Starzyk under the standard set forth in Bell v. Wolfish, 441 U.S. 520 (1979), because technically speaking, there was no policy or regulation in place under administrative directive 6.7 that required Defendant Starzyk to strip search the plaintiff at the conclusion of a video  visit on 6/3/24. See Exh. 19 at 012 - 013 ( ix ). That said, Defendant Starzyk's strip search of the plaintiff should be analyzed as an isolated

AA-75

9

search, for all we know, based upon the evidence put forth in Exh. 19 at 013 ( ix ) Defendant Starzyk may have taken it upon himself to strip search the plaintiff without reasonable suspicion a day before the revised version of administrative directive 6.7 went into effect. See Exh. 11 at 0074 ( ix ). In Bell v. Wolfish, 441 U.S. at 588 - 60, the Supreme Court held that routine visual body cavity searches of a pre-trial detainee conducted after a contact visit by someone from outside the prison did not violate the detainees fourth amendment rights, even in the absence of either probable cause or reasonable suspicion that the detainee possessed contraband. Similarly so, other courts have taken the same approach in protecting prisoners from unreasonable searches. See also; Hurley v. Ward, 549 F. Supp. 174, 186 (S.D.N.Y. 1982) (J, Carter concluded that strip searches after contact visits were permissible, but that in "all other circumstances" body cavity searches absent some level of cause were deemed unreasonable Id. see also Bono v. Saxbe, 620 F. 2d 609, 617' (7th Cir. 1980) Bell did not approve of strip searches after non - contact visits absent some showing of particularized suspicion). Interestingly so, the defendants rely on Bono v. Saxbe, 527 F. Supp. 1182 (S.D.Ill. 1980). In support of their position to justify the need for strip searches after non - contact video visits. In Bono, 527 F. Supp. 1182 (S.D.Ill.1980) those inmates were not under constant observation whereas the plaintiff was under constant observation during video visits. See Compl., at par. 17.Next, there is no evidence adduced that the video visit booths are handled by inmate orderlies who would secrete contraband at these booths for other inmates nor is the plexi-glass in the visiting room compromised to enable an inmate to recover such contraband. In furtherance as to illustrate how the facts of this case are inapposite from Bono, 527. In Bono, 527, those inmates visitors were actually present in that prison, that is not the case here. In this instance when the plaintiff had his non - contact video visits(s), his visitors did not enter the premises of Robinson Ci's. See Compl. At par., 15. Even more interesting is that Defendant Caron acknowledges that prisoners can't receive contraband from their visitors during video visits see exh., 3 #20. This concession by Defendant Caron further evinces that their rationale



10

for performing strip searches on prisoners at the conclusion of video visits defy logic and are unreasonable. Also, the defendant's argument continue to miss their mark by illustrating how the plaintiff did not proffer that his strip searches were cross - gender searches; they were standard visual cavity searches that did not include any contact by the defendants. See (Doc. 1 at 5 - 8). And, since the plaintiff stated that the strip searches at Robinson CI take place within separate partitions adjacent to the visiting room. (Defs. local rule 56 (a) (1) St., at par. (15). True indeed there was no contact from the defendants, there was not a cross - gender search however during the plaintiff's strip search, other officers and prisoners who were not involved in the strip search process were able to see him in the nude because of insufficient partitions. See Compl., at par(s) 36 - 37. As to the strip search conducted by Defendant Coggeshall which was based upon a prison policy so the factors explicated in Turner v. Safely, 482 U.S. 78, 89 - 90 (1987) are applicable here. The four Turner factors already discussed in the previous section of this brief describe how the plaintiff was required to lift his testicles and bend, squat and cough while spreading his buttocks. See compl., at par., 36. This is the type of strip search plaintiff was subjected to by Defendant Coggeshall on 6/10/2024. See exh., 7 #22. "[T]here is no dispute that a visual body cavity search is a serious invasion of privacy. "Velez - Shade v. Population Mgmt. No. 3:18 CV 1784 ( JCH ), 2019 WL 467 *9 (D. Conn. Sept. 25, 2019) (citing Harris, 818, F. 3d at 58). Further justifying why defendant Coggeshall's strip search of the plaintiff was unlawful is (1). Staff directs inmates to sit at specific computers during video visits. See exh. 7 #16; therefore, it becomes even more improbable for a prisoner to try to collude with another prisoner to stash contraband for another prisoner to receive. (2) Nothing in Defendant Coggeshall's manual Administrative Direct 6.7) directed him to strip search the plaintiff at the conclusion of his video visit. See exh. 31 at p. 003 ( ix ). The central teaching of this matter is strip searches on prisoners who have contact visits with people from outside the facility are reasonable not prisoners who have contact with other prisoners. Hence, prisoners have contact with other prisoners throughout the prison (i.e. gym, chow hall, library, school) and they aren't strip



11

searched because of those interactions, nor during their interactions with teachers (from outside the facility) unless reasonable suspicion is established. See Hurley v. Ward, 549. F. Supp.174 (1982) (routine strip frisk searches may be required after contact visits by prisoners, but such routine searches are unreasonable and unjustified under all other circumstances).; see also Bell v. Wolfish, 441 U. S. 520 (1979) ( up holding on penological and institutional safety grounds, suspicionless visual body cavity searches of inmates following contact visits. Also noted in Hodges v. Stanley, 712 F.2d 34 (1983); Morgan v. Ward, 699 F. Supp. 1025 (1988) was the clear holding of both cases, which is a redundant or wholly unnecessary strip frisk is presumptively unreasonable. See also Hurley v. Ward, 584 F. 2d 609 ( 2d Cir., 1978). In sum, when analyzing the facts of this case and under the circumstances in which the plaintiff was strip searched, namely after non - contact video visits, when either applying the Bell factors or Turner factors in this instant offense, Defendants Starzyk and Coggeshall's strip search on the plaintiff does not pass constitutional muster

## II.    The Defendants Are Not Entitled To Qualified Immunity

The defendants are not entitled to qualified immunity. Defendant Quiros did not have involvement in any of the strip searches plaintiff was subjected to however Defendant Quiros created the unconstitutional policy that subjected the plaintiff to the unreasonable searches at the conclusion non - contact video visits. See Tangreti v. Bachmann 983 F. 3d 609 ( 2d Cir., 2020 ) (quoting Ashcroff v. Iqbal, 556 U. S. 662 ( 2009) ( holding that a policy maker / senior official who promulgated an unconstitutional policy with a culpable mental state is more directly and personally involved in the constitutional violation, As to the remaining defendants, there is credible evidence that they all violated the constitution. Moreover it was clearly established that creating a blanket policy of strip searches following the conclusion of non - contact visits was per se unreasonable. No matter how the defendants try to spin it, their argument that an inmate participating in video visits may be able to obtain contraband from a visitor participating in a contact visit, such notion is a farce! The doctrine of qualified immunity shields police officers



12

acting in their official capacity from suits for damages under 42 U. S. C. 1983, unless their actions violates clearly established rights, of which an objectively reasonable official should have known. See Harlow v. Fitzgerald 457 U. S. 800, 818, 73 L. Ed. 2d 996, 102 S. ct. 2727 ( 1982 ); Ricciuti v. N. Y. C. Transit Authority, 124 F. 3d 123, 127 ( 2d Cir., 1997 ). This policy is justified in part by the risk of the "fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties". Anderson v. Creighton, 483 U. S. 635, 638, 97 L. Ed. 2d 523 107 S. ct. 3034 ( 1987 ). Overcoming qualified immunity entails a two part process. First, a plaintiff must allege the violation of a clearly established constitutional right or statutory right, second, qualified immunity will be denied only if a reasonable official should have known that the challenged conduct violated the established right. See Rodriguez v. Conas, 888 F. 2d 899, 901 ( 1st Cir., 1989 ); see also Ashcroft v. Al kidd 563 U. S. 131 S. ct. 2074, 2080 ( 2011 ). In measuring "reasonableness", a court should consider the facts and circumstances of each particular case, including the crime committed its severity, the threat of danger to the officer and society; and whether the suspect is resisting arrest or attempting to evade arrest. See Graham v. Connor 490 U. S. 386, 396 ( 1989 ). Courts also acknowledge that police officers are often forced to make split - second judgments in circumstances that are tense, uncertain and rapidly evolving about the amount of force that is necessary in a particular situation. "Id at 397. The objective reasonableness is met and the defendant is entitled to immunity if officers or reasonable competence could disagree 'on the legality of the defendants actions. "Lennon v. Miller, 66 F. 3d 416, 420 ( 2d Cir., 1995 ) ( quoting Malley v. Briggs, 475 U. S. 335, 341, 89 L. Ed. 2d 271, 106 S. ct. 1092 ( 1986 ). Although the second step reasonableness inquiry requires a focus on the particular facts of a given case, a defendant is entitled to summary judgment on qualified immunity grounds when "no reasonable jury looking at the evidence in the light most favorable to and drawing all inferences most favorable, to the plaintiff, could conclude that it was objectively unreasonable for the defendants to believe that they were acting in a fashion that did not clearly violate established federally protected rights. Id.

AA-79

13

( quoting Robinson, v. Via, 821 F. 2d 913, 921 ( 2d Cir., 1987). Summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness. See 66 F. 3d at 420, 421. See also Hemphill, 141 F. 3d at 416 - 18. A L Kidd 563 U. S. at 131 S. ct.,at 2083 ( quoting Anderson v. Creighton, 483 U. S. 635, 640 ( 1987 ).

As to Defendant Caron

In this instant offense, it was apparent by 6/3/2024 that the plaintiff had a right to be protected against unreasonable searches and seizures by the government. See Const. Amend IV (stating that people shall be secure in their persons against unreasonable searches and seizures). Graham, 490 U. S. at 394 - 95. Defendant Caron was the Warden at Robinson CI during relevant times. See exh., 3 # 1. In February of 2024 defendant Caron stated that a memo was put out reminding staff of the importance of conducting strip searches at the conclusion of video visits. See exh., 4 # 23. The problem that lies, was that this policy went outside the scope of her administrative directive 6.7 which is the policy that governs strip searches. See exh., 3 # 16. At the time in question administrative directive only permitted strip searches at the conclusion of contact visits. See exh., 19 at 012 - 013. Nonetheless, even after the plaintiff writes a grievance apprising defendant Caron that strip searches after video visits not only contravene administrative directive 6.7 and the supreme courts in Bell v. Wolfish, 441 U. S. 520 ( 1979 ). See exh., 16 at 002 - 003. Instead of rectifying the situation defendant Caron gives an elaborate explanation justifying her policy, See Tangreti v. Bachmann, 983 F. 3d 609 ( 2d cir., 2020 ) (quoting Ashcroft v. Iqbal, 556 U. S. 662 ( 2009 ) ( holding that a policy maker / senior official who promulgated an unconstitutional policy is more directly and personally involved in the constitutional violation. See also Charles v. Maul, 214 F. 3d 350 ( 2d cir., 2000 ) (higher ranking officials are held to a higher standard of legal knowledge than their subordinates. Given that defendant Caron knew what administrative directive 6.7 and Bell v. Wolfish, 441, U. S. connoted

AA-80

14

it was not "objectively reasonable" for her to mandate strip searches after video visits knowing that inmates can't receive contraband from their visitors during video visits. See exh., 3 # 20.

As to Defendant Quiros

Defendant Quiros has been the Chief Executive officer for 5yrs. See exh., 2 # 1. One of defendant Quiros' duties is to administer, control, coordinate, and establish rules for the administrative practices. See exh., 24. Nonetheless defendant Quiros did establish impermissible rules that went from prisoner being strip searched at the conclusion of contact visits; see exh., 19 at 013 ( ix ), which is in line with Bell, 441 U. S. 520, to prisoners being strip searched upon what is now recognized as a public visiting area. See exh., 31 at 003 ( ix ). Hence, Robinson CI's visiting room turned to a public visiting area in a matter of months in all of the years of the facilities existence!  This slight revision to administrative directive covertly allowed for plaintiff to be strip searched at the conclusion of video visits. See comp., at par. 39. Further establishing that defendant Quiros accused in the new strip search policy evidenced by exh., 21, where plaintiff response letter was forwarded to defendant Caron for a response, but Caron's response given was prospectively as to what the revision of administrative directive would read on 6/4/2024. See 31 at 001; 003 ( ix). It was apparent by May 30, 2024, that prisoners retain "a limited constitutional right of bodily privacy even in the prison context". Covino v. Patrissi, 967 F. 2d 73, 77 ( 2d cir., 19920. " Prisons are not beyond the reach of the constitution. No 'iron curtain' separates one from the other…Indeed, we have insisted that prisoners be accorded those rights not fundamentally inconsistent with imprisonment itself or incompatible with objectives of incarceration. See Willis v. Artuz, 301 F. 3d 65, 67 ( 2d cir., 2002 ) accord Hudson v. Palmer, 468 U. S. 523. " Policy makers / senior officials who promulgated an unconstitutional policy is more directly and personally involved in the constitutional violation. See Tangreti v. Bachmann, 983 F. 3d 609 ( 2d cir., 2020 ). See also Charles v. Maul, 214 F. 3d 350 ( 2d cir., 2000 ) ( holding that higher ranking officials are held to a higher standard of legal knowledge than their subordinates.

AA- 81

15

As to Defendant Ogando

Defendant Ogando was the Deputy Warden of operations during relevant times. See exh.,5 #1. Ogando was charged with overseeing the operations at Robinson Cl. See exh., 5 #2. Some of Defendant Ogando's duties require him to oversee staff, operations of custody and security. See exh. 27 :0056. More examples of Defendant Ogando's duties require him to ensure enforcement of agency and institution rules and regulation; interprets and administers pertinent laws. See exh. 27 0057. In March of 2024, the plaintiff wrote an inmate request regarding strip searches at the conclusion of video visits to non defendant, Deputy Warden, Carbone, only to be apprised that the plaintiff was writing to the wrong Deputy Warden and it is defendant Ogando who oversees corrections officers who are strip searching plaintiff after video visits. See exh. 15. It was apparent by March of 2024 that prisoners retain " a limited constitutional right of bodily privacy even in the prison context. " Covino v. Patrissi, 967 F. 2d 73, 77 (2d cir., 1992 ) " see also Tangreti v. Bachmann, 983 F. 3d 609 ( 2d cir., 2020 ) ( holding that policy makers senior officials who promulgated an unconstitutional policy is more directly and personally involved in the constitutional violation; see also Charles v. Maul, 214 F. 3d 350 ( 2d cir., 2000 ) ( holding that higher ranking officials are held to a higher standard of legal knowledge than their subordinates. Further illustrating Defendant Ogando's culpability was his tour of 9A housing the unit the plaintiff was housed in. See compl., at par. 30. During this tour the plaintiff and Defendant Ogando spoke and the plaintiff reminded him that " nothing in administrative directive 6.7 promulgates the use of strip searches following video visits. See compl., at par. 30. Defendant Ogando was aware of this. See compl., par. 31. Even more telling is Defendant Ogando's belief that strip searching inmates at the conclusion of video visits on 6-3-2024 was related to a legitimated penological goal. See exh. 6 # 20. Administrative directive did not encompass strip searches following video visits on 6-3-2024. See compl., at par. 27. Next the defendants argue that legal research reveals no Second Circuit Authority prohibits strip searches following mixed contact and video visits at Robinson Cl. This argument fails as a matter of law. Legal research

AA- 82

16

reveals that a redundant or wholly unnecessary strip frisk is presumptively unreasonable. See Hurley v. Ward, 584 F. 2d 609 ( 2d cir., 1978 ); Hodges v. Stanley 712 F. 2d 34 ( 1983 ). Even more compelling were the defendants strip policy administrative directive 6.7 that is congruent with the holding in Bell v. Wolfish, 441 U. S. 520 ( 1979 ) ( upholding on penological and institutional safety grounds, suspicionless visual body cavity searches of inmates following contact visits. See also exh. 19, ;012 - 013. As noted in the previous section, the plaintiff and Defendants Starzyk, Coggeshall offer different versions as of what transpired on 6-3-24, 6-10,24 as to their conduct and manner, in which they strip searched the plaintiff in. Defendants Starzyk, Coggeshall did not put any defense on the disputed material facts that implicate their reasonableness of their strip search of the plaintiff when reasonable suspicion was required before doing such, instead they argue in their motion for summary judgment that their strip search of the plaintiff was related to legitimate security concerns. Here the plaintiff alleges that Defendants Starzky, Coggeshall strip searched the plaintiff after non - contact video visits without first establishing reasonable suspicion, which not only contravenes administrative directive 6.7 and the holding of Bell v. Wolfish, 441 U. S. 520 ( 1979 ). However, it is basic principle that once a defendant asserting qualified immunity has agreed to be bound by the plaintiff's version of facts. Therefore the reasonableness of the strip searches conducted by Defendant's Starzyk, Coggeshall at the conclusion of non - contact video visits remain a material fact in dispute and this court should deny the defendants qualified immunity and summary judgment on the qualified immunity grounds should be denied. See Hemphill, 141 F. 3d at 416 - 18.

III.     The Plaintiff Properly Exhausted His Administrative Remedies.

"Section 1997 e ( a ) provides: ' no act shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. "Ross v. Blake, 136 S. ct. 1850, 1856 ( 2016 ); The supreme court has held that inmates must



17

exhaust administrative remedies before filing any type of action " about prison life. See Porter v. Nussle, 534 U. S. at 532, regardless of whether or not the inmate may obtain specific relief he or she desires through the administrative process. See Booth v. Churner, 532 U. S. 731 741 ( 2001 ). An inmate who fails to file an administrative grievance may not bring the claim in federal court. Adekoya v. Fed. Bureau of Prisons, 375 F. App'x 119, 121 ( 2d cir., Apr. 29, 2010 ). It is undisputed that the plaintiff was incarcerated when he brought his lawsuit challenging the prisons strip search practice at Robinson CI. It is also undisputed that the plaintiff exhausted his administrative remedies see exh. 18: 00 at : 007. The defendants notion that the plaintiff did not exhaust his administrative remedies are flat out absurd. Nevertheless, the single grievance that the plaintiff filed that only names Defendant Starzky is sufficient under the exhaustion requirement, because Ct. State prisons do not require a prisoner to identify any individual. See exh. 30 at 006 ( ii ). Thus, the requirement imposed in identifying an individual is to the staff member that the informal resolution was addressed to. See Id, and in doing so to fulfill the requirement, the plaintiff described how he wrote to Captain Martinez on 6-12-24 regarding strip searches following the conclusion of virtual video visits. See exh. 20 at :018 - 019. " When the grievance procedure do not require prisoners to identify the individual responsible for alleged misconduct, neither does PLRA for exhaustion purpose. See Jones, 549 U. S. at 218. However, interesting is the defendant's reliance on Sanchez v. Bell, No. 3:22-CV-1087 ( SVN ), 2024 U. S. Dist. Lexis 23064, at * 14 - * 15 ( D. Conn. Feb. 9, 2024), which does them no favors at all! In Bell: " To properly exhaust a claim. "A prisoner must allege facts sufficient to alert corrections officials to the nature of the claim, and provide enough information about the conduct at issue to allow prison officials to take appropriate responsive measures." Singh v. Lunch, 460 F. App'x 45, 47 ( 2d cir., 2012 ) ( summary order ) ( cleaned up ) ( quoting Johnson v. Testman, 380 F. 3d 691 697 ( 2d cir., 2004 ). If a plaintiff does not provide such description or notice, correction officials are not afforded the "opportunity to address complaints internally, "which congress has required before a plaintiff can pursue a federal case. Porter v. Nussle, 534 U. S. 516, 525 ( 2002 ). Here,

 AA - 84

18

the plaintiff has exhausted his administrative remedies, as he was not required to identify Defendant Starzyk. See exh. 20 at :018 - 019.

IV.    Conclusion

For the foregoing reasons stated above, the court should deny the defendant's motion for summary judgment as to all the claims, as there remain material fact in dispute regarding the plaintiff's unreasonable search claims.

AA-85

19

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

COURTNEY GREEN,                    :        No. 3:24-cv-01317 (VDO)
    *Plaintiff,*                 :
                                 :
    v.                           :
                                 :
COMMISSIONER QUIROS, et al.,       :        JUNE 12, 2025
    *Defendants.*                :

## LOCAL RULE 56(a)(1) STATEMENT OF
## UNDISPUTED MATERIAL FACTS

The undersigned defendants submit this statement of undisputed material facts in support of their motion for summary judgment. *See* D. Conn. L. Civ. R. 56(a)(1).

1. Plaintiff filed the instant complaint *pro se* while incarcerated within the Connecticut Department of Correction ("DOC"). (Doc. 1, ¶ 3); (Doc. 10, Pg. 1).

2. Between April 28, 2021 and November 19, 2024, Plaintiff was incarcerated at the Robinson Correctional Institution ("Robinson CI"). (Ex. B, Declaration of Zelynette Caron, ¶30).

3. Robinson CI is a level 3 medium-security facility. (Ex. B, ¶4).

4. Inmates at Robinson CI are housed in secure dormitories and have more freedom to move about the facility and intermingle than inmates at facilities with higher levels of security. (Ex. B, ¶6).

5. Robinson CI allows social visits, which can be contact visits, non-contact visits, or video only visits. (Ex. B, ¶10).

AA-86

6.    All social visits at Robinson CI are conducted in the same visiting room. (Ex. B, ¶11).

7.    Additionally, Department of Children and Families ("DCF") visits also occur in the public visiting room. (Ex. B, ¶15).

8.    Given the layout of the Robinson CI facility, the visiting room is the only area where social visits can be conducted safely and with appropriate protocols. (Ex. B, ¶12; Ex. A, Plaintiff's Deposition, 152:6 – 10).

9.    The Robinson CI visiting room is a fairly large space with long, cafeteria-like tables, which feature a low partition running along the middle. (Ex. B, ¶9).

10.    Inmates conducting visits in the visiting room are seated separately but are not physically separated from one another. (Ex. B, ¶17).

11.    During contact visits, inmates meet with visitors while sitting across one of the tables in the visiting room. (Ex. B, ¶18).

12.    During non-contact visits, inmates meet with visitors while sitting on either side of a secure glass wall with small sound holes, speaking over a telephone. During non-contact visits the inmates are seated in a secured area adjoining the visiting room behind glass, but their visitors are seated in the visiting room. (Ex. B, ¶19).

13.    During video only visits, inmates meet with their visitors while sitting at laptops placed in the visiting room. (Ex. B, ¶20).

2

AA 47

14. Social visits at Robinson CI are conducted in groups to avoid strain on staff and resources. (Ex. B, ¶21).

15. Following visits, inmates are taken out of the visiting room to an adjoining room and strip searched in separate partitions before returning to their housing units. (Ex. B, ¶23; Ex. A, 69:13 – 20).

16. The purpose of strip searches is to stop the infiltration of contraband into the facility. (Ex. B ¶9); (Ex. A, 104:20 – 24).

17. All inmates leaving the visiting room are required to be strip searched because they all visit in the same physical space where members of the public are or have been present. (Ex. B, ¶24; Ex. A, 56:25, 57:1 – 6).

18. If only inmates conducting contact visits were strip searched, this could allow non-contact and video visit inmates to obtain contraband from outside visitors or from other inmates. (Ex. B, ¶25).

19. Previous strip searches of inmates returning from the visiting room have resulted in the discovery of contraband, including various illegal drugs and a metal ring. (Ex. B, ¶26; Ex. A, 172:3 – 10).

20. Protective sweeps of the visiting room by correctional officers have also uncovered contraband that was apparently hidden for other inmates to retrieve surreptitiously. (Ex. B, ¶27).

AA-88

21. Contraband, including illegal drugs, metal objects, weapons, or written notes, pose risks to the safety and security of the Robinson CI facility. (Ex. B, ¶28; Ex. A, 65:11 – 13).

22. The DOC Inmate Search Policy is outlined in Administrative Directive (A.D.) 6.7. *See* Att. B to Ex. B.

23. The operative version of A.D. 6.7 took effect on January 30, 2024, but a revision concerning strip searches and public visiting areas was approved on May 29, 2024, and published on June 4, 2024. (Ex. B, ¶32).

24. A.D. 6.7 was revised to clarify that facilities must strip search inmates who have social visitation happening in the same area, due to access to the public and the risk of contraband entering a facility. (Ex. B, ¶33).

25. Robinson CI allowed social visits on June 3, 2024 and June 10, 2024. (Ex. B, ¶35).

26. On June 3, 2024, Robinson CI scheduled thirteen (13) contact visits, and ten (10) video visits. (Ex. B, ¶36).

27. On June 10, 2024, Robinson CI scheduled five (5) contact visits, three (3) non-contact visits, and thirteen (13) video visits. (Ex. B, ¶37).

28. On June 3, 2024, Plaintiff had a video visit with an approved visitor. (Ex. A, 97:13 – 17).

29. Following the Plaintiff's video visit on June 3, 2024, the Plaintiff was strip searched. (Ex. A, 97:18 – 22).

AA-89

30.    On June 10, 2024, Plaintiff had another video visit with an approved visitor. (Ex. A, 110:22 – 25).

31.    Following the Plaintiff's video visit on June 10, 2024, the Plaintiff was strip searched. (Ex. A, 111:1 – 5).

32.    The officers who conducted the June 3, 2024 and June 10, 2024 strip searches behaved in a professional manner during those interactions with the Plaintiff. (Ex. A, 104:5 – 10; 116:16 – 21; 120:13 – 17).

33.    Both the June 3, 2024 and June 10, 2024 strip searches were conducted in a manner consistent with previous strip searches the Plaintiff had undergone. (Ex. A, 117:8 – 12; 118:8 – 11).

34.    A.D. 9.6 requires an aggrieved inmate to first seek informal resolution of his issues, in writing, through the use of an Inmate Request Form prior to filing a formal grievance, with a response from an appropriate department head to be made within 15 days. (Att. 1 to Ex. C, p. 6 § 6(a)(i)); (Ex. C, at ¶9).

35.    If the inmate is not satisfied with the informal resolution offered, the inmate must file a grievance and attach the Inmate Request Form containing the appropriate staff member's response, among other requirements. The Level 1 Grievance must be filed within 30 days of the incident. (Att. 1 to Ex. C, p. 6 § 6(a)(ii)).

36.    Following the Level 1 Grievance, the inmate must file a Level 2 Appeal either (1) within 5 days from the response to the Level 1 Grievance, or (2) within 65

5

AA- 90

days of the filing of the Level 1 Grievance if no response to that grievance is received. (Att. 1 to Ex. C, p. 7 § 6(b)(ii); Ex. C, at ¶21-22).

37. Following the Level 2 Appeal, the inmate may file a Level-3 Appeal either (1) within 5 days from the response to the Level 2 Appeal that challenges Department level policy or challenges the integrity of the grievance procedure, or (2) within 65 calendar days of the filing of the Level 2 Appeal if no response to that grievance is received within 30 business days. (Att. 1 to Ex. C, p. 8 § 6(b)(iii)).

38. Plaintiff is familiar with the DOC's grievance process. (Ex. A, 124:16 – 18).

39. Between July 1, 2023 to June 30, 2024, Plaintiff filed three (3) Level 1 grievances. (Ex. C, Declaration of ARC Shea, ¶28; Att. 3 to Ex. C).

40. Plaintiff only filed one grievance between June 1, 2024 – June 30, 2024. This grievance is identified as IGP #116-24-150. (Ex. C, ¶28; Att. 3 to Ex. C).

41. IGP #116-24-150 was signed by Plaintiff on June 24, 2024 and alleges that Plaintiff was "twice. . . . strip searched by Officer Starzyk" following video visits. (Att. 3 to Ex. C).

42. IGP #116-24-150 makes no mention of Officer Coggeshall. (Ex. C, ¶30; Ex. A, 129:23 – 25, 130:17 – 20; Att. 3 to Ex. C).

43. On July 18, 2024, IGP #116-24-150 was disposed as rejected with an indication that the "decision [was] not subject to further appeal." (Ex. C, ¶31; Att. 3 to Ex. C).

6

AA-91

44. Allowing inmates to have social visits, including video visits, according to the applicable protocols and disciplinary structures in place, is beneficial for the moods of individual inmates and for inmate morale at a prison facility more broadly. (Ex. B, ¶32).

45. Better morale among inmates is beneficial for inmates in the facility, including because it can enhance safety and security, with better morale generally tending to yield less unhappiness and violence at the facility. (Ex. B, ¶33).

*Respectfully submitted,*

DEFENDANTS,

Commissioner Quiros, Warden Caron, Deputy Warden Ogando, Officer Starzyk, and Officer Coggeshall

WILLIAM TONG
ATTORNEY GENERAL

BY: /s/ *Dennis V. Mancini*

Dennis V. Mancini (ct30239)
Assistant Attorney General
State of Connecticut
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
dennis.mancini@ct.gov
Tel: (860) 808-5450
Fax: (860) 808-5591

7

AA - 92

/s/ *Owen R. Eagan*

Owen R. Eagan (ct31804)
Assistant Attorney General
State of Connecticut
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
owen.eagan@ct.gov
Tel: (860) 808-5450
Fax: (860) 808-5591

8

AA - 93

Case: 26-865   07/16/2026   DktEntry: 20.1   Page 96 of 193

## CERTIFICATION

I hereby certify that on June 12, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. A copy was also mailed to the following:

**Courtney Green**
**30 Trowel Street**
**Bridgeport, CT 06607**
greencourtney542@gmail.com

/s/ Dennis V. Mancini

Dennis V. Mancini
Assistant Attorney General

AA-94

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT.

-------------------------------------------------------------------- x

COURTNEY GREEN,                              :
                                             :
                    Plaintiff,               :        **ORDER GRANTING**
                                             :        **MOTION FOR**
        -against-                            :        **SUMMARY JUDGMENT**
                                             :
COMMISSIONER QUIROS, *et al.*,               :        3:24-CV-01317 (VDO)
                                             :
                    Defendants.              :
-------------------------------------------------------------------- x

**VERNON D. OLIVER,** United States District Judge:

Before the Court is Defendants'[1] motion for summary judgment and supporting memorandum (collectively, the "Motion").[2] The Court has reviewed the Motion, the facts contained in Defendants' Local Rule 56(a)1 statement,[3] Defendants' exhibits,[4] Plaintiff's response to the Motion and supporting documents,[5] Plaintiff's Local Rule 56(a)2 statement,[6] Defendants' reply,[7] and the record in this matter. After careful review of the record, the Court concludes that the Motion must be **GRANTED**.

### I.   BACKGROUND

Courtney Green ("Plaintiff"), a *pro se* plaintiff formerly imprisoned at Carl Robinson

---

[1] "Defendants" are Commissioner Quiros, Warden Caron, Deputy Warden Ogando, and Correctional Officers Starzyk and Coggeshall. *See*, Initial Rev. Order, ECF No. 10 at 12.

[2] Def. Mot. Summ. J., ECF No. 40; Mem. Mot. Summ. J., ECF No. 40-1.

[3] R. 56(a)1 Statement, ECF No. 40-2.

[4] Exs. A–C, ECF Nos. 40-3 to 40-5.

[5] Resp., ECF No. 42; Pl. Decl., ECF No. 43; Statement Disp. Facts, ECF No. 46.

[6] R. 56(a)2 Statement, ECF No. 45.

[7] Reply, ECF No. 48.

AA-95

Correctional Institution ("Robinson CI"),[8] filed a Complaint under 42 U.S.C. § 1983.[9] The Court conducted an initial review of the Complaint under 28 U.S.C. § 1915A(a).[10] There, the Court construed Plaintiff's Complaint as asserting two separate Fourth Amendment claims: (1) a Fourth Amendment challenge to Robinson CI's strip search policy against Commissioner Quiros, Warden Caron, and Deputy Warden Ogando and (2) a Fourth Amendment challenge arising from two strip searches conducted at Robinson CI by Correctional Officers Starzyk and Coggeshall.[11] The Court permitted Plaintiff to pursue these claims against these Defendants in their individual and official capacities.[12] The Court also permitted Plaintiff to pursue a state law claim under Article I, Section 7 of the Connecticut Constitution against Defendants in their individual capacities.[13]

Defendants moved to dismiss the official capacity claims and the state law claims.[14] The Court dismissed those claims on Defendants' motion.[15] Thus, only Plaintiff's Fourth Amendment claims against Defendants in their individual capacities remain.[16]

---

[8] Compl., ECF No. 1 ¶ 3.

[9] *Id.* ¶ 1.

[10] ECF No. 10 at 2.

[11] *Id.* at 7.

[12] *Id.* at 12.

[13] *Id.*

[14] Mot. to Dismiss, ECF No. 22 at 1.

[15] *See* Order, March 7, 2025, ECF No. 27.

[16] *See id.*

2

AA 96

Defendants have now moved for summary judgment.[17] They assert three arguments: that (1) Plaintiff's Fourth Amendment claims fail on the merits; (2) Defendants are entitled to qualified immunity; and (3) Plaintiff failed to exhaust administrative remedies as to one defendant.[18] In support of their Motion, Defendants have provided a Local Rule 56(a)1 statement containing material facts.[19] The Court recites below facts from that statement that are relevant to its ruling. In so doing, the Court notes where Plaintiff has disputed facts contained within that statement. The Court also discusses, where necessary, any supplementary evidence, such as the Complaint, Plaintiff's declaration and exhibits submitted with his response to the Motion, and exhibits provided by Defendants.[20]

Plaintiff was imprisoned at Robinson CI from April 28, 2021, to November 19, 2024.[21] Robinson CI is a medium-security prison.[22] Inmates at Robinson CI are permitted to "move about the facility" and "intermingle" with other inmates.[23] Inmates at Robinson CI are also

---

[17] ECF No. 40.

[18] *Id.* at 1.

[19] *See* ECF No. 40-2.

[20] The Court may consider the allegations in a verified complaint or sworn declaration in opposition to a motion for summary judgment. *See Elliott v. Cartagena,* 84 F.4th 481, 486 (2d Cir. 2023) ("A verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist...." (cleaned up)); *Lindsay v. Chapdeliane,* No. 3:19-CV-826 (JCH), 2021 WL 752841, at *3 (D. Conn. Feb. 19, 2021) (considering plaintiff's sworn declaration filed in opposition to motion for summary judgment to the extent statements made in it were based on plaintiff's personal knowledge).

[21] ECF No. 40-2 ¶ 2.

[22] *Id.* ¶ 3.

[23] *Id.* ¶ 4.

3

AA 97

allowed social visits.[24] These social visits include contact visits, non-contact visits, and video-only visits."[25] Regardless of the type of visit, "[a]ll social visits at Robinson CI are conducted in the same visiting room."[26] This is the only area in Robinson CI "where social visits can be conducted safely and with appropriate protocols."[27]

The visiting room is a "fairly large space with long, cafeteria-like tables, which feature

---

[24] *Id.* ¶ 5.

[25] *Id.*

[26] *Id.* ¶ 6. Plaintiff disputes this point, citing to his deposition testimony. *See* ECF No. 45 ¶ 6 (citing to "Depo. Tr. at p. 56 Lines 1–4"). Plaintiff testified at his deposition that inmates are placed in an "enclosed area" for non-contact visits. Def. Ex. A, ECF No. 40-3 at 5. The inmates "sit at stools on the far end of the wall on the left side, and they use the phone to communicate with the visitor who is on the other side of that plexiglas[s] partition." *Id.* The visitors on the other side of the plexiglass sit in a large visiting area. *See id.* That large visiting area also contains visitors who are conducting contact visits with other inmates. *See id.* Some space in the room separates non-contact visitors from contact visitors, but all visitors are contained in the same room. *See id.* at 5–6. Because Plaintiff testified that inmates conduct non-contact visits in a different area, *id.* at 5, his testimony contradicts the Rule 56(a)1 statement's contention that "[a]ll social visits at Robinson CI are conducted in the same visiting room," ECF No. 40-2 ¶ 6, to the extent that inmates are not in the same room with their visitors during non-contact visits. But Plaintiff's testimony is consistent with other facts alleged in the Rule 56(a)1 statement, *see* ECF No. 40-2 ¶ 12, and is otherwise immaterial because Plaintiff alleges that he was strip searched after a video visit, not a non-contact visit. *See* ECF No. 1 ¶ 11.

[27] ECF No. 40-2 ¶ 8. Plaintiff denies this fact based on "insufficient knowledge to admit." *See* ECF No. 45 ¶ 8. But this fact is deemed admitted because the objection does not point to specific record evidence disputing this fact. *See* D. Conn. L. Civ. R. 56(a)3 ("Failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)1[.]"); *Devecchis v. Scalora*, 179 F. Supp. 3d 208, 214 n.6 (D. Conn. 2016) (deeming fact admitted under Local Rule 56(a)3 where "[p]laintiffs' denial of th[e] allegation fail[ed] to comply with the specific citation requirement of Local Rule 56(a)3 because it d[id] not cite to specific paragraphs of the cited affidavit."); *Walton v. Connecticut*, No. 3:03-CV-2262 (JBA), 2006 WL 533793, at *2 n.3 (D. Conn. March 2, 2006) (deeming admitted material facts set forth by the defendant where the plaintiff merely claimed insufficient knowledge to respond and offered no evidence to dispute the facts).

4

AA-98

a low partition running along the middle."[28] Inmates conducting visits in this room are seated

apart but are not "physically separated from one another."[29] During contact visits, "inmates

meet with visitors while sitting across one of the tables in the visiting room."[30] Inmates are

permitted to "brief[ly] embrace" their visitor at the beginning and end of the visit.[31] During

non-contact visits, "inmates are seated in a secured area adjoining the visiting room behind

glass[.]"[32] The "secure glass wall" contains "small sound holes[.]"[33] Inmates conducting non-

contact visits speak to their visitors by phone while the visitors sit in the visiting room.[34]

During video visits, "inmates meet with their visitors while sitting at laptops placed in the

visiting room."[35] The laptops are placed on wall-mounted desks.[36] The video visits occur

---

[28] ECF No. 40-2 ¶ 9.

[29] *Id.* ¶ 10. Plaintiff denies this fact, citing to paragraph seventeen of his Complaint. *See* ECF No. 45 ¶ 10. But paragraph ten of the Rule 56(a)1 statement describes visitors conducting contact visits, *see* ECF No. 40-2 ¶ 10, while paragraph seventeen of the Complaint describes visitors conducting video visits. *See* ECF No. 1  ¶ 17. To the extent the distance between inmates conducting contact visits and inmates conducting video visits is at issue, the Court addresses that issue below.

[30] ECF No. 40-2 ¶ 11.

[31] Def. Ex. B, Caron Decl., ECF No. 40-4 ¶ 18. Some facts, like this one, are not contained in Defendants' Rule 56(a)1 statement, but the Court considers them as material facts because they are contained in a sworn declaration provided by Defendants. *See Lindsay*, 2021 WL 752841, at *3; *Mejia v. Kurtzenacker*, No. 21-CV-1222 (VDO), 2023 WL 8436074, at *2 n.3 (D. Conn. Dec. 5, 2023) (considering facts submitted by defendants that were not contained in Rule 56(a)1 statement).

[32] ECF No. 40-2 ¶ 12.

[33] *Id.*

[34] *See id.*

[35] *Id.* ¶ 13.

[36] ECF No. 40-4 ¶ 20.

5

AA-99

amidst contact visits in the same visiting room.[37]

Social visits "are conducted in groups to avoid strain on staff and resources."[38] Permitting inmates to conduct visits individually would "put undue strain on staff resources and prevent other inmates from accessing necessary court proceedings and similar meetings and would also increase wait times for other inmates seeking social visits, thereby limiting inmate access to those visits."[39] After visits, prison staff remove inmates from the visiting room and take them to an adjoining room.[40] There, prison staff strip search the inmates "in separate partitions" before returning the inmates to their housing units.[41]

The purpose of the strip searches is "to stop the infiltration of contraband into the facility."[42] In the visiting room, "[c]ontraband, including but not limited to illegal drugs, metal objects, or written notes[,] ... can be quickly passed or kicked across an open floor and hidden by inmates[.]"[43] In the past, prison officials have recovered "contraband, including various illegal drugs and a metal ring[,]" after strip searching inmates leaving the visiting room.[44]

---

[37] *See id.*

[38] ECF No. 40-2 ¶ 14. Plaintiff denies this allegation, *see* R. 56(a)2 Statement, ECF No. 45 ¶ 14, but the denial is improper, so the fact is admitted. *See supra* note 27.

[39] ECF No. 40-4 ¶ 21.

[40] ECF No. 40-2 ¶ 15.

[41] *Id.*

[42] *Id.* ¶ 16. Plaintiff denies this allegation, *see* ¶ 16, but the denial is improper, so the fact is admitted. *See supra* note 27.

[43] ECF No. 40-4 ¶ 28.

[44] ECF No. 40-2 ¶ 19. Plaintiff denies this allegation, citing Plaintiff's Exhibit 8, paragraph nineteen. *See* ECF No. 45 ¶ 19. Exhibit 8 contains Officer Coggeshall's response to Plaintiff's

6

AA-100

Prison officials have also recovered contraband that "was apparently hidden for other inmates to retrieve surreptitiously" while conducting "[p]rotective sweeps" of the visiting room.[45] This contraband, "including illegal drugs, metal objects, weapons, or written notes, pose[s] risks to the safety and security of the Robinson CI facility."[46] All inmates from the visiting room must be searched "because they all visit in the same physical space where members of the public are or have been present."[47] Inmates conducting contact and video visits could "obtain

---

request for interrogatories. *See* Pl. Ex. 8, ECF No. 42-1. Paragraph nineteen of this response states that Officer Coggeshall has not personally "interdicted" drugs from an inmate during a video visit, not that no officer has ever recovered any contraband from any inmate. *See id.* ¶ 19. Plaintiff also maintains in his declaration that "officer(s) have not interdicted drugs from inmate(s) that participated in video visits." ECF No. 43 ¶ 10. But "to create a genuine issue of material fact, Fed. R. Civ. P. 56 requires that supporting affidavits 'be made on personal knowledge [and] shall set forth such facts as would be admissible in evidence....'" *Clarke v. Sweeney*, 312 F. Supp. 2d 277, 283 (D. Conn. 2004) (quoting Fed. R. Civ. P. 56). Plaintiff does not explain how he knows what other officers have and have not discovered during searches. Even if credited, this assertion still does not refute that officers have recovered contraband from inmates leaving the visiting room. Thus, this fact is admitted.

[45] ECF No. 40-2 ¶ 20. Plaintiff denies this allegation, citing Plaintiff's Exhibit 8, paragraph nineteen and Plaintiff's Exhibit 3, paragraph twenty. *See* ECF No. 45 ¶ 20. That Officer Coggeshall has not personally "interdicted" drugs from an inmate during a video visit, *see* Pl. Ex. 8, ECF No. 42-1 ¶ 19, does not refute that other prison officials have recovered contraband at other times. *See supra note* 44. And that prisoners cannot receive contraband from their *visitors* during video visits, *see* Pl. Ex. 3, ECF No. 42-1 at 25–26, does not refute that prison officials have discovered contraband in the visiting room at some point. Thus, this fact is admitted.

[46] ECF No. 40-2 ¶ 21.

[47] *Id.* ¶ 17. Plaintiff denies this allegation, citing Plaintiff's Exhibit 19.. *See* ECF No. 45 ¶ 17. But Plaintiff's Exhibit 19 is merely a copy of DOC Administrative Directive 6.7, Pl. Ex. 19, ECF No. 42-1 at 139–44, which is not "the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial." *See* D. Conn. L. Civ. R. 56(a)3. Administrative Directive 6.7 (concerning "Searches Conducted in Correctional Facilities") would not be admissible at trial because it is not relevant under Rule 401 of the Federal Rule of Evidence to show why all inmates must be searched. *See* Fed. R. Evid. 401 (stating that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."). Thus, this fact is

AA 101

contraband from outside visitors or from other inmates" if prison staff only searched inmates who had contact visits.[48]

Plaintiff conducted a video visit on June 3, 2024.[49] Plaintiff's video visit was among nine other video visits and thirteen contact visits that day.[50] Plaintiff alleged in his Complaint that, after this video visit, Officer Starzyk led Plaintiff to a "semi-partitioned stall[.]"[51] Officer Starzyk donned latex gloves while Plaintiff raised his arms to submit to a "standard pat search."[52] Officer Starzyk instructed Plaintiff to remove Plaintiff's clothing for a strip search.[53] After Plaintiff argued with Officer Starzyk about the necessity of the strip search,[54] Officer Starzyk once again instructed Plaintiff to remove Plaintiff's clothes "for a visual inspection of

---

admitted.

[48] ECF No. 40-2 ¶ 18. Plaintiff denies this allegation, citing paragraphs fifteen and sixteen of his Complaint. *See* ECF No. 45 ¶ 18. These paragraphs of the Complaint state in relevant part that it is "highly unlikely, and/or improbable" that video visitors would smuggle contraband into the prison, and that "the most likely source of contraband for prisoners is through contact visits and not through non-contact and/or virtual visits." ECF No. 1 ¶¶ 15–16. Similarly, Plaintiff states in his declaration that, based "upon [his] personal knowledge, contact visits are the source of how contraband is introduced into Robinson CI during visits." ECF No. 43 ¶ 9. But even if inmates conducting contact visits are the "most likely" to smuggle contraband into the housing unit, this does not refute that inmates conducting either contact or video visits *could* smuggle contraband into the housing unit. *See infra* discussion at 18. Thus, this fact is admitted.

[49] ECF No. 40-2 ¶ 28.

[50] *Id.* ¶ 26. Plaintiff admits this part and denies this in part. *See* ECF No. 45 ¶ 26. This objection does not point to record evidence, so the fact is admitted. *See supra* note 27.

[51] ECF No. 1 ¶ 24.

[52] *Id.*

[53] *Id.* ¶ 25.

[54] *See id.* ¶¶ 27–28.

8

AA 102

his body cavities."[55] Plaintiff "complied with the strip search, got dressed[,] and left without further incident."[56]

Plaintiff conducted another video visit on June 10, 2024.[57] Plaintiff's video visit was among twelve other video visits, five contact visits, and three non-contact visits that day.[58] Plaintiff alleged in his Complaint that, after this video visit, Officer Coggeshall led Plaintiff to the same type of partitioned stall and instructed Plaintiff to remove his clothes.[59] After arguing with Officer Coggeshall about the necessity of the strip search, Plaintiff removed his clothes.[60] Officer Coggeshall instructed Plaintiff "to lift his arms, lift his testicles, turn around, bend, squat, [and] cough while spreading his buttocks."[61] Officer Coggeshall instructed Plaintiff "to turn back around facing him, and to open his mouth wide using his hands that he just lifted his testicles and spread his buttocks with."[62] Plaintiff complied with this instruction after "a few moments of back-and-forth" with Officer Coggeshall.[63] While Officer Coggeshall was searching Plaintiff, other inmates who had just exited their partitions after being searched and

---

[55] *Id.* ¶ 29.

[56] *Id.*

[57] ECF No. 40-2 ¶ 30.

[58] *Id.* ¶ 27. Plaintiff denies this allegation, citing Plaintiff's Exhibit 15. *See* ECF No. 45 ¶ 27. But the inmate request form submitted as Exhibit 15 is not responsive to this allegation. *See* Pl. Ex. 15, ECF No. 42-1 at 126. Thus, this fact is deemed admitted.

[59] *See* ECF No. 1 ¶ 35.

[60] *Id.* ¶¶ 35–36.

[61] *Id.* ¶ 36.

[62] *Id.*

[63] *Id.*

9

AA-103

nearby correctional officers "were able to see in clear view [P]laintiff's … nude body."[64] After Plaintiff "expressed his dissatisfaction" with Officer Coggeshall strip searching Plaintiff in front of others, Plaintiff "eventually got dressed and exited the offender holding area without further incident."[65]

## II.  LEGAL STANDARD

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113–14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense…." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the Court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

---

[64] *Id.* ¶ 37.

[65] *Id.*

AA-104

*Linardos v. Juthani*, No. 3:24-CV-962 (VAB), 2025 WL 887693, at *13 n.4 (D. Conn. Mar. 21, 2025) (declining to address qualified immunity when claims failed on the merits); *Arroyo v. Hartford Bd. of Educ.*, No. 3:17-CV-2067 (MPS), 2019 WL 6350629, at *15 (D. Conn. Nov. 27, 2019) (declining to address exhaustion when claims failed on the merits).

### A. Fourth Amendment Claims

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. While "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell," *Hudson v. Palmer,* 468 U.S. 517, 526 (1984), the Second Circuit has held that "maintenance of prison security is not burdened unduly by the recognition that inmates do retain a limited right to bodily privacy." *Covino v. Patrissi,* 967 F.2d 73, 78 (2d Cir. 1992). Accordingly, the Fourth Amendment forbids unreasonable strip searches in the prison context. *See Bell v. Wolfish*, 441 U.S. 520, 558 (1979); *Harris v. Miller,* 818 F.3d 49, 58 n.2 (2d Cir. 2016).

When considering whether a strip search violates an inmates right to privacy under the Fourth Amendment, a court "undertake[s] a two-part inquiry: (1) First, the court must determine whether the inmate has exhibited an actual, subjective expectation of bodily privacy; and (2) second, the court must determine whether the prison officials had sufficient justification to intrude on the inmate's [F]ourth [A]mendment rights." *Harris*, 818 F.3d at 57 (cleaned up). Deciding the second component of this two-part inquiry requires a court to "apply

12

AA-106

one of two separate but overlapping frameworks," depending on whether a plaintiff challenges a prison policy or a specific search. *Id.*

For claims challenging "a prison regulation or policy, courts typically analyze the claim under *Turner v. Safley*, 482 U.S. 78 (1987)." *Id.* Under *Turner*, a "regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. The *Turner* court identified four factors "relevant in determining the reasonableness of the regulation at issue." *Id.*

First, "there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." *Id.* (quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984)). To satisfy this factor, "the governmental objective must be a legitimate and neutral one." *Id.* at 90. And there must be a "logical connection between the regulation and the asserted goal [that] is [not] so remote as to render the policy arbitrary or irrational." *Id.* at 89–90.

Second, courts must consider "whether there are alternative means of exercising the right that remain open to prison inmates." *Id.* at 90. If "other avenues remain available for the exercise of the asserted right, courts should be particularly conscious of the measure of judicial deference owed to corrections officials in gauging the validity of the regulation." *Id.* (cleaned up).

Third, courts must consider "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.* If an "accommodation of an asserted right will have a significant 'ripple effect'

13

AA-107

on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Id.*

Lastly, courts must consider "the absence of ready alternatives[.]" *Id.* "[I]f an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Id.* at 91.

For claims "challeng[ing] an isolated search, courts typically apply the standard set forth in *Bell*[.]"[67] *Harris*, 818 F.3d at 58. *Bell*, like *Turner*, requires a court to consider four factors: "[1] the scope of the particular intrusion, [2] the manner in which it is conducted, [3] the justification for initiating it, and [4] the place in which it is conducted." *Bell*, 441 U.S. at 559.

Because Plaintiff challenges both Robinson CI's strip search policy and the strip searches conducted under that policy,[68] the Court considers whether, after reviewing the record as a whole, any reasonable jury could conclude that the policy and strip searches at issue here were unreasonable under *Turner* and *Bell*, respectively. *See Nick's Garage*, 875 F.3d at 113–14.

     **i.**      **Strip Search Policy**

---

[67] The *Harris* court noted that "*Bell* arose in the context of a pretrial detainee strip-search policy, but its framework is equally applicable to convicted inmates challenging isolated searches." *Harris*, 818 F.3d at 58 n.2.

[68] *See* ECF No. 10 at 7.

14

AA 109

To determine whether Robinson CI's strip search policy violated Plaintiff's Fourth Amendment rights, the Court must first examine whether Plaintiff has "exhibited an actual, subjective expectation of bodily privacy[.]" *Harris*, 818 F.3d at 57. Plaintiff alleges in his Complaint that prison officials required Plaintiff to "lift his arms, lift his testicles, turn around, bend, squat, [and] cough while spreading his buttocks" during the relevant strip searches.[69] Defendants do not dispute these facts. And because "there is no dispute that a visual body cavity search is a 'serious invasion of privacy[,]'" *Velez-Shade v. Population Mgmt.*, No. 3:18-CV-1784 (JCH), 2019 WL 4674767, at *9 (D. Conn. Sept. 25, 2019) (quoting *Harris*, 818 F.3d at 58), the undisputed evidence adequately satisfies the first component of *Harris*'s two-part inquiry.

Next, the Court must apply the *Turner* factors to determine whether invading Plaintiff's privacy was justified, in satisfaction of the second component of *Harris*'s two-part inquiry. *See Harris*, 818 F.3d at 57. The first *Turner* factor—whether there is "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it," *Turner*, 482 U.S. at 89 (cleaned up)—is the most important. *See Jones v. Slade*, 23 F.4th 1124, 1135 (9th Cir. 2022) ("The first *Turner* factor is the most important."); *Lewis v. Clark*, 663 F. App'x 697, 701 (10th Cir. 2016) (explaining that "[t]he first *Turner* factor—whether a rational connection exists between the prison regulation and a legitimate

---

[69] ECF No. 1 ¶ 36.

15

AA-109

governmental interest—is the most important, as it is not simply a consideration to be weighed but rather an essential requirement." (cleaned up).

"Correctional officials have a legitimate interest, indeed a responsibility, to ensure that jails are not made less secure by reason of what new detainees may carry in on their bodies." *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 322 (2012). Courts in this Circuit have thus recognized that there is "a valid, rational connection between [a correctional institution's] post-classification strip search policy and the legitimate governmental interest of preventing contraband distribution within the [correctional institution]." *Sassi v. Dutchess Cnty.*, No. 9:16-CV-1450, 2019 WL 401951, at *14 (N.D.N.Y. Jan. 31, 2019). This is so because a newly arriving inmate can conceal contraband on his body and distribute it to other inmates once inside the facility. *See id.*

The same concerns apply when an inmate conducts a contact visit. *See Block*, 468 U.S. at 586 ("Contact visits ... open the institution to the introduction of drugs, weapons, and other contraband. Visitors can easily conceal guns, knives, drugs, or other contraband in countless ways and pass them to an inmate unnoticed by even the most vigilant observers."). Thus, the Supreme Court has upheld a prison policy requiring visual body cavity searches of inmates after every contact visit the inmate has with someone from outside the prison. *See Bell*, 441 U.S. at 559–60.

When considering the identical Robinson CI strip search policy at issue, other courts have concluded that "[i]t does not appear that strip searches after video visits serve any legitimate governmental interest." *Manson v. Caron*, No. 3:24-CV-00876 (MPS), 2024 WL

16

AA-110

4188504, at *4 (D. Conn. Sept. 13, 2024). The *Manson* court concluded this because, unlike the contact visits in *Bell*, the visits at Robinson CI were "by video, not in person." *Id.* As such, "[t]he visitor [wa]s not in the facility, let alone in the same room as the inmate," so "there is no way for a video visitor to pass contraband to the inmate and thus no way for the inmate to pass contraband to the general population after the video visit." *Id.*

The *Manson* court, however, reached this conclusion on initial review, when only the plaintiff's complaint was before it. *See id.* at *1; *see also Delgado v. Concepcion*, No. 3:20-CV-787 (SRU), 2020 WL 7388959, at *1–2, n.3 (D. Conn. Dec. 16, 2020) (considering, on initial review of a prisoner civil complaint, the complaint and "documents attached to and incorporated by reference" into it). But here, the parties have completed full discovery, which has revealed facts that compel a different conclusion on summary judgment. *See Finch v. City of Stamford*, No. 3:10-CV-748 (MRK), 2011 WL 5245422, at *1 (D. Conn. Nov. 2, 2011) ("When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record[.]" (citing Fed. R. Civ. P. 56(c)).

Here, as in *Manson*, "there is no way for a video visitor to pass contraband to the inmate" through a video screen. *Manson*, 2024 WL 4188504, at *4. But, in light of the evidence provided by the parties, this is beside the point. Whether a video visitor could pass contraband to an inmate was relevant to the *Manson* court's decision because there was no indication that inmates conducting video visits were in the same room as inmates conducting contact visits. *See id.* After completion of discovery, though, undisputed facts now show that inmates

17

A A - 111

conducting both video and contact visits at Robinson CI share the same visiting room. As such, there *are* ways for outside visitors to pass contraband to inmates conducting video visits other than through a computer.

The parties do not dispute that all social visits are conducted in groups within Robinson CI's visiting room.[70] The visiting room is a "fairly large space with long, cafeteria-like tables[.]"[71] Inmates conducting contact visits at these tables are separated from their visitors by "a low partition running along the middle" of the table.[72] And inmates are allowed to "brief[ly] embrace" their visitor at the beginning and end of the visit.[73] Thus, the proximity of the inmate to his visitor and their two "brief embrace[s]" provide an opportunity for the visitor to transmit contraband to the inmate conducting the contact visit.

The inmates conducting contact visits are seated apart but are not "physically separate from one another."[74] This provides an opportunity for inmates conducting contact visits to pass contraband received from a visitor to another one inmate conducting a contact visit with a different visitor. Thus, any inmate conducting a contact visit may obtain contraband from a visitor, whether that visitor is the inmate's visitor or another inmate's visitor.

---

[70] ECF No. 40-2 ¶¶ 6, 14.

[71] *Id.* ¶ 9.

[72] *Id.*

[73] ECF No. 40-4 ¶ 18.

[74] ECF No. 40-2 ¶ 10.

18

AA-112

The inmates conducting video visits are seated in the same visiting room as inmates conducting contact visits with their visitors.[75] Inmates conducting video visits are seated at laptops on wall-mounted desks while contact visits occur in the visiting room.[76] The parties do not precisely describe the distance between the wall-mounted desks and the "cafeteria-like tables" where other inmates conduct video visits.[77] But Plaintiff states in his declaration that "[d]uring video visits, inmates sit in a far corner away and not in the presence of vicinity of those who are having contact visits, so it is very unlikely that contraband would and[/]or could be exchanged."[78] Defendants do not contest this.

The precise distance between the inmates conducting contact visits and the inmates conducting video visits is largely immaterial because both types of visits are conducted in the same room, where "[c]ontraband ... can be quickly passed or kicked across an open floor and hidden by inmates[.]"[79] Thus, even if inmates are across the room from one another, inmates conducting video visits may obtain contraband from any inmate conducting a contact visit, regardless of the distance between them. As such, inmates conducting video visits are equally likely to bring contraband back into the housing unit as inmates who conduct contact visits

---

[75] See id. ¶ 13; ECF No. 40-4 ¶ 20.

[76] ECF No. 40-4 ¶ 20.

[77] ECF No. 40-2 ¶ 9.

[78] ECF No. 43 ¶ 11; see also ECF No. 1 ¶ 17 (alleging that "[v]isitors from outside of the institution do not come in proximity of the area where virtual visits occur nor are they allowed in said area, nor does said visitors come within the province of prisoners participating in virtual video visits[.]").

[79] ECF No. 40-4 ¶ 28.

19

AA-113

Contraband "pose[s] risks to the safety and security of the Robinson CI facility."[80] Thus, there is a "valid, rational connection" between a policy designed to prevent that contraband from reaching the housing unit, where it poses a security risk to staff and other inmates. *Turner*, 482 U.S. at 89 (cleaned up); *see also Sadler v. Lantz*, No. 3:07-CV-1316 (CFD), 2011 WL 4561189, at *5 (D. Conn. Sept. 30, 2011) (DOC Administrative Directives "ban[ning]" property sent to inmates from outside of prison without consideration of content" had "rational connection to the identified safety and security issues associated with bartering and the inmate receipt of contraband in the form of drugs and potential weapons.").

Further, because inmates conducting both contact and video visits are equally likely to bring that contraband in the housing unit, applying that policy to all inmates conducting visits in the visiting room is neither "arbitrary," nor "irrational." *Turner*, 482 U.S. at 89–90; *see also Reynolds v. Quiros*, 25 F.4th 72, 90 (2d Cir. 2022) ( "[A]ll that is required is that there be a 'rational' connection between the policy and the jail's legitimate objectives." (quoting *Mauro v. Arpaio*, 188 F.3d 1054, 1060 (9th Cir. 1999)). Thus, the first *Turner* factor weighs in favor of Defendants.

The second *Turner* factor requires courts to consider "whether there are alternative means of exercising the right that remain open to prison inmates." *Id.* at 90 (cleaned up). "[T]he 'right in question' is the Fourth Amendment right to be free from unreasonable searches."

---

[80] ECF No. 40-2 ¶ 21.

20

*Manson*, 2024 WL 4188504, at \*4. Thus, the Court must consider whether there is some alternative to strip searching inmates after video visits.

One alternative would be to physically separate inmates conducting video visits from inmates conducting contact visits. This could be achieved by either conducting video visits in a separate room or by conducting video visits when contact visits are not occurring. But because of "the number of custody staff at the facility compared to the number of inmates who regularly wish to schedule social visits" and "the layout of the Robinson CI facility, the visiting room is the only area where social visits can be conducted safely and with appropriate protocols."[81] For similar reasons, separating inmates conducting video visits from contact visits would "put undue strain on staff resources and prevent other inmates from accessing necessary court proceedings and similar meetings and would also increase wait times for other inmates seeking social visits, thereby limiting inmate access to those visits."[82]

Another alternative would be to search only the inmates conducting contact visits and to permit inmates conducting video visits to return to the housing unit without officers searching them. But, for reasons described above, inmates conducting both types of visits may equally possess contraband when returning to the housing unit. So, "[i]f only inmates conducting contact visits were strip-searched, this could allow video visit inmates to obtain contraband from outside visitors or from other inmates,"[83] especially if the inmates conducting

---

[81] *See* ECF No. 40-4 ¶ 12; ECF No. 40-2 ¶ 8.

[82] *See* ECF No. 40-4 ¶ 21.

[83] ECF No. 40-2 ¶ 18.

AA-115

contact visits know that inmates conducting video visits will not be searched. Thus, there are no ready alternatives to strip searching all inmates leaving the visiting room. *See Covino*, 967 F.2d at 79 (concluding that "[t]here do not appear to be any alternative means that would allow [an inmate] to exercise his limited bodily privacy rights and at the same time allow [the prison] to achieve fully the effectiveness of [random visual body-cavity] searches."). Accordingly, the second *Turner* factor weighs in favor of Defendants, too.

The third *Turner* factor requires a court to consider "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. Permitting any inmate to leave the visiting room without being searched would enable inmates to smuggle contraband into the housing unit.[84] Contraband, such as metal objects or weapons, present a danger to both inmates and staff. Similarly, contraband such as illegal drugs increase "the potential for overdoses or other negative reactions" among inmates.[85] Thus, declining to search inmates returning from a video visit would have a "significant 'ripple effect' on fellow inmates or on prison staff[.]" *Id.*; *see also Reynolds*, 25 F.4th at 93 (concluding that permitting inmates to possess and display "sexually explicit pictorial materials" had "ripple effect" on "the work environment of DOC staff and ... the safety and security of staff and inmates alike, as well as the rehabilitation of sex offender inmates."). Accordingly, the third *Turner* factor also weighs in favor of Defendants.

---

[84] *See* ECF No. 40-4 ¶ 25.

[85] *Id.* ¶¶ 28–29.

22

AA-116

Finally, courts must consider "the absence of ready alternatives." *Turner*, 482 U.S. at 90. As discussed above, there are no ready alternatives to searching inmates after video visits—at least none that would "fully accommodate[ ] the prisoner's rights at *de minimis* cost to valid penological interests[.]" *Id.* at 91. Thus, this factor weighs in favor of Defendants, as well. *See Johnson v. Goord*, 445 F.3d 532, 535 (2d Cir. 2006) (concluding this factor weighed in defendants' favor when plaintiff "ha[d] not suggested any alternatives that would accommodate his rights at minimal cost to the legitimate penological interests of security and order."). Because all four *Turner* factors weigh in favor of Defendants, "prison officials had sufficient justification to intrude on the inmate's [F]ourth [A]mendment rights." *Harris*, 818 F.3d at 57 (cleaned up).

Plaintiff relies on *Manson* and cases cited within it to argue otherwise.[86] The *Manson* court approvingly cited the Seventh Circuit's decision in *Bono*, *see Manson*, 2024 WL

---

[86] *See generally* ECF No. 42 at 4–8 (using language and analysis from *Manson* without attribution and citing *Bono v. Saxbe*, 620 F.2d 609, 617 (7th Cir. 1980)). Plaintiff also argues throughout his pleadings that strip searches after video visits are unconstitutional because the Administrative Directives in place did not provide for them. *See, e.g., id.* at 8–9. But as the Court noted in its initial review order, *see* ECF No. 10 at 11, state prison directives do not generally confer any constitutionally protected rights on inmates. *Riddick v. Chevalier*, No. 11-CV-1555 (SRU), 2013 WL 4823153, at *4 (D. Conn. Sept. 9, 2013); *see Sandin v. Conner*, 515 U.S. 472, 481–82 (1995) (noting prison directives, which are designed primarily to guide correctional staff, do not confer rights on inmates). Thus, a search conducted in violation of Administrative Directives "does not establish that the official has violated the Constitution or is liable to a prisoner under 42 U.S.C. § 1983." *Fine v. UConn Med.*, No. 3:18-CV-530 (JAM), 2019 WL 236726, at *9 (D. Conn. Jan. 16, 2019); *see also Mejia v. Kurtzenacker*, No. 3:21-CV-1222 (MPS), 2022 WL 19331, at *10 (D. Conn. Jan. 3, 2022) (dismissing claim alleging that prison officials violated Administrative Directives).

23

AA-117

4188504, at *4, in which the *Bono* court held that "the rationale announced in *Bell*"[87] did not

justify "strip searches of inmates before and after non-contact visits with family and friends"

absent "a showing that there is some risk that contraband will be smuggled into [the prison]

during non-contact, supervised visits, or that some other risk within the prison will be

presented." *Bono*, 620 F.2d at 617. But the *Bono* court reasoned that the searches there were

not justified under *Bell* because "[t]he inmates [we]re separated from the visitors by plexiglass,

and guards observe these visits." *See id.* The *Manson* court found *Bono* persuasive because,

like the inmates in *Bono*, the inmate in *Manson* had no opportunity to obtain contraband from

his visitor and take it back into the housing unit. *See Manson*, 2024 WL 4188504, at *4.

While Plaintiff was also physically separated from his visitors like the plaintiffs in *Bono* and

*Manson*, these decisions are nonetheless distinguishable because Plaintiff was conducting his

video visits in the same room as inmates conducting contact visits, where he could receive

contraband from other inmates or visitors and bring it back into the housing unit irrespective

of his ability to obtain contraband from his video visitors. The *Manson* court did not know this

uncontested fact,[88] but discovery has revealed it here. Because there is no genuine dispute as

to this material fact, summary judgment must enter on Plaintiff's Fourth Amendment claim

related to the strip search policy.

### ii.    Individual Strip Searches

---

[87] *Turner* was decided seven years after *Bono*, so the *Bono* court analyzed the search under *Bell*. *See Bono*, 620 F.2d at 617.

[88] Both Manson and Plaintiff failed to mention this in their complaints.



The Court next considers whether there is a genuine issue of material fact that would preclude summary judgment on Plaintiff's Fourth Amendment claims challenging the two strip searches in June of 2024. In determining this, the Court considers the four factors in *Bell*. *See Harris*, 818 F.3d at 58.

As to the first *Bell* factor—the "scope of the particular intrusion," *Bell*, 441 U.S. at 559—this "varies with the type of search." *Harris*, 818 F.3d at 58. At least three types of searches implicate an inmate's right to bodily privacy:

> A 'strip search,' though an umbrella term[,] generally refers to an inspection of a naked individual, without any scrutiny of the subject's body cavities. A 'visual body cavity search' extends to visual inspection of the anal and genital areas. A 'manual body cavity search' includes some degree of touching or probing of body cavities.

*Id.* (quoting *Cookish v. Powell*, 945, F.2d 441, 444 n.5 (1st Cir. 1991)). "The scope of the intrusion also varies depending on who searches whom, i.e., whether the search involved an officer of the same gender as the inmate." *Id.*

Here, as in *Harris*, Officers Starzyks and Coggeshall performed a "visual body cavity search" because they "visual[ly] inspect[ed] [ ] the anal and genital areas" without "some degree of touching or probing of body cavities."[89] *Id.* And Plaintiff does not identify either

---

[89] *See* ECF No. 1 ¶¶ 29, 36. While true that the second search involved examining the contents of Plaintiff's mouth, *see id.* ¶ 36, Plaintiff "open[ed] his mouth wide using *his* hands." *Id.* (emphasis added). So to the extent a mouth can be considered a "body cavit[y]," Plaintiff does not allege "some degree of touching or probing of body cavities" by an officer. *Harris*, 818 F.3d at 58 (cleaned up).

25

AA-119

officer as a woman.[90] Thus, the first *Bell* factor weighs in favor of Defendants. *See Hill v. Tyburski*, No. 3:19-CV-01674 (JAM), 2022 WL 4448889, at *4 (D. Conn. Sept. 23, 2022) (granting summary judgment on Fourth Amendment strip search claim where "officers pressed on [inmate's] upper back to lean him forward at the waist while [defendant] visually inspected his rectal cavity for approximately one second" and defendants did not "touch[ ] [inmate's] buttocks or otherwise grope[ ] him in any fashion."); *Carzoglio v. Abrams*, No. 18-CV-04198, 2022 WL 2193376, at *5 (S.D.N.Y. June 17, 2022) (holding that the first *Bell* factor weighed of favor of defendants because officers were of same gender as inmate).

As to the second *Bell* factor—"the manner in which [the search] [wa]s conducted," *Bell*, 441 U.S. at 559—"[a] strip search conducted in a professional manner is more reasonable than one that is not." *Harris*, 818 F.3d at 59–60. The first visual body cavity search can be fairly described as routine. Officer Starzyk used latex gloves and "visual[ly] inspect[ed]" Plaintiff's "body cavities."[91] Courts have "approvingly highlighted [an] officer's use of gloves as a clear sign that the search was conducted in an appropriate manner." *Cotto v. City of Middletown*, 158 F. Supp. 3d 67, 81 (D. Conn. 2016) (collecting cases). And Plaintiff does not allege that Officer Starzyk "inappropriately touched" him, *Carzoglio v. Vollmer*, No. 18 CIV. 7780, 2024 WL 4349293, at *9 (S.D.N.Y. Sept. 30, 2024), that the search involved "violence or coercion," *Carzoglio v. Abrams*, No. 18-CV-04198, 2022 WL 2193376, at *5 (S.D.N.Y. June 17, 2022), or that Officer Starzyk made inappropriate comments during the search. *See Jean-Laurent v.*

---

[90] *See* ECF No. 42 at 11 (acknowledging "there was not a cross-gender search[.]").
[91] ECF No. 1 ¶¶ 24, 29.

26

AA-120

*Wilkerson*, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006) (collecting cases), *aff'd*, 461 F. App'x 18 (2d Cir. 2012) (concluding that the plaintiff sufficiently alleged that the strip search was unreasonable because "the verbal and physical abuse that allegedly accompanied the strip search support[ed] a finding that the search was designed to harass and intimidate.").

The second visual body cavity search proceeded in much the same way as the first, with two exceptions. First, Officer Coggeshall instructed Plaintiff to "to open his mouth wide using his hands that he just lifted his testicles and spread his buttocks with."[92] While it would have been a better practice to require Plaintiff to open his mouth before lifting his testicles or spreading his buttocks, the Complaint does not suggest Officer Coggeshall's command was "designed to intimidate, harass, or punish" Plaintiff. *Id.*

Second, Plaintiff alleges that, during the second search, nearby officers and other inmates could view his nude body during the search.[93] But Plaintiff explains that this was because the partition was ineffective,[94] not because Officer Coggeshall deliberately made Plaintiff disrobe in front of others for the purpose of humiliating him. At any rate, Plaintiff's brief exposure to nearby inmates and officers does not render Officer Coggeshall's actions unprofessional. *See Correction Officers Benev. Ass'n of Rockland Cnty. v. Kralik*, No. 04 CIV. 2199, 2011 WL 1236135, at *11 (S.D.N.Y. Mar. 30, 2011) ("More recent cases in this Circuit and elsewhere addressing inmates' right to privacy suggest that occasional, indirect, or brief

---

[92] *Id.* ¶ 36.

[93] *See id.* ¶ 37.

[94] *See id.*

27

AA-121

viewing of a naked prisoner by a guard of the opposite sex may be permissible, but that 'regular and close viewing' is prohibited."). Because no facts in the record suggest that Officers Starzyk and Coggeshall conducted the visual body cavity searches unprofessionally, the second factor also weighs in favor of Defendants.

As to the third *Bell* factor—"the justification for initiating [the search]," *Bell*, 441 U.S. at 559—the Court has largely covered this above in discussing the constitutionality of the search policy under which the strip searches in question were conducted. "For courts to be able to assess the reasonableness of an intrusion on an inmate's constitutional rights, Supreme Court precedent suggests that officers must provide a justification that is supported by record evidence." *Harris*, 818 F.3d at 60 (citations omitted). "Circuit courts have similarly required a justification for inmate searches that is supported by record evidence." *Id.* (collecting cases). Here, Defendants have provided such record evidence.

Warden Caron states in her declaration that "[a]ll inmates leaving the visiting room are required to be strip searched because they all visit in the same physical space where members of the public are or have been present and cannot be reasonably separated."[95] That "physical space" is a potential site for exchanging contraband between the visiting public and inmates.[96] Indeed, "contraband has been detected in strip searches of inmates returning from the visiting

---

[95] ECF No. 40-4 ¶ 24.

[96] *See id.* ¶ 27 (indicating that "[s]weeps of the visiting room performed by correctional officers at Robinson CI have [ ] detected various forms of contraband that were apparently hidden for inmates to pick up surreptitiously.").

28

AA-122

room at Robinson CI, including various illegal drugs as well as a metal ring."[97] Once that contraband enters the housing unit, it "pose[s] a safety risk for inmates and staff as well as a security risk for the Robinson CI facility."[98] The record evidence thus shows a safety and security justification for strip searching any inmate returning from the visiting room. *See Bell v. Manson*, 590 F.2d 1224, 1227 (2d Cir. 1978) (Lumbard, *J.*, dissenting) (noting it is "obvious" that the safety of inmates and prison staff "requires some search of prisoners returning to prison after they have been in contact with others in connection with court appearances or other outside visits."). Accordingly, the third *Bell* factor weighs in favor of defendants.

As to the final *Bell* factor—"the place in which [the search] is conducted," *Bell*, 441 U.S. at 559—the Second Circuit has concluded that "a strip search or a body cavity search conducted in the presence of unnecessary spectators is less reasonable than one conducted in the presence of only those individuals needed to conduct the search." *Harris*, 818 F.3d at 62. Here, the strip searches took place in a "semi-partitioned stall" within an "offender holding area."[99] This offender holding area contains "7 or 8 small partitions" in which other inmates returning from the visiting room are searched.[100] Plaintiff does not describe any onlookers observing the first search,[101] but he describes correctional officers and other inmates observing

---

[97] *Id.* ¶ 26.

[98] *Id.* ¶ 28.

[99] *See* ECF No. 1 ¶¶ 24, 35.

[100] *Id.* ¶ 20.

[101] *See id.* ¶¶ 24–29.

29

AA-123

the second search.[102] Plaintiff explains in his Complaint that others were able to view the second search because "the partitions['] sides do not erect enough to provide side blockage[,] and the[re] is nothing to provide frontal blockage of these partitions[.]"[103]

Some courts have concluded that strip searching an inmate in "a large room with no dividers or partitions ... in full view of other inmates, officers, and cameras .... *could* be unreasonable." *Green v. Martin*, 224 F. Supp. 3d 154, 165 (D. Conn. 2016) (emphasis added). But other courts have concluded that "strip searches of prisoners in the presence of other inmates and staff [are] not constitutionally defective, especially in light of legitimate security concerns." *Miller v. Bailey*, No. 05-CV-5493, 2008 WL 1787692, at *9 (E.D.N.Y. Apr. 17, 2008) (collecting cases); *see also Smith v. City of New York*, No. 14 CIV. 5934, 2015 WL 3929621, at *2 (S.D.N.Y. June 17, 2015) (collecting cases) (concluding that "neither the presence of cameras nor the presence of other inmates and employees of a correctional facility makes an otherwise constitutional strip search unconstitutional.").

Unlike in *Green*, the room in which Officers Starzyks and Coggeshall strip searched Plaintiff contained partitions.[104] But, according to Plaintiff, these partitions were ineffective in blocking the view of other inmates and staff in the vicinity.[105] The weight of authority suggests that a momentary exposure of Plaintiff's nude body to staff and other inmates caused by the

---

[102] *See id.* ¶ 37.

[103] *Id.*

[104] *See id.* ¶¶ 20, 24.

[105] *See id.* ¶ 37.

30

AA-124

ineffective partitions is insufficient to render the strip searches unconstitutional. *See Miller*, 2008 WL 1787692, at \*9 (collecting cases); *Smith*, 2015 WL 3929621, at \*2 (collecting cases). As such, in a case in which an inmate "allege[d] that the partitions used during the [visual cavity] searches were insufficient and his bare feet were exposed to the floor of the housing unit," the court concluded that the inmate's claims challenging the strip search failed as a matter of law. *Esquilin v. Schriro*, No. 13-CV-3724, 2014 WL 2795408, at \*4 (S.D.N.Y. June 19, 2014) (footnote omitted). Accordingly, the final *Bell* factor also weighs in favor of Defendants.

Because all four *Bell* factors weigh in favor of Defendants, the Court cannot conclude that there is a genuine issue of material fact that would preclude summary judgment on Plaintiff's Fourth Amendment claims challenging the two strip searches in June of 2024. Accordingly, summary judgment must also enter on this claim.

## IV.    CONCLUSION

Because there is no genuine issue of material fact that would preclude summary judgment on Plaintiff's Fourth Amendment claims, the Court **GRANTS** the Defendants' motion for summary judgment, ECF No. 40. The Clerk is directed to enter judgment and close this case.

**SO ORDERED.**

Hartford, Connecticut
March 4, 2026

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge

31

AA-125

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

COURTNEY GREEN,          :        No. 3:24-cv-01317 (VDO)
   *Plaintiff,*            :

                              :
   *v.*                  :

                              :
COMMISSIONER QUIROS, et al.   :        May 30, 2025
   *Defendants.*       :

## DEFENDANT COGGESHALL RESPONSES TO PLAINTIFF'S REQUEST FOR INTERROGATORIES DATED APRIL 30, 2025

The defendant Coggeshall hereby responds to Plaintiff's Request for

interrogatories dated April 30, 2025, as follows:

1. How long have you been a correction officer for at Robinson CI.

   **Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: I have been employed at Robinson CI since January 26, 2018

2. Are you familiar with administrative directive 2.17 section 5, A paragraph 16.

   **Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the term "familiar" is vague and ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: Yes

3. Identify all individual(s) who instructed you to strip search inmates at the conclusion of video visits.

   **Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

AA-126

**Response:** Notwithstanding and without waiving the foregoing objection: The strip search of inmates at the conclusion of video visits is facility protocol at Carl Robinson CI, approved by the administration of the facility.

4. In video preservation under Export C178 visit desk at approximately 17:09, identify the individual depicted in the video.

   **Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the phrase "the individual depicted in the video" is vague and ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: The video speaks for itself.

5. In your response to admission #9, when you strip searched inmates at the conclusion of video visits on 6-10 -2024, do you believe that such strip searches were reasonably related to a legitimate penological goal? If the answer is yes, please state how it was reasonably related to a legitimate penological goal.

   **Part 1: Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: I do believe that such strip searches were related to a legitimate correctional goal.

   **Part 2: Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: The inmates who receive video visits are in close proximity to the other inmates receiving contact visits and it certainly is possible for an inmate in the video visit area to get contraband.

6. State how may partitions there are in the offender holding area?

   **Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: I cannot remember exactly but there are several.

7. Is it true that on Bates stamp :0064 an example of your duties reads;

2



performs pat or strip searches of inmates as needed?

**Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

8. Do you possess any knowledge of the law?

**Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the phrase "possess any knowledge of the law" is vague, ambiguous, and is not reasonably calculated to lead to discovery of admissible evidence.

9. Have you ever heard of a case called Bell v Wolfish, 441 U.S. 520 (1979)?

**Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the phrase "heard of" is vague, ambiguous, and is not reasonably calculated to lead to discovery of admissible evidence.

10. State your reasons(s) why you strip searched inmates at the conclusion of video visits on 6-10-2024, based on your response in admission #9.

**Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

11. Based upon your knowledge and experience, please explain how an inmate participating in a video visit can obtain contraband from a visitor.

**Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

12. Are you familiar with administrative directive 6.7.? If yes, please state which section and or subjection instructed you to strip search inmates at the conclusion of video visits on 6-10-2024?

**Part 1: Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the term "familiar" is vague and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: Yes.

3

AA-129

**Part 2: Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: Section 5. paragraph 9 says that a strip search shall be conducted for this circumstance: At the conclusion of any contact visit, or after entering any public visiting area.

13. Were you assigned to the visiting post in June of 2024? If yes, state the dates in which you were assigned to the visiting post.

    **Part 1: Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the terms "assigned" and "visiting post" are vague and ambiguous.

    **Response:** Notwithstanding and without waiving the foregoing objection: Yes.

    **Part 2: Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the terms "assigned" and "visiting post" are vague and ambiguous.

    **Response:** Notwithstanding and without waiving the foregoing objection: June 10, 2024.

14. Were inmates supposed to be pat searched prior to entering the visiting room on 6-10-2024?

    **Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the phrase "supposed to be" is vague and ambiguous.

    **Response:** Notwithstanding and without waiving the foregoing objection: Yes.

15. In as much detail as possible state what your duties entailed on 6-10-2024 while assigned to visits.

    **Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the phrase "what your duties entailed" is vague and ambiguous.

4

**Response:** Notwithstanding and without waiving the foregoing objection: My duties included but were not limited to: calling housing units and telling the housing unit officers which inmates to send to the visiting room for visits.

16. State verbatim what your post order stated on 6-10-2024 while you were assigned to visits.

   **Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, this request is duplicative of a previous request. See 26(b)(2)(C)(i). Finally, Coggeshall objects to this request because it is not reasonably calculated to lead to the discovery of admissible evidence; would jeopardize the safety or security of the defendants; and seeks information that is irrelevant to the allegations of the plaintiff's operative complaint.

17. Would you follow any unlawful order if given one by your supervisor?

   **Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the phrase "unlawful order" is vague, ambiguous, and is not reasonably calculated to lead to discovery of admissible evidence.

   **Response:** Notwithstanding and without waiving the foregoing objection: If my supervisor gave me an order that was illegal or unlawful, I would not carry out the illegal order.

18. If an inmate refused to be strip searched at the conclusion of video visits on 6-10-2024, would that inmate be subject to disciplinary action? If yes, state what type(s) of disciplinary action would that inmate be subject to.

   **Part 1: Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: The details of any particular situation vary on a case-by-case basis.

   **Part 2: Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: Disciplinary action for refusing to be strip searched could result in a disciplinary report for interfering with safety or security.

AA-130

19. While assigned to the visiting post in June of 2024, have you ever interdicted (drugs) from an inmate that participated in a video visit? If yes, please state when and how many times you interdiction drugs from an inmate at the conclusion of a video visit.

    **Part 1: Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

    **Response:** Notwithstanding and without waiving the foregoing objection: I have not, personally.

    **Part 2: Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2).

    **Response:** Notwithstanding and without waiving the foregoing objection: No response is necessary.

20. Identify the individual(s) whose signature was on the visit post order that was in effect on 6-10-2024.

    **Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, this request is duplicative of a previous request. See 26(b)(2)(C)(i).

21. In video preserved under Export C177 visit room at approximately 03:38 up to 07:27, is it true that inmates can be observed entering the visit room and going to the video visit area?

    **Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall also objects because this question exceeds the number of interrogatories allowed (including all discrete subparts) pursuant to FRCP 33(a).

    **Response:** Notwithstanding and without waiving the foregoing objection: The video speaks for itself.

22. In video preserved under Export C177 visit room, is it true that no visitors go around the left corner at no given time from the video depicted?

    **Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall also objects because this question exceeds the number of interrogatories allowed (including all discrete subparts) pursuant to FRCP 33(a).

6

AA-131

**Response:** Notwithstanding and without waiving the foregoing objection: The video speaks for itself.

23. Based upon your experience and knowledge explain the most likely way, how contraband (drugs) are introduced into Robinson CI during visits; i.e., contact, video, and or non-contact visits.

**Objection:** Coggeshall respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall also objects because this question exceeds the number of interrogatories allowed (including all discrete subparts) pursuant to FRCP 33(a).

DEFENDANTS
Commissioner Quiros, et al.

WILLIAM TONG
ATTORNEY GENERAL

BY: /s/ *Dennis V. Mancini*

Dennis V. Mancini (ct30239)
Assistant Attorney General
State of Connecticut
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
E-Mail: dennis.mancini@ct.gov
Tel: (860) 808-5450
Fax: (860) 808-5591

7

AA 132

## CERTIFICATION

I hereby certify that a copy of the foregoing was e-mailed to the following on this XX day of March 2025:

Courtney Green
30 Trowel Street
Bridgeport, CT 06607
greencourtney542@gmail.com

/s/ Dennis V. Mancini

Dennis V. Mancini
Assistant Attorney General

8

AA 133

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| COURTNEY GREEN, | : | No. 3:24-cv-01317 (VDO) |
| *Plaintiff,* | : | |
| | : | |
| *v.* | : | |
| | : | |
| COMMISSIONER QUIROS, et al. | : | APRIL 9, 2025 |
| *Defendants.* | : | |

## DEFENDANT COGGESHALL RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSIONS DATED MARCH 9, 2025

The defendant Coggeshall hereby responds to Plaintiff's Request for Admissions dated March 9, 2025, as follows:

1.  You were a correctional officer at Robinson CI during relevant times to this litigation.

    **Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague, and ambiguous.

    **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

2.  Prisoner's maintain rights even while incarcerated.

    **Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague, and ambiguous.

    **Response:** Notwithstanding and without waiving the foregoing objection: Coggeshall cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

AA-134

3. You're familiar with Administrative Directive 6.7.

   **Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague, and ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

4. Administrative Directive 6.7 does not mention that inmates are to be strip searched at the conclusion of video visits.

   **Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague, and ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

5. Administrative Directive 6.7 does not mention that inmates are to be strip searched at the conclusion of non - contact visits.

   **Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

6. Administrative Directive 6.7 does mention that inmates are to be strip searched at the commencement of contact visits.

   **Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

2

AA-135

7. You worked visits on 6 - 10 -2024.

   **Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague, and ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

8. 9A housing had video visits on 6 - 10 - 2024.

   **Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague, and ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

9. You strip searched inmates at the conclusion of video visits on 6 - 10 - 2024.

   **Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague, and ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

10. You strip searched inmates at the conclusion of non - contact visits on 6 - 10 - 2024.

    **Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

    **Response:** Notwithstanding and without waiving the foregoing objection: Coggeshall cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

3

AA-136

11. You don't have to follow unlawful orders.

**Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague, ambiguous, and solicits speculation.

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

12. Post orders instructed you to strip search inmates at the conclusion of video visits 6 - 10 -2024.

**Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague, and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: **Denied.**

13. Post orders instructed you to strip search inmates at the conclusion of non - contact visits on 6 - 10 - 2024.

**Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague, and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: **Denied.**

14. One of your duties require you to perform strip searches on inmates as needed.

**Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague, ambiguous, and is not limited in scope or time.

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit in part.** One of my duties as a correctional officer is to perform strip searches, but the term "as needed" is not part of A.D. 6.7.

4

15. Prisoner's who participate in video visits do not have contact with visitors from outside the facility.

    **Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the term "video visit" is undefined. Additionally, the request is otherwise vague, ambiguous, and solicits speculation.

    **Response:** Notwithstanding and without waiving the foregoing objection: Coggeshall cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

16. Staff directs inmates to sit at specified computers during video visits.

    **Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague, ambiguous, and solicits speculation.

    **Response:** Notwithstanding and without waiving the foregoing objection: **Admit**

17. Inmates can't receive contraband through a computer screen during video visits.

    **Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the term "contraband" is undefined. Additionally, the request is otherwise vague, ambiguous, and solicits speculation.

    **Response:** Notwithstanding and without waiving the foregoing objection: Coggeshall cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

18. Contact visits are the most likely source of how contraband is smuggled in Robinson CI.

    **Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague ambiguous, and solicits speculation.

5



**Response:** Notwithstanding and without waiving the foregoing objection: Coggeshall cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial

19. Prisoner's maintain the right to limited bodily privacy while incarcerated.

   **Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague ambiguous, and solicits speculation.

   **Response:** Notwithstanding and without waiving the foregoing objection: Coggeshall cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial

20. Inmates are pat searched prior to entering the visit room.

   **Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague, and ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: Coggeshall cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial

21. You're familiar with the term "Reasonable Suspicion" enunciated in Administrative Directive 6.7.

   **Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague, and ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: Coggeshall cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial

6

A A-139

22. You strip searched plaintiff after a video visit on 6 - 10 - 2024.

**Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

23. The definition of a strip search is enunciated in Administrative Directive 6.7.

**Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

24. Inmates who participated in contact visits are not strip searched simultaneously with inmates who participate in video visits.

**Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague, ambiguous, and solicits speculation.

**Response:** Notwithstanding and without waiving the foregoing objection: Coggeshall cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial

25. The fourth amendment of the United States Constitution protects inmates from unreasonable searches in prison settings.

**Objection:** Coggeshall respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Coggeshall further objects to the extent the terms utilized are undefined, vague, ambiguous, and solicits speculation.

**Response:** Notwithstanding and without waiving the foregoing objection: Coggeshall cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial

7

AA-140

DEFENDANTS
Commissioner Quiros, et al.

WILLIAM TONG
ATTORNEY GENERAL

BY: /s/ *Dennis V. Mancini*

Dennis V. Mancini (ct30239)
Assistant Attorney General
State of Connecticut
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
E-Mail:  dennis.mancini@ct.gov
Tel: (860) 808-5450
Fax: (860) 808-5591

8

AA - 141

## CERTIFICATION

I hereby certify that a copy of the foregoing was e-mailed to the following on this 9th day of April 2025:

Courtney Green
30 Trowel Street
Bridgeport, CT 06607
greencourtney542@gmail.com

/s/ *Dennis V. Mancini*

Dennis V. Mancini
Assistant Attorney General

9

A A - 142

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| COURTNEY GREEN, <br>     *Plaintiff,* | : | No. 3:24-cv-01317 (VDO) |
| | : | |
| *v.* | : | |
| | : | |
| COMMISSIONER QUIROS, et al. <br>     *Defendants.* | : <br> : | APRIL 9, 2025 |

<u>**DEFENDANT WARDEN CARON RESPONSES TO PLAINTIFF'S REQUEST**</u>
<u>**FOR ADMISSIONS DATED MARCH 10, 2025**</u>

The defendant Warden Caron hereby responds to Plaintiff's Request for Admissions dated March 10, 2025, as follows:

1. You were the Warden / Unit Administrator at Robinson CI during relevant times to this litigation.

   **Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron further objects to the extent the terms utilized are undefined, vague, and ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

2. Your statutory authority is outlined in section 18-7 of Conn. General Statutes.

   **Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

3. Attached CN 9602 I GP #116-24-150 bearing DW Carbones' signature is an authentic copy.

   **Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

AA - 143

**Response:** Notwithstanding and without waiving the foregoing objection: Caron cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to her is insufficient to render an admission or denial

4. Attached letter dated May 30, 2024 is an authentic copy.

    **Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

    **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

5. Attached CN 9602 I GP #116-24-105 bearing your signature is an authentic copy.

    **Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

    **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

6. Attached CN 9604 I GP #116-24-105 bearing District Administrator Washingtons' signature is an authentic copy.

    **Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

    **Response:** Notwithstanding and without waiving the foregoing objection: Caron cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to her is insufficient to render an admission or denial.

7. You're a policy maker at Robinson CI.

    **Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron further objects to the extent the terms utilized are undefined, vague, and ambiguous.

    **Response:** Notwithstanding and without waiving the foregoing objection: Caron cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to her is insufficient to render an admission or denial.

2



8. You toured 9A housing unit on 6-7-2024.

   **Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron further objects to the extent the terms utilized are undefined, vague, and ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: Caron cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to her is insufficient to render an admission or denial.

9. Plaintiff has been housed in 9A housing unit since April of 2021.

   **Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron further objects to the extent the terms utilized are undefined, vague, and ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: Caron cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to her is insufficient to render an admission or denial.

10. Prisoner's maintain rights even while incarcerated.

    **Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron further objects to the extent the terms utilized are undefined, vague, and ambiguous.

    **Response:** Notwithstanding and without waiving the foregoing objection: Caron cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to her is insufficient to render an admission or denial.

11. Prisoner's at Robinson CI are accorded virtual video visits.

    **Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron further objects to the extent the terms utilized are undefined, vague, ambiguous, and not limited in time or scope.

    **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

3

AA-145

12. Video visits are conducted by utilizing a laptop, tablet or mobile device with video capabilities.

**Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron further objects to the extent the terms utilized are undefined, vague, ambiguous, and not limited in time or scope.

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit in part. Video visits are conducted using laptops.**

13. Prisoner's who participate in video visits do not have contact with visitors from outside the facility.

**Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron further objects to the extent the term "video visits" is undefined, vague, ambiguous, and solicits speculation.

**Response:** Notwithstanding and without waiving the foregoing objection: **Deny.**

14. Prisoner's who participate in video visits at Robinson CI are strip searched at the commencement of said visits.

**Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron further objects to the extent the terms "video visits" and "said visits" are undefined, vague, and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: **Deny.**

15. You direct all staff, programs, and operations at Robinson CI.

**Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron further objects to the extent the terms utilized are undefined, vague, and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: Caron cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to her is insufficient to render an admission or denial

4

AA-146

16. Administrative Directive 6.7 is the policy that governs strip searches in Connecticut's prisons.

**Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

17. Administrative Directive 6.7 does not mention that inmates will be strip searched at the conclusion of video visits.

**Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

18. Administrative Directive 6.7 does mention that inmates will be strip searched at the conclusion of contact visits.

**Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

19. Contact visits are the most likely source of how contraband is smuggled into Robinson CI.

**Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron further objects on the basis the request is overly broad, vague, ambiguous, and solicits speculation.

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit in part.** The visiting room is one of the most likely sources of how contraband is smuggled into the facility.

20. Prisoner's can't receive contraband from their visitors during a video visit.

**Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron further objects to

5



the extent the terms utilized are undefined, vague, ambiguous, and solicits speculation.

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

21. Prisoner's who participate in non-contact visits are strip searched at the commencement of said visits.

**Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: **Deny.**

22. Post orders instruct staff working visits to strip search inmates at the commencement of video visits.

**Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: **Deny.**

23. You're familiar with term "Reasonable Suspicion" enunciated in Administrative Directive 6.7.

**Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron further objects to the extent the terms utilized are undefined, vague, and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

24. Prisoner's at Robinson CI were not always strip searched at the conclusion of video visits.

**Objection:** Caron respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron further objects to the extent the terms utilized are undefined, vague, ambiguous, and not limited in time or scope.

6



**Response:** Notwithstanding and without waiving the foregoing objection: **Admit in part.** When the visiting center was not open to the public, strip searches were not being conducted for video visits.

DEFENDANTS
Commissioner Quiros, et al.

WILLIAM TONG
ATTORNEY GENERAL

BY: /s/ Dennis V. Mancini

Dennis V. Mancini (ct30239)
Assistant Attorney General
State of Connecticut
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
E-Mail: dennis.mancini@ct.gov
Tel: (860) 808-5450
Fax: (860) 808-5591

7

AA - 149

## CERTIFICATION

I hereby certify that a copy of the foregoing was e-mailed to the following on this 9th day of April 2025:

    Courtney Green
    30 Trowel Street
    Bridgeport, CT 06607
    greencourtney542@gmail.com

                /s/ Dennis V. Mancini

                Dennis V. Mancini
                Assistant Attorney General

8

AA-150



| Inmate Grievance Form- Level 1 | CN 9602 |
|---|---|
| Connecticut Department of Correction | REV 04/30/2021 |

Facility/Unit: Robinson CI     Date: 6-24-2024

Inmate name: Courtney Breen     Inmate number: 320094

## INMATE ADVISEMENT

- Any inmate who files a grievance must follow all instructions in Section 5 and 6 of Administrative Directive 9.6, "Inmate Administrative Remedies."
- Any grievance which does not follow the instructions identified in the above mentioned sections shall be rejected.

## STATE THE PROBLEM AND REQUESTED RESOLUTION

- Provide any factual information that is applicable, including any responses from staff.
- State the action that you think should be taken to resolve the problem.
- PLEASE PRINT.

ON 6-12-24 I wrote A CN 9601 to CAptAin MArtiNez explaining to her that twice on second shift, I was strip searched by off-icer Starzyk following the conclusion of A virtual video visit And when I Asked officer Starzky which section(s) of

Inmate signature: CB     Date: 6-24-2024

- Deposit this form in the "Administrative Remedies" box.

## DECISION / OFFICIAL USE ONLY – DO NOT WRITE IN THE SPACE BELOW

| Date Received: *06-26-2024* | IGP #: *116-24-150* |
|---|---|
| Disposition: *Rejected* | Date of Disposition: *07-18-2024* |

Reason:
You have filed a Level 1 grievance at the Carl Robinson Correctional Institution in regards to strip searches after video visits. As outlined in AD 9.6 "Any repetitive request for an administrative remedy filed by the same inmate when a final response has been provided and there has been no change in any circumstances that would affect the response shall be rejected". This is a repetitive request for remedy, as a response has been provided (116-24-105). Therefore, this grievance is rejected.

☒ This decision is not subject to further appeal.     ☐ This matter may be appealed within 5 calendar days.

Staff Name Print: Alan Cordner

Signature: _____     Date: 7/18/24

AA-151

Administrative Directive authorizes strip searches following virtual video visits unto which officer Starzyk replied, "I'm just doing what is instructed of me and following my post orders.

On 6-20-2024 this writer saw Captain Martinez, who acknowledged receipt of my CN 9601 and she addressed the contents of my CN 9601 in person, so I wasn't given back to me so that's why CN 9601 is not attached. In short, Captain Martinez assured me that officer Starzyk was following orders as instructed and that strip searches after virtual video visits will continue which this writer clearly understands. My issue is that the "Caron" administration/has prospectively implemented strip searches at the conclusion of virtual video visits before any such revision to A.D. 6-7 has passed legal clearance to permit said strip searches.

The action that I think should happen is for the "Caron" administration to adhere to applicable case law. See A.D. 6-7 section 3(d) which is Bell v. Wolfish, 441 U.S. at 558-560, that established that inmate may be routinely strip frisked after contact visits, but they may not be strip frisked after non-contact visits. Bell at 559.

AA-152



# STATE OF CONNECTICUT
## DEPARTMENT OF CORRECTION
### Carl Robinson Correctional Institution
#### 285 SHAKER ROAD
#### ENFIELD, CONNECTICUT 06082

TO:      I/M GREEN 320094

FROM:   Warden's Office

DATE:    May 30, 2024

SUBJECT:  Correspondence Received

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This correspondence is in response to the correspondence received in the Commissioner's office, which has been forwarded to this office for a reply.

In accordance to: _Administrative Directive 6.7 (b)(ix): Strip Searches when Reasonable Suspicion is not required. A strip search shall be conducted for the following circumstances: (ix) At the conclusion of any contact visit,_ **or** _after entering any public visiting area._

The response received on your CN 9602 Inmate grievance is in accordance to A. D. 6.7 (b)(ix).

You are encouraged to remain Disciplinary Report Free, and reach out to your Counselor with any other questions.

Thank you.

CC:    I/M  GREENE 320094
       File
       Commissioner's Office

_An Equal Opportunity Employer_

AA - 153



# Inmate Grievance Form- Level 1
## Connecticut Department of Correction

CN 9602
REV
04/30/2021

Facility/Unit: CRCI

Date: March 25, 2024

Inmate name: Courtney Green

Inmate number: 320094

## INMATE ADVISEMENT

- Any inmate who files a grievance must follow all instructions in Section 5 and 6 of Administrative Directive 9.6, "Inmate Administrative Remedies."
- Any grievance which does not follow the instructions identified in the above mentioned sections shall be rejected.

## STATE THE PROBLEM AND REQUESTED RESOLUTION

- Provide any factual information that is applicable, including any responses from staff.
- State the action that you think should be taken to resolve the problem.
- PLEASE PRINT.

I'm grieving Attached CN 9601 that's stamped DW's Office, so DW Ogando has constructive knowledge of Attached CN 9601 And it's contents, moreover DW Ogando is fully Aware of the practice of the strip searches being conducted At the conclusion of video visits. On 3-15-24 (C/O Stewart strip seached me), on 3-23-24 (C/O Langolis

Inmate signature:

Date: March 25, 2024

- Deposit this form in the "Administrative Remedies" box.

## DECISION / OFFICIAL USE ONLY – DO NOT WRITE IN THE SPACE BELOW

| Date Received: 03-25-2024 | IGP #: 116-24-105 |
|---|---|

| Disposition: *Denied* | Date of Disposition: 04-03-2024 |
|---|---|

Reason:

*You have filed a Level One Grievance regarding strip searches at the conclusion of visits at Robinson Correctional Institution. In an effort to allow the maximum amount of visits, with the limited space available, to the facility population, all Inmates share the same waiting area/ holding bullpen in the Visiting Center. Due to the close contact of all Inmates who are in the Visiting Center for their visits (Contact/Non-Contact/Video), there is reasonable suspicion for the use of strip searches to ensure the safety and security of the facility and the Inmate population it houses. Your grievance is denied.*

☐ This decision is not subject to further appeal.

☑ This matter may be appealed within 5 calendar days.

Staff Name Print:

Signature:

Date:

AA-154

strip searched me after conclusions of video visits, and the problem is that such practice is an unreasonable search, and violates A.D.C.7. Resolution requested is to cease the unreasonable searches, they are unconstitutional, as the Supreme Court's decision in Bell v. Wolfish, 441 U.S. 520 (1979), outlines when strip searches on prisoners are permissible and after non-contact visits misses it's mark.

AA-155

# Inmate Grievance Appeal Form - Level 2
## Connecticut Department of Correction

CN 9604
REV
04/30/2021

Inmate name: Courtney Green

Inmate number: 320094

Facility/Unit: Robinson CI

Housing unit: 9A-110

Date: 4-5-2024

IGP number: 116-24-105

## Inmate Acknowledgement

○ Use this form to appeal a CN 9602, Inmate Grievance Form- Level 1.
○ When submitting this form, the following must be included for processing:
   ○ All original documentation for prior resolution (e.g. Initial CN 9601, Inmate Request form; CN 9602, Inmate Grievance Form Level 1; etc.).
○ NOTE:
   ○ Your appeal must be filed within five (5) calendar days of the Level 1 response and deposited in the "Administrative Remedies" box within the institution. A level 2 shall be rejected if all documentation from the level 1 response is not included.

## Appeal of Level 1 Decision to Level 2

I am appealing the Level 1 decision because: The level 1 response is erroneous. To begin this remedy challenges Departmental-level policy and is subject to level 3 review. See A.D. 9.6 Sec. III sub.sec. i, paragraph. a. Needless to say that A.D. 6.7 which is promulgated by Comsr Quiros does NOT mention reference or Authorize strip searches at the conclusion of NON-cont-act/Video visits. Nor does UA Caron cite to any section of A.D. 6.7

Inmate signature: CG

Date: 4-5-2024

## FOR OFFICIAL USE ONLY - LEVEL 2 REVIEW

Date received: 4/12/2024

Disposition: *Denied*

Date of disposition: 4/18/2024

Reasons:

*You are appealing a level one grievance (116-24-105) regarding strip searches after a video visit at Robinson CI. The response provided by Warden Caron to your level 1 grievance was thorough and appropriate. Therefore, your grievance is denied.*

Level 2 reviewer print name: *Washington*

Title: *District Administrator*

Level 2 reviewer signature:

Date: *4/18/2024*

☐ This grievance may be appealed within five (5) Calendar days to Level 3.

☑ This decision is not subject to further appeal.

AA-15c

to justify her institute of a blanket policy of routine strip searches after video visits. Moreover, UA Carons' justification for instituting strip searches after video visits, where UA Caron relies/cites "Reasonable Suspicion"; which she clearly misinterprets. "Reasonable Suspicion"; An objectively judgment based on specific objective facts and reasonable inference drawn in light of experience, training and education. See A.D. PC.7 Sec. 3, Sub. Sec. N. Given, it is inconceivable for one to smuggle contraband through a video visit. Nor are their specific facts that prove otherwise. Since UA Caron cites "reasonable suspicion that means strip search reports have been generated (A.D. PC.7 (C) ii, which has not, And that "Reasonable Suspicion" has been determined in accord with A.D.C.7 (C) a 1- C.7 (C), which also has not, Carons' policy fails!

Lastly, Bell v. Wolfish, 441 U.S. 520 (1979) outlines that strip searches ARE No justified after contact visits not non-contact, wherefore their will be No qualified immunity defense. The Directives are useless if they aren't followed by Administrators And might as well be discared. For All the above stated reasons And cited Authority, I respectfully move for the level 2 reviewer to Adhere to A.D. 1.3 Section 3, paragraph a, And reverse UA Carons' routine strip search policy after Non-contact video visits.

AA-157

18. Identify who the Unit Administrator is a Robinson Ci.

**Objection:** Caron respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron also objects to this request because it is vague and ambiguous in that it is not limited in time or scope and seeks information that is irrelevant to the allegations of the plaintiff's operative complaint.

**Response:** Notwithstanding and without waiving the foregoing objection: Assuming the plaintiff is referring to the current unit administrator, Warden Caron

19. Identify the official responsible for ensuring that the Unit Directives are created at Robinson CI.

**Objection:** Caron respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron also objects to this request because it is vague and ambiguous in that it is not limited in time or scope and seeks information that is irrelevant to the allegations of the plaintiff's operative complaint.

**Response:** Notwithstanding and without waiving the foregoing objection: Assuming the plaintiff is referring to the current process, the Unit Administration in collaboration with line supervisors discuss the detailed duties and post and also take into consideration the safety of the staff, the population and public.

20. Is it true that Administrative Directive 6.2 paragraph 4 a. reads. The purpose of the post and the duties and procedures to be followed on a daily basis to include emergency response requirement.

**Objection:** Caron respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron also objects to this request because it seeks information that is irrelevant to the allegations of the plaintiff's operative complaint.

**Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

21. Please state the date in which the plaintiff was last found guilty of a disciplinary report.

   **Objection:** Caron respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron also objects to this request because it seeks information that is irrelevant to the allegations of the plaintiff's operative complaint.

   **Response:** Notwithstanding and without waiving the foregoing objection: I am unsure when the plaintiff received a disciplinary report. **[Attorney response]** DOC records indicate that Plaintiff's most recent DR was a "Contraband Class A" from Northern CI dated April 29, 2009.

22. Do you possess any knowledge of the law:

   **Objection:** Caron respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Caron also objects to this request because it seeks information that is irrelevant to the allegations of the plaintiff's operative complaint.

23. Please state the date when the policy went into effect requiring inmates to submit to strip searches at the conclusion of video visits in 2024 at Robinson CI.

   **Objection:** Caron respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). See 26(b)(2)(C)(i). Caron also objects to this request because it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff executed a global release on or about April 24, 2024. Pursuant to that release all "all actions, causes of action, suits, claims, controversies, damages and demands of every nature and kind" were released as of the date of that agreement. Finally, Caron objects to this request because it seeks information that is irrelevant to the allegations of the plaintiff's operative complaint.

   Response: Notwithstanding and without waiving the foregoing objection: A notice was put out on 2/16/2024 reminding staff of the importance of conducting strip searched at the conclusion of visits in the visiting room to prevent any contraband entering the facility.

   DEFENDANTS
   Commissioner Quiros, et al.

   WILLIAM TONG
   ATTORNEY GENERAL

6

AA-159

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| COURTNEY GREEN,<br>    *Plaintiff,* | : | No. 3:24-cv-01317 (VDO) |
| | : | |
| | : | |
| *v.* | : | |
| | : | |
| | : | |
| COMMISSIONER QUIROS, et al.<br>    *Defendants.* | : | APRIL 9, 2025 |
| | : | |

## DEFENDANT DEPUTY WARDEN OGANDO RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSIONS DATED MARCH 9, 2025

The defendant Deputy Warden Ogando hereby responds to Plaintiff's Request for Admissions dated March 9, 2025, as follows:

1. You were the Deputy Warden of operations at Robinson CI during relevant times to this litigation.

   **Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando further objects to the extent the terms utilized are undefined, vague, and ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

2. You were responsible for overseeing operations at Robinson CI during relevant times to this litigation.

   **Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando further objects to the extent the terms utilized are undefined, vague, and ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

3. You're a policy maker at Robinson CI.

   **Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando further objects to the extent the terms utilized are undefined, vague, and ambiguous.

AA-160

**Response:** Notwithstanding and without waiving the foregoing objection: **Denied.**

4. You toured 9A housing unit on 6 - 7 - 24.

    **Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

    **Response:** Notwithstanding and without waiving the foregoing objection: Ogando cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

5. You were responsible for overseeing custody staff at Robinson CI during relevant times to this litigation.

    **Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando further objects to the extent the terms utilized are undefined, vague, and ambiguous.

    **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

6. Plaintiff was housed in 9A on 6 - 7 -2024.

    **Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

    **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

7. Prisoner's maintain rights even while incarcerated.

    **Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando further objects to the extent the terms utilized are undefined, vague, ambiguous, and solicits speculation.

    **Response:** Notwithstanding and without waiving the foregoing objection: Ogando cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

2

8. Prisoners at Robinson CI are accorded video visits.

   **Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando further objects to the extent the terms utilized are undefined, vague, ambiguous, and solicits speculation.

   **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

9. Visitors who participate in video visits do not enter Robinson CI premises to do so.

   **Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando further objects to the extent the terms utilized are undefined, vague, ambiguous, and solicits speculation.

   **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

10. Prisoner's who participate in video visits were strip searched at the commencement on 3 - 15 - 2024.

    **Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

    **Response:** Notwithstanding and without waiving the foregoing objection: Ogando cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

11. Post orders instructed staff working visits to strip search prisoners at the commencement on 3 - 15 - 2024.

    **Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

    **Response:** Notwithstanding and without waiving the foregoing objection: **Denied.**

3

AA-162

12. You're familiar with Administrative Directive 6.7.

   **Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando further objects to the extent the terms utilized are undefined, vague, and ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

13. Attached CN 9601 dated 3-16- 2024 was sent to you.

   **Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: Ogando cannot admit or deny as phrased -- despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

14. Administrative Directive 6.7 does not mention, reference that prisoners are to to be strip searched at the conclusion of video visits.

   **Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

15. Administrative Directive 6.7 does mention that prisoner's are to be strip searched at the conclusion of contact visits.

   **Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

16. You were responsible for overseeing security at Robinson CI during relevant times to this litigation.

   **Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando further objects to the extent the terms utilized are undefined, vague, and ambiguous.

4

AA-163

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

17. The strip search policies at Robinson CI concerning video visits were in accordance with relevant court decisions on 3 - 15 - 2024.

**Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando further objects to the extent the term "relevant court decisions" is undefined. Additionally, the request is otherwise vague and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: Ogando cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

18. You're familiar with the term reasonable suspicion "enunciated" in Administrative Directive 6.7.

**Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando further objects to the extent the terms utilized are undefined, vague, and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: Ogando cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

19. Prisoners who participate in video visits do not have contact with visitors from outside the facility.

**Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando further objects to the extent the terms utilized are undefined, vague, and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: Ogando cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

5

A A - 164

20. You instituted the policy at Robinson CI that prisoner's were to be strip searched at the conclusion of video visits in February of 2024.

**Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando further objects to the extent the terms utilized are undefined, vague, and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: Ogando cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

21. Contact visits are the most likely source of how contraband is smuggled into Robinson CI.

**Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando further objects to the extent the terms utilized are undefined, vague, and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit in part.** The visiting room is one of the most likely sources of how contraband is smuggled into the facility.

22. Prisoner's can't receive contraband through a computer screen during a video visit.

**Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando further objects to the extent the terms utilized are undefined, vague, ambiguous, and solicits speculation.

**Response:** Notwithstanding and without waiving the foregoing objection: Ogando cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

23. One of your duties as Deputy Warden of operations require you to interpret and administer pertinent laws.

**Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando further objects to the extent the term "pertinent laws" is undefined. Additionally, the request is otherwise vague and ambiguous.

6

AA-165

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

24. The Commissioner of Correction promulgates the Administrative Directives.

    **Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Ogando further objects to the extent the terms utilized are undefined, vague, and ambiguous.

    **Response:** Notwithstanding and without waiving the foregoing objection: **Admitted that the Connecticut General Statutes permits the commissioner of correction to promulgate administrative rules for Department of Correction facilities.**

25. A strip search is a visual inspection of an unclothed person's body cavities pursuant to Administrative Directive 6.7 section 3.

    **Objection:** Ogando respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

    **Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.


DEFENDANTS
Commissioner Quiros, et al.

WILLIAM TONG
ATTORNEY GENERAL

BY: /s/ Dennis V. Mancini

Dennis V. Mancini (ct30239)
Assistant Attorney General
State of Connecticut
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
E-Mail: dennis.mancini@ct.gov
Tel: (860) 808-5450
Fax: (860) 808-5591

7

AA-166

## CERTIFICATION

I hereby certify that a copy of the foregoing was e-mailed to the following on this 9th day of April 2025:

    Courtney Green
    30 Trowel Street
    Bridgeport, CT 06607
    greencourtney542@gmail.com

/s/ Dennis V. Mancini

Dennis V. Mancini
Assistant Attorney General

8

AA-167

# Inmate Request Form
## Connecticut Department of Correction

CN 9601
REV
04/30/2021

Inmate name: Courtney Green

Inmate number: 320094

Facility/Unit: CRCI

Housing unit: 9A-110

Date: 3-16-24

Submitted to: DW Oganpdo / Operations

Request: On 3-15-24 I had a virtual visit, and upon conclusion of said visit, c/o Stewart stripped me when I had no contact with anyone from the outside. Moreover, the practice of strip searching I/M's after a non-contact visit is unreason- able and violates A.D. C.7 section 5 and all of it's subsections, as well being unconstitutional. See Bell v. Wolfish, 441 U.S. 520 (1979) (I/M's can routinely be strip searched after contact visits, initial or readmission to a facility; placement in RHU, PC, CC, and upon reasonable belief that an I/M may be carrying contraband. Please cease this practice, it's unconstitutional.

*continue on back if necessary*

Previous action taken:

MAR 2024

*continue on back if necessary*

Acted on by (print name): N Nyalivare

Title: Deca

Action taken and/or response:

You are writing to the wrong Deputy Warden. Deputy Warden Ogando Oversees the Supervision of the Correction Officers who are strip Searching you. You need to write to him.

*continue on back if necessary*

Staff signature: 

AA-168

Date: 3/20/24

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

COURTNEY GREEN,                  :        No. 3:24-cv-01317 (VDO)
  *Plaintiff,*                  :
          :
  *v.*                          :
          :
COMMISSIONER QUIROS, et al.      :        APRIL 9, 2025
  *Defendants.*                 :

## DEFENDANT COMMISSIONER QUIROS RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSIONS DATED MARCH 10, 2025

The defendant Commissioner Quiros hereby responds to Plaintiff's Request for Admissions dated March 10, 2025, as follows:

1. You were the commissioner of correction on June 6, 2024.

   **Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

2. Your statutory authority is outlined in section 18-81 of Conn. General Statutes.

   **Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

3. Plaintiff wrote you a letter in May of 2024.

   **Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Quiros further objects to the extent plaintiff requests authentication of documents not within defendant's possession, custody, or control.

   **Response:** Notwithstanding and without waiving the foregoing objection: Quiros cannot admit or deny whether the plaintiff wrote a letter in May of

AA-169

2024, despite reasonable inquiry the information known or presently available to the defendant is insufficient to render an admission or denial.

4. As commissioner of correction you promulgated the Administrative Directives.

    **Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Quiros further objects to the extent the terms utilized are undefined, vague, ambiguous, and not limited in time or scope.

    Response: Notwithstanding and without waiving the foregoing objection: **Admit in part.** Some Administrative Directives were promulgated by other commissioners.

5. You revised Administrative Directive 6.7 that went into effect on January 30, 2024.

    **Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Quiros further objects to the extent the terms utilized are undefined, vague, and ambiguous.

    Response: Notwithstanding and without waiving the foregoing objection: **Admit.**

6. Administrative Directive 6.7 does not mention that inmates are to be strip searched at the commencement of video visits.

    **Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

    **Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

7. Administrative Directive 6.7 does mention that inmates are to be strip searched at the conclusion of contact visits.

    **Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

    **Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

2

AA-170

8. Defendant Caron was your subordinate during relevant times to this action.

   **Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Quiros further objects to the extent the terms utilized are undefined, vague, and ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: **Admit Warden Caron was the unit administrator of Robinson CI at the times alleged in the complaint. Admit the Commissioner of Correction is the administrative head of the department and is responsible for the overall supervision and direction of all institutions, facilities, and activities of the department.**

9. Defendant Ogando was your subordinate during relevant times to this action.

   **Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Quiros further objects to the extent the terms utilized are undefined, vague, and ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: **Admit Deputy Warden Ogando reported to the unit administrator at the times alleged in the complaint. Admit the Commissioner of Correction is the administrative head of the department and is responsible for the overall supervision and direction of all institutions, facilities, and activities of the department.**

10. Prisoner's maintain rights even while incarcerated.

    **Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Quiros further objects to the extent the terms utilized are undefined, vague, and ambiguous.

    **Response:** Notwithstanding and without waiving the foregoing objection: Quiros cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

11. You have some legal knowledge.

    **Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Quiros further objects to the extent the term "some legal knowledge" is vague, ambiguous, and overbroad in scope.

3



**Response:** Notwithstanding and without waiving the foregoing objection: Quiros cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

12. Prisoner's who participate in video visits do not have contact with visitors from outside the facility.

**Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Quiros further objects to the extent the term "video visit" is undefined. Additionally, the request is otherwise vague, ambiguous, and solicits speculation.

**Response:** Notwithstanding and without waiving the foregoing objection: **Deny.**

13. You authorized prisoner's to be strip searched at the conclusion of video visits at Robinson CI.

**Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: **Denied as phrased.** AD 6.7 mandates that a strip search shall be conducted after entering any public visit area. This may include areas with multiple inmates conducting "video visits".

14. Contact visits are the most likely source of how contraband is smuggled in Connecticut prisons.

**Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Quiros further objects on the basis the request is overly broad, vague, and ambiguous; that the request solicits speculation; and on the basis the request seeks information regarding facilities not at issue in this action.

**Response:** Quiros stands on his objection.

15. Administrative directives are meant to be adhered by all department of correction employees.

4

**Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Quiros further objects on the basis the request is overly broad, vague, and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: It is admitted that Administrative Directives reflect the policy of the Department of Correction.

16. Administrative directive 6.7 does not mention that prisoner's are to be strip searched at the commencement of non - contact visits.

**Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

17. Inmate Administrative Remedies that challenge department level policy are subject to level 3 review.

**Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

18. You were the inmate administrative remedies level 3 reviewer as commissioner of correction.

**Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit in part.** Level 3 review shall be made by the commissioner or his designee.

19. Attached CN9604 bearing IGP#116 - 24 - 105 is an authentic copy.

**Objection:** Quiros respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

5



## CERTIFICATION

I hereby certify that a copy of the foregoing was e-mailed to the following on this 9th day of April 2025:

Courtney Green
30 Trowel Street
Bridgeport, CT 06607
greencourtney542@gmail.com

/s/ Dennis V. Mancini

Dennis V. Mancini
Assistant Attorney General

8

AA-174



# Inmate Grievance Appeal Form - Level 2
## Connecticut Department of Correction

CN 9604
REV
04/30/2021

Inmate name: Courtney Green    Inmate number: 320094

Facility/Unit: Robinson CI    Housing unit: 9A-110    Date: 4-5-2024

IGP number: 116-24-105

---

### Inmate Acknowledgement

- Use this form to appeal a CN 9602, Inmate Grievance Form- Level 1.
- When submitting this form, the following must be included for processing:
  - All original documentation for prior resolution (e.g. Initial CN 9601, Inmate Request form; CN 9602, Inmate Grievance Form Level 1; etc.).
- NOTE:
  - Your appeal must be filed within five (5) calendar days of the Level 1 response and deposited in the "Administrative Remedies" box within the institution. A level 2 shall be rejected if all documentation from the level 1 response is not included.

---

### Appeal of Level 1 Decision to Level 2

I am appealing the Level 1 decision because: The level 1 response is erroneous. To begin this remedy challenges Departmental-level policy and is subject to level 3 review. See A.D. 9.C Sec. III. Sub. Sec. I. Paragraph. a. Needless to say that A.D. C.7 which is promulgated by Comsr Quiros does Not Mention reference or authorize strip searches at the conclusion of Non-cont-act/video visits. Nor does UA Caron cite to any section of A.D. C.7

Inmate signature: CG    Date: 4-5-2024

---

### FOR OFFICIAL USE ONLY - LEVEL 2 REVIEW

Date received: 4/12/2024    Disposition: Denied    Date of disposition: 4/18/2024

Reasons:

*You are appealing a level one grievance (116-24-105) regarding strip searches after a video visit at Robinson CI. The response provided by Warden Caron to your level 1 grievance was thorough and appropriate. Therefore, your grievance is denied.*

Level 2 reviewer print name: *Washington*    Title: *District Administrator*

Level 2 reviewer signature:    Date: *4/18/2024*

☐ This grievance may be appealed within five (5) Calendar days to Level 3.

☑ This decision is not subject to further appeal.

8. Have you been apprised of a case called Bell v Wolfish, 771 U.S. 520 (1979)?

   **Objection:** Quiros respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the term "Have you been apprised" is vague, ambiguous, and is not reasonably calculated to lead to discovery of admissible evidence.

9. Is it true that inmates retain some rights even while incarcerated?

   **Objection:** Quiros respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Additionally, the term "some rights" is vague, ambiguous, and is not reasonably calculated to lead to discovery of admissible evidence.

10. Please explain why did you revise Administrative Directive 6.7 mandating that inmates be strip searched after entering any public visiting area.

    **Objection:** Quiros respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). In addition, this request is vague in that it is not limited in time and scope. See 26(b)(2)(C)(i).

    **Response:** Notwithstanding and without waiving the foregoing objection: To the extent Plaintiff refers to the revision approved on May 29, 2024, that change was made to limit and/or prevent introduction, dissemination, or distribution of contraband within correctional facilities.

11. Do you believe that requiring inmates, per Administrative Directive 6.7 submit to being strip searched at the conclusion of video visits is reasonably related to a legitimate penological goal? If your answer is yes, please explain how it is reasonably related to a legitimate penological goal; if your answer is no, then no further explanation is needed.

    **Part A:**
    **Objection:** Quiros respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Furthermore, the terms "reasonably related" and "legitimate penological goal" are vague and ambiguous.

    **Response:** Notwithstanding and without waiving the foregoing objection: **Yes.**

    **Part B:**

3

AA - 176

**Objection:** Quiros respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Furthermore, the terms "reasonably related" and "legitimate penological goal" are vague and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: Under circumstances where there are video and contact visitations occurring in a public visiting area, or multiple video visits occurring in the same area, conducting a strip search before the inmates leave the public visiting area (e.g., visiting center) is reasonably related to the legitimate penological goal of limiting introduction, dissemination, or distribution of contraband within correctional facilities.

12. Please identify the document attached, dated May 30, 2024, as the term is defined in

    **Objection:** Quiros respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Furthermore, this question is vague and ambiguous because no document was attached, and the phrase "as the term is defined in" is an incomplete sentence rendering a response impossible.

**Plaintiff's interrogatory requests did not include a number 13.**

14. Please explain in as much detail as possible why it's not specified that inmates are required to submit to strip searches at the conclusion of video visits non or contact visits in Administrative Directive 6.7 section 5 (b), ix.

    **Objection:** Quiros respectfully objects to this interrogatory question because it does not comply with Fed Rules Civ Proc R 26(g)(2). Further, the term "as much detail as possible" is vague and ambiguous. Finally, the specific version of the Administrative Directive being asked about is unclear and thus ambiguous.

    **Response:** Notwithstanding and without waiving the foregoing objection: The current directive mandates a strip search be conducted after entering any public visiting area an inmate has access to. Thus, a strip search shall be conducted if a video visit or non-contact visit occurs in a public visiting area accessible to other inmates.

15. Are inmates currently strip searched at the conclusion of video visits? If the answer is yes then no further explanation is needed, if your answer is no,

4

AA-177

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| COURTNEY GREEN, | : | No. 3:24-cv-01317 (VDO) |
| *Plaintiff,* | : | |
| | : | |
| *v.* | : | |
| | : | |
| COMMISSIONER QUIROS, et al. | : | APRIL 9, 2025 |
| *Defendants.* | : | |

## DEFENDANT STARZYK RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSIONS DATED MARCH 9, 2025

The defendant Starzyk hereby responds to Plaintiff's Request for Admissions dated March 9, 2025, as follows:

1. You were a correctional officer at Robinson CI during relevant times to this litigation.

   **Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects to the extent the terms utilized are undefined, vague, and ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

2. Prisoners maintain rights even while incarcerated.

   **Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects to the extent the terms utilized are undefined, vague, ambiguous, and solicits speculation.

   **Response:** Notwithstanding and without waiving the foregoing objection: Starzyk cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

3. You're familiar with Administrative Directive 6.7.

   **Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects

AA 178

to the extent the term "familiar" is undefined. Additionally, the request is otherwise vague and ambiguous.

**Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

4. Administrative Directive 6.7 does not mention that inmates are to be strip searched at the conclusion of video visits.

   **Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects to the extent the terms utilized are undefined, vague, and ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

5. You worked visits on 6-3-24.

   **Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects to the extent the terms utilized are undefined, vague, and ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

6. You strip searched inmates at the conclusion of video visits on 6-3-24.

   **Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: Starzyk cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

7. You strip searched the plaintiff at the conclusion of video visits on 6-3-24.

   **Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: Starzyk cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

A A-179

8. 9A housing unit had video visits on 6-3-24.

   **Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

   **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

9. Post orders instructed you to strip search inmates at the conclusion of video visits on 6-3-24.

   **Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects to the extent the terms utilized are undefined, vague, and ambiguous.

   **Response:** Notwithstanding and without waiving the foregoing objection: **Denied.**

10. Administrative Directive 2.17 section 5, subsection A, paragraph 16 states; "Respect and protect the rights of inmates".

    **Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

    **Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

11. Staff directs inmates which computers to sit at during video visits.

    **Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects to the extent the terms utilized are undefined, vague, ambiguous, solicits speculation, and is not limited in time or scope.

    **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

12. Administrative Directive 6.7 does explicitly mention that inmates are to be strip searched at the conclusion of contact visits,

    **Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

3

A A - 180

**Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

13. Reasonable suspicion must be established before an inmate is strip searched at the conclusion of a video visit.

   **Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects to the extent the terms utilized are undefined, vague, ambiguous, and solicits speculation.

   **Response:** Notwithstanding and without waiving the foregoing objection: Starzyk cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

14. You don't have to follow unlawful orders given to you.

   **Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects to the extent the terms utilized are undefined, vague, ambiguous, and solicits speculation.

   **Response:** Notwithstanding and without waiving the foregoing objection: Starzyk cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

15. Visitors are not allowed in the vicinity where video visits are conducted.

   **Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects to the extent the term "in the vicinity" is undefined. Additionally, the request is otherwise vague, ambiguous, solicits speculation, and is not limited in time or scope.

   **Response:** Notwithstanding and without waiving the foregoing objection: Starzyk cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

4

16. Contact visits are the most likely source of how contraband is smuggled into Robinson CI.

> **Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects to the extent the terms utilized are undefined, vague, ambiguous, solicits speculation, and is not limited in time or scope.

> **Response:** Notwithstanding and without waiving the foregoing objection: Starzyk cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

17. You're familiar with the term "Reasonable suspicion".

> **Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects to the extent the terms utilized are undefined, vague, and ambiguous.

> **Response:** Notwithstanding and without waiving the foregoing objection: **Admit.**

18. A strip search is a visual inspection of an unclothed person's body cavities pursuant to Administrative Directive 6.7.

> **Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2).

> **Response:** Notwithstanding and without waiving the foregoing objection: The document speaks for itself.

19. Prisoners at Robinson CI weren't always strip searched at the conclusion of video visits.

> **Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects to the extent the terms utilized are undefined, vague, ambiguous, solicits speculation, and is not limited in time or scope.

> **Response:** Notwithstanding and without waiving the foregoing objection: Starzyk cannot admit or deny as phrased – despite reasonable inquiry the

5

AA-182

information known or presently available to him is insufficient to render an admission or denial.

20. Multiple inmates are strip searched in the offender holding area at the same time.

**Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects to the extent the terms utilized are undefined, vague, ambiguous, solicits speculation, and is not limited in time or scope.

**Response:** Notwithstanding and without waiving the foregoing objection: Starzyk cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

21. Prisoners who participate in video visits do not have contact with visitors from outside the facility during said visits.

**Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects to the extent the term "contraband" is undefined. Additionally, the request is otherwise vague, ambiguous, solicits speculation, and is not limited in time or scope.

**Response:** Notwithstanding and without waiving the foregoing objection: Starzyk cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

22. Prisoners can't receive contraband through a computer screen during virtual video visits.

**Objection:** Starzyk respectfully objects to this request for admission because it does not comply with Fed Rules Civ Proc R 26(g)(2). Starzyk further objects to the extent the terms utilized are undefined, vague, ambiguous, solicits speculation, and is not limited in time or scope.

**Response:** Notwithstanding and without waiving the foregoing objection: Starzyk cannot admit or deny as phrased – despite reasonable inquiry the information known or presently available to him is insufficient to render an admission or denial.

6



## Request for Inclusion or Revision to an Administrative Directive
### Connecticut Department of Correction

CN 1301
REV 06/29/18

| Administrative Directive Number:  6.7 | Title:  Searches Conducted in Correctional Facility |
|---|---|

☒ I recommend the following inclusion or revision to the above referenced Administrative Directive *(provide detailed explanation regarding reason for change):*

Regarding Administrative Directive 6.7 Searches Conducted in Correctional Facility subsection Strip-Searches when Reasonable Suspicion is not required (see added language in bold:

Page 3 Sec B Line ix: At the conclusion of any contact visit **and after entering any public visiting area an inmate has access to.**

Current language in Administrative Directive 6.7 Searches Conducted in a Correctional Facility states at the conclusion of any contact visit.  Seeking to include any public area inmates have access to or discretion of unit administrator.  Changing this language will allow facilities to enforce strips searches of inmates who have video and contact visitations happening in the same area at the same time due to access to the public.  By strip searching all inmates who enter a public access visiting area regardless of contact or video visitation would help limit chances of introduction of contraband.

☐ See attached documents

| ORIGINATOR | | |
|---|---|---|
| Name:  Jason Ouellette | Title:  Lieutenant | Date: 5-16-24 |
| Signature: | Facility/Unit: Carl Robinson | |

| OFFICE OF STANDARDS AND POLICY REVIEW: | | |
|---|---|---|
| Reviewed by: ☒ | Office of Standards and Policy Staff signature:  *Capt. DelPeschio* | Date: 5/16/24 |

| UNIT/DISTRICT/DIVISION RECOMMENDATIONS: | | | |
|---|---|---|---|
| Approved | Denied | | |
| ☒ | ☐ | Unit Administrator's signature: | Date: 5/16/24 |
| ☒ | ☐ | District Administrator's signature: *(only needed if originating from facility)* | Date: 5/23/24 |
| ☒ | ☐ | Division Administrator's signature: | Date: 5-23-24 |

| COMMISSIONER'S DECISION: | | | |
|---|---|---|---|
| This request is: | ☒ **APPROVED** ☐ **DENIED** | Effective date of request: | |
| ☐ | The language/provisions of this inclusion/revision shall be effective as of and subsequently added to the Administrative Directive at the next update: | | Date: |
| ☐ | This inclusion/revision shall be added to the Administrative Directive prior to: | | Date: |
| ☐ | This inclusion/revision shall be added immediately to the Administrative Directive. | | |
| Commissioner's signature: | | | Date: 5/29/24 |

AA-184

Att. 3 to Ex B, Pg., 001



| WEEKDAY SCHEDULE | | | | | | | | | | ROT#3 DATE 6/10/2024 | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 60 min | | | Inmate Name | Inmate Number | Housing Unit | | Visitor # 1 Name | DOB | Visitor #2 Name | DOB | Visitor # 3 Name | |
| 6:30PM - 7 | 1 | | ███ | ███ | ███ | | ███ | ███ | ███ | | | |
| VIDEO VIS | 2 | | ███ | ███ | ███ | | ███ | ███ | ███ | | | |
| 10 SPOTS | 3 | | ███ | ███ | ███ | | ███ | ███ | ███ | | | |
| 8 | 4 | | | | | | | | | | | |
| | 5 | | | | | | | | | | | |
| | 6 | | | | | | | | | | | |
| | 7 | | | | | | | | | | | |
| | 8 | | | | | | | | | | | |
| | 9 | | | | | | | | | | | |
| | 10 | | | | | | | | | | | |
| 8:00PM -9 | 1 | | ███ | ███ | ███ | | ███ | | | | | |
| VIDEO VIS | 2 | | ███ | ███ | ███ | | ███ | | | | | |
| 10 SPOTS | 3 | | ███ | ███ | ███ | | ███ | | | | | |
| 9A | 4 | | Green | 320094 | 9A 110 | | ███ | ███ | | ███ | | |
| | 5 | | ███ | ███ | ███ | | ███ | ███ | ███ | ███ | | |
| | 6 | | ███ | ███ | ███ | | ███ | ███ | ███ | ███ | | |
| | 7 | | ███ | ███ | ███ | | ███ | ███ | ███ | ███ | | |
| | 8 | | ███ | ███ | ███ | | ███ | ███ | ███ | ███ | | |
| | 9 | | ███ | ███ | ███ | | ███ | ███ | ███ | ███ | | |
| | 10 | | ███ | ███ | ███ | | ███ | ███ | ███ | ███ | | |

CLEAN 8:00PM

AA-195



8:00PM -9:

VIDEO VISI

10 SPOTS

9A

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Green | 320094 | 9A 110 | | | | | | |

FRIDAY 3-15-24

AA-18G

Green v. Quiros, 3:24-cv-1317 : 005

**SCHEDULE**          ROT#4    DATE



| 60 min | | # | Inmate Name | Inmate Number | Housing Unit | Visitor # 1 Name | DOB | Visitor #2 Name | DOB | Visitor # 3 Name | DOB |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 9:00AM 10 | | 1 | | | | | | | | | |
| VIDEO VISI | | 2 | | | | | | | | | |
| 10 SPOTS | | 3 | | | | | | | | | |
| 9A | | 4 | | | | | | | | | |
| | | 5 | | | | | | | | | |
| | | 6 | | | | | | | | | |
| | | 7 | | | | | | | | | |
| | | 8 | Green | 320094 | 9A 110 | | | | | | |
| | | 9 | | | | | | | | | |
| | | 10 | | | | | | | | | |

SATURDAY    3-23-24

Green v. Quiros, 3:24-cv-1317 : 006

AA-187

United States District Court

District of Connecticut

Courtney Green

V.

Commissioner Quiros, et al

No. 3:24-CV-01317-VDO

9 / 5 / 2025

Plaintiff's Motion For In Camera Review

The plaintiff Courtney Green respectfully moves this Honorable court to conduct an in camera review of static video cameras, preserved under Vid 1 Export C177 visit room,  Vid 2 Export C178 visit desk, Vid 3 Export C1800 which are in the defendant's possession and control. The plaintiff further moves the court respectfully to review said static video that depicts Robinson's CI visiting room, nevertheless plaintiff believes that such videos will assist the court in making a fair and just ruling on the pending motion for summary judgment as the video illustrates that there remains material facts in dispute as to whether the strip searches that the plaintiff was subjected to at the conclusion of non - contact video visits and whether they were reasonable. At bottom are the areas of the visiting room identified.

1. In Vid 1 Export C177 starting from approximately 00:15 Defendant Starzyk is depicted walking to video visit area.

2. In Vid 1 Export C177 from approximately 04:48 -04: 53 inmates walk to video visit area.

3. In Vid 1 Export C177 from approximately 03:17 - 03:35 inmates greet visitors for contact visits.

4. In Vid 2 Export C178 at approximately 00:15 the non - contact visit area is depicted.

By The Plaintiff

Courtney Green

30 Trowel Street.

Bridgeport, Ct 06607

1

AA-188

United States District Court

District of Connecticut

Courtney Green
(Plaintiff)

No. 3:24-CV-01317

V

Angel Quiros et al
(Defendants)

3 / 30 / 26

Notice Of Appeal

Notice is hereby given that Plaintiff Courtney Green, hereby appeals to the United States Court

of Appeals for the Second Circuit from the final judgment entered in this action.

Plaintiff specifically appeals from the order granting Defendants' Motion for Summary Judgment

and the final judgment entered on March 4, 2026.

This action arises under 42 U. S. C. Section 1983 and concerns the constitutionality of routine

strip searches conducted by correctional officials following non - contact and video visits at Carl

Robinson CI.

Plaintiff Appeals the Court's rulings including but not limited to:

1. The Court's determination that the challenged strip search policy satisfied the factors set
   forth in Turner v. Safley; Bell v. Wolfish.

2. The Court's acceptance of the Defendant's speculative asserted security justification that
   inmates participating in video visits could obtain contraband from other inmates in the
   visiting room;

3. The Court's denial of Plaintiff's motion requesting in - camera review of video evidence
   depicting the layout and procedures of the visiting area; and

4. The Court's grant of summary judgment despite the absence of evidence demonstrating
   that inmates participating in video visits have obtained contraband.

1

AA-189



# Inmate Grievance Appeal Form - Level 2
## Connecticut Department of Correction

CN 9604
REV
04/30/2021

Inmate name: Courtney Green

Inmate number: 320094

Facility/Unit: Robinson CI

Housing unit: 9A-110

Date: 4-5-2024

IGP number: 116-24-105

## Inmate Acknowledgement

- Use this form to appeal a CN 9602, Inmate Grievance Form- Level 1.
- When submitting this form, the following must be included for processing:
  - o All original documentation for prior resolution (e.g. Initial CN 9601, Inmate Request form; CN 9602, Inmate Grievance Form Level 1; etc.).
- NOTE:
  - o Your appeal must be filed within five (5) calendar days of the Level 1 response and deposited in the "Administrative Remedies" box within the institution. A level 2 shall be rejected if all documentation from the level 1 response is not included.

## Appeal of Level 1 Decision to Level 2

I am appealing the Level 1 decision because: The level 1 response is erroneous. To begin this remedy challenges Departmental-level policy and is subject to level 3 review. See A.D. 9.C Sec. III. Sub. Sec. i., paragraph. a. Needless to say that A.D. C.7 which is promulgated by Comsr Quiros does Not Mention reference or authorize strip searches at the conclusion of Non-cont-Act/Video visits, Nor does UA Caron cite to any section of A.D. C.7

Inmate signature: CG

Date: 4-5-2024

FOR OFFICIAL USE ONLY - LEVEL 2 REVIEW

Date received: 4/12/2024

Disposition: **Denied**

Date of disposition: 4/18/2024

Reasons:

*You are appealing a level one grievance (116-24-105) regarding strip searches after a video visit at Robinson CI. The response provided by Warden Caron to your level 1 grievance was thorough and appropriate. Therefore, your grievance is denied.*

Level 2 reviewer print name: *Washington*

Title: *District Administrator*

Level 2 reviewer signature:

Date: *4/18/2024*

☐ This grievance may be appealed within five (5) Calendar days to Level 3.

☑ This decision is not subject to further appeal.

AA-190

to justify her institute of a blanket policy of routine strip searches after video visits. Moreover, UA Carons' justification for instituting strip searches after video visits, where UA Caron relies/cites "Reasonable Suspicion", which she clearly misinterprets. "Reasonable Suspicion": An objectively judgment based on specific objective facts and reasonable inference drawn in light of experience, training and education. See A.D. C.7 Sec.3, sub.sec. N. Given, it is inconceivable for one to smuggle contraband through a video visit nor are their specific facts that prove otherwise. Since UA Caron cites "reasonable suspicion that means strip search reports have been generated (A.D. C.7 (C) II, which has not, and that "Reasonable Suspicion" has been determined in accord with A.D. C.7 (6) a 1 - C.7 (C), which also has not, Carons' policy fails!

Lastly, Bell v. Wolfish 441 U.S. 520 (1979) outlines that strip searches ~~are not~~ justified after contact visits not non-contact, wherefore their will be no qualified immunity defense. The Directives are useless if they aren't followed by Administrators and might as well be discared. For all the above stated reasons and cited Authority, I respectfully move for the level 2 reviewer to adhere to A.D. 1.3 Section 3, paragraph a, and reverse UA Carons' routine strip search policy after non-contact video visits

AA-191







**UNITED STATES POSTAL SERVICE.** | *Retail*

**E** | US POSTAGE PAID

**$36.60** | Origin: 06825
07/14/26
0825500432-20

### PRIORITY MAIL EXPRESS®

COURTNEY GREEN
30 TROWEL ST
BRIDGEPORT CT 06607-2209
(475) 332-8257

2 Lb 14.20 Oz

RDC 07

SCHEDULED DELIVERY DAY: 07/16/28 06:00 PM

C099

SHIP
TO:



(475) 332-6257
USCA SECOND CIRCUIT
40 FOLEY SQ
NEW YORK NY 10007-1502

**USPS TRACKING® #**



9570 1121 6322 6195 8300 16



TO: